UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Howard McDougall, a Trustee thereof, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. **FILED: JULY 21, 2008** |
| | ) | Judge  08 cv 4120 |
| v. | ) ) | JUDGE NORGLE |
| BARBARA COOK and DONALD COOK | ) ) | MAGISTRATE JUDGE DENLOW JH |
| Defendants. | ) ) | |

## COMPLAINT FOR INTERPLEADER

NOW COMES the Central States, Southeast and Southwest Areas Health and Welfare Fund, an Employee Welfare Benefit Plan, by and through Howard McDougall, a Trustee thereof, in his representative capacity, pursuant to Rule 22(1) of the Federal Rules of Civil Procedure, and complains of the Defendants as follows:

## PARTIES, JURISDICTION AND VENUE

1.    The Central States, Southeast and Southwest Areas Health and Welfare Fund (hereinafter referred to as "Central States") is an Employee Welfare Benefit Plan as that term is defined in Section 3(1) of Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1002(2).

2.    Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that an action under Title I of ERISA may be brought in the district court where the Plan is administered.  Central States is administered in the Northern District of

Illinois.  Process may be served in any other district where a Defendant resides or may be found.

3.      Central States is located in Rosemont, Illinois.  Barbara Cook and Donald L. Cook reside in Wisconsin.

4.      Jurisdiction is proper pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in that this is an action by a fiduciary to enforce the provisions of Title I of ERISA and the terms of the Central States Plan regarding payment of a life insurance benefit to the proper beneficiary of a deceased Covered Participant of the Plan. Jurisdiction is also proper under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.  Federal Rule of Civil Procedure 22, provides the procedural framework for this case.

5.      Central States provides, amongst other benefits, a life insurance benefit payable, pursuant to the terms of the Plan, to the beneficiary of a Covered Participant.

6.      The Central States Plan Document, section 14.09, states that it is the responsibility of each Covered Participant to supply Central States with a properly executed Enrollment or Change of Beneficiary Card, designating the beneficiary of any Plan life insurance benefit.  Upon the death of a Covered Participant, a life insurance benefit will be paid to the designed beneficiary.  The Plan Document is attached hereto as Exhibit A.

7.      Thomas H. Cook, deceased, was a Covered Participant of Central States. He died on November 18, 2007.  Because Thomas H. Cook was a Central States Covered Participant when he died, a $40,000.00 life insurance benefit is payable to his beneficiary.

8.      Donald L. Cook is the designated beneficiary for life insurance benefits, payable to the beneficiary of Thomas H. Cook, pursuant to a beneficiary card dated July 29, 2007 and allegedly signed by Thomas H. Cook.

9.     Barbara Cook is the surviving spouse of Thomas H. Cook and, in the absence of a properly executed beneficiary card, pursuant to the preference provisions contained in § 14.09 of the Plan Document, she would be entitled to the life insurance benefits payable to the beneficiary of Thomas H. Cook.

10.     Both Barbara Cook and Donald L. Cook have filed claims with Central States seeking payment of life insurance benefits, payable to the beneficiary of Thomas H. Cook.

## BACKGROUND FACTS

11.     Thomas H. Cook, worked under a collective bargaining agreement, in the Teamster industry, whereby his employer was obligated to make contributions on his behalf to the Central States Health and Welfare Fund to provide him with health and welfare coverage.

12.     The Plan under which Thomas H. Cook was covered until the time of his death, provided a $40,000.00 life insurance benefit payable to his beneficiary.

13.     Thomas H. Cook died on November 18, 2007 in Wilkinson, Wisconsin.

14.     On or about December 8, 2007, Donald L. Cook filed a Notice of Claim for life insurance benefits payable to the beneficiary of Thomas H. Cook.

15.     Donald L. Cook is described on his claim form as the son of Thomas H. Cook.

16.     On or about December 7, 2007, Barbara Cook filed a claim form for life insurance benefits payable as a result of the death of Thomas H. Cook.  Barbara Cook's claim form described her as the wife of Thomas H. Cook.

17.     Central States' files contain a designation of beneficiary card dated July 29, 2007 signed by Thomas H. Cook.  It designates Donald L. Cook as his beneficiary for life

insurance benefits provided by the Central States Health and Welfare Fund. A copy of the beneficiary card is attached hereto as <u>Exhibit B</u>.

18.     On December 21, 2007 Central States advised Barbara Cook that Donald L. Cook is the named beneficiary of Thomas H. Cook's life insurance, so the claim of Barbara Cook for life insurance benefits was denied.

19.     Because the Central States Health and Welfare Fund is an Employee Welfare Benefit Plan, regulated by ERISA, the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq*., the Central States Plan Document contains an administrative appeals process regarding the denial of Plan benefit claims.

20.     Barbara Cook appealed the denial of her claim for life insurance benefits payable as a result of the death of her husband, Thomas H. Cook. During the administrative appeals process Barbara Cook submitted several arguments in support of her claim.

21.     Barbara Cook appealed that she was entitled to one-half of the life insurance benefits payable as the result of the death of Thomas H. Cook, as a matter of Wisconsin state law.

22.     Barbara Cook appealed for the life insurance benefits by claiming that the beneficiary designation allegedly executed by Thomas H. Cook on July 29, 2007, was executed as a result of undue influence.

23.     Barbara cook appealed for the life insurance by claiming that the signature of Thomas H. Cook on the beneficiary card of July 29, 2007 was forged.

24.    During the administrative appeals process Barbara Cook, through her attorney, stated that she would not pursue her claims that the beneficiary card had been forged or signed under undue influence because of the costs of pursuing such claims.

25.    However, on July 16, 2008, Barbara Cook, through her attorney, submitted a letter to Central States which stated, "I am following up my letter of June 26. I did want to provide to you a copy of a change of mail, from the Post Office. A copy of that is enclosed herein for your reference and as you can see, it was apparently signed on December 12, 2007, by Tom Cook. However, we all know that this would have been impossible, as Tom Cook was deceased on November 18, 2007. Note also that the change of address changes the address to the address of Donald Cook, in Barron County.

Finally, note that the handwriting on this change of address form was suspiciously like the handwriting on the change of beneficiary designation form that was signed naming Donald Cook as the beneficiary."

We submit this in support of our assertion that the change of beneficiary form was forged." A copy of the July 16, 2008 letter from Barbara Cook's attorney, with the enclosure, is attached hereto as Exhibit C.

26.    The Trustees of the Central States Health and Welfare Fund, on July 16, 2008, reviewed and denied the administrative appeal of Barbara Cook for payment of life insurance benefits. But, because Barbara Cook, through her attorney, submitted additional evidence (Exhibit C) on July 16, 2008, (that was not before the Trustees when they made their decision) which may support Barbara Cook's claim of forgery, Central States decided to file an interpleader action, asking the Court to determine the proper beneficiary of Thomas H. Cook.

## <u>GREAT DOUBT AS TO THE PROPER BENEFICIARY</u>

27.    Central States is in great doubt as to the proper person to receive the

$40,000.00 life insurance benefit payable as a result of the death of Thomas H. Cook to

his beneficiary.

28.    An interpreter action is proper by an ERISA regulated Fund when the Fund

is in great doubt as to the proper beneficiary of life insurance benefits payable under the

terms of the Plan.  *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997).  An

interpreter action is proper when the Plan fiduciary can not safely determine the proper

beneficiary of benefits due.  Federal courts have jurisdiction under ERISA because an

interpreter action is fundamentally equitable in nature.  *Id*. at 418; see also, *Central States,*

*Southeast and Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 674 (6th Circuit,

2000); *Aetna Life Insurance Co. v. Hoger*, 930 F.Supp 343, 345 (E.D.Wis., 1996).

29.    The Central States Trustees, as fiduciaries, are required by their fiduciary

duties under § 404 (a)(1)(D) ERISA to administer the Plan pursuant to applicable law and

the Plan Document.  29 U.S.C. § 1104(a)(1)(D).

30.    The Central States Plan Document states that it is the responsibility of each

Covered Participant to supply Central States with a properly designated enrollment form

designing the beneficiary of any life insurance benefits.  <u>Ex. A, § 14.09</u>.

31.    Central States is in great doubt was to whether the beneficiary card executed

by Thomas H. Cook on July 29, 2003 naming his son, Donald L. Cook as the beneficiary

of his life insurance benefits, was properly executed or whether the signature of Thomas

H. Cook was forged, as is claimed by his surviving spouse, Barbara Cook.

32.     Central States is unsure as to the proper beneficiary of Thomas H. Cook, because Barbara Cook submitted evidence to Central States which may support her claim that the signature of her husband, Thomas H. Cook, was forged on the beneficiary card. Barbara Cook submitted, through her attorney, a United States Postal Service change of address form, allegedly signed by Thomas Cook on December 12, 2007 when, in fact, Thomas Cook had been deceased since November 18, 2007.  The U.S. Post Office change of address form allegedly changes the address of Thomas Cook to the address of his son, Donald Cook.  Barbara Cook, through her attorney, argues that the signature on the U.S. Post Office change of address form of Thomas Cook is "supiciously like the handwriting on the change of beneficiary designation" that was allegedly signed by Thomas H. Cook on July 29, 2007.

33.     Central States is unsure as to the proper beneficiary of Thomas H. Cook because Barbara Cook has submitted evidence to Central States which may support her claim of forgery.

34.     Central States stands ready, upon the filing of this interpleader action, to pay $40,000.00 to the Registry of the Court and thereupon to request that this Court discharge it from any liability for payment of a life insurance benefit to the proper beneficiary of Thomas H. Cook.

WHEREFORE, the Central States Health and Welfare Fund prays that this Court enter an Order judging:

a.      The proper person to receive the $40,000.00 life insurance benefit payable as a result of the death of Thomas H. Cook;

b.     That the Defendants be restrained from instituting or proceeding with any action against Central States for the recovery of the life insurance benefit payable by Central States to the proper beneficiary of Thomas H. Cook;

c.     That this Court determine that the Defendants be required to interplead and settle among themselves the rights to the life insurance benefit payable as a result of the death of Thomas H. Cook and that Central States be discharged from all liability for payment of the life insurance benefit to any of the Defendants;

d.     That Central States recover its costs and fees of bringing this action.

Respectfully submitted,

/s/Francis J. Carey
Francis J. Carey
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Health and
Welfare Fund
9377 W. Higgins Road
Rosemont, IL  60018-4938
July 21, 2008                                            (847) 518-9800, Ext. 3465

08 CV 4120
JUDGE NORGLE
MAGISTRATE JUDGE DENLOW
JH

# Exhibit A

# Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan Document



As Amended Through September 30, 2007

4158

**Exhibit A**

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND,**
a jointly administered, defined benefit employee benefit plan

### ADDRESS OF ADMINISTRATIVE OFFICE
9377 West Higgins Road
Rosemont, Illinois 60018-4938

### TELEPHONE NUMBER
(847) 518-9800
1-800-323-5000 (Toll-Free)

### EMPLOYER IDENTIFICATION NUMBER
36-2154936

### BOARD OF TRUSTEES

**EMPLOYEE TRUSTEES**
Fred Gegare
Jerry Younger
George J. Westley
Charles A. Whobrey

**EMPLOYER TRUSTEES**
Howard McDougall
Arthur H. Bunte, Jr.
Tom J. Ventura
Gary F. Caldwell

### EXECUTIVE DIRECTOR
(also Agent for Service of Legal Process)
Thomas C. Nyhan

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS ............................................................................................................... 1

ARTICLE II. EFFECTIVE DATE OF GENERAL PROVISIONS ..................................................... 17

ARTICLE III. PARTICIPATION AND COVERAGE ........................................................................ 18

    3.01    QUALIFICATIONS AS A COVERED PARTICIPANT ............................................. 18
    3.02    QUALIFICATIONS AS A COVERED DEPENDENT ................................................ 18
    3.03    COMMENCEMENT OF COVERAGE OF MEMBERS OF A NEW GROUP
            PREVIOUSLY INSURED ......................................................................................... 18
    3.04    COMMENCEMENT OF COVERAGE OF MEMBERS OF A NEW GROUP NOT
            PREVIOUSLY INSURED ......................................................................................... 18
    3.05    COMMENCEMENT OF COVERAGE OF NEW PARTICIPANTS ............................ 19
    3.06    COMMENCEMENT OF COVERAGE OF COVERED PARTICIPANTS FOR WHOM
            UNINTERRUPTED EMPLOYER CONTRIBUTIONS AND/OR SELF-PAYMENTS
            HAVE BEEN RECEIVED ......................................................................................... 19
    3.07    COMMENCEMENT OF COVERAGE OF EMPLOYEES COVERED UNDER
            ANOTHER PLAN OFFERED BY THE FUND.......................................................... 19
    3.08    COMMENCEMENT OF COVERAGE OF NEW PARTICIPANTS ELIGIBLE UNDER
            A PLAN OFFERED BY A LOCAL UNION .............................................................. 20
    3.09    EFFECT OF TEMPORARY WORK STOPPAGE ON COVERAGE .......................... 20
    3.10    EFFECT ON COVERAGE OF ABSENCE FROM CONTINUOUS FUNDED
            EMPLOYMENT DURING, AND AS A RESULT OF, SERVICE IN THE
            UNIFORMED SERVICES ......................................................................................... 21
    3.11    TERMINATION OF COVERAGE OF PARTICIPANTS HAVING TOTAL AND
            PERMANENT DISABILITY OR ON SICK LEAVE ................................................... 21
    3.12    TERMINATION OF COVERAGE OF PARTICIPANTS CHANGING EMPLOYEE
            STATUS.................................................................................................................... 21
    3.13    TERMINATION OF COVERAGE DUE TO EMPLOYER WITHDRAWAL ................ 22
    3.14    RETURN TO COVERED EMPLOYMENT ................................................................ 22
    3.15    ELIGIBILITY TO ELECT CONTINUATION COVERAGE......................................... 22
    3.16    DEFINITION OF QUALIFYING EVENT.................................................................... 22
    3.17    NOTICE OF QUALIFYING EVENT .......................................................................... 23
    3.18    ELIGIBILITY FOR CONTINUATION COVERAGE.................................................... 23
    3.19    PROCEDURES TO ELECT CONTINUATION COVERAGE..................................... 23
    3.20    SELF-PAYMENTS TO MAINTAIN CONTINUATION COVERAGE.......................... 24
    3.21    TERMINATION OF CONTINUATION COVERAGE.................................................. 24
    3.22    STATUS OF A COVERED PARTICIPANT WHEN EMPLOYER FAILS TO MAKE
            CONTRIBUTIONS ................................................................................................... 25
    3.23    STATUS AND COVERAGE OF A COVERED INDIVIDUAL WHEN EMPLOYER
            FAILS TO REMIT EMPLOYER CONTRIBUTIONS: SUSPENSION OF BENEFITS 25
    3.24    CERTAIN PARTICIPANTS NOT TO BE CLASSIFIED AS COVERED
            DEPENDENT........................................................................................................... 25

**Exhibit A**

3.25   COMMENCEMENT OF COVERED DEPENDENT STATUS FOR SPOUSE OF A
       COVERED PARTICIPANT................................................................................ 25
3.26   COMMENCEMENT OF COVERED DEPENDENT STATUS FOR CHILD OF A
       COVERED PARTICIPANT................................................................................ 26
3.27   STATUS OF MENTALLY OR PERMANENTLY PHYSICALLY DISABLED CHILD
       OF A COVERED PARTICIPANT....................................................................... 26
3.28   STATUS OF NEWBORN CHILD OF A COVERED PARTICIPANT......................... 26
3.29   STATUS OF UNMARRIED CHILD OF A COVERED PARTICIPANT WHO IS A
       STUDENT BETWEEN THE AGES OF 19 AND 23 ............................................. 26
3.30   LOSS OF DEPENDENT'S COVERAGE.............................................................. 27
3.31   RESIDUAL COVERAGE OF FORMER COVERED PARTICIPANTS...................... 27
3.32   ELIGIBILITY FOR FAMILY PROTECTION PLAN BENEFIT ................................ 28

ARTICLE IV. GENERAL EXCLUSIONS, LIMITATIONS AND CONDITIONS FOR PAYMENT OF
       CLAIMS ...................................................................................................... 29

4.01   PAYMENT ONLY FOR COVERED CLAIMS OF COVERED INDIVIDUALS............. 29
4.02   EXCLUSION OF PAYMENT FOR TREATMENT NOT CONSIDERED STANDARD
       MEDICAL CARE OR MEDICALLY NECESSARY .................................................. 29
4.03   LIMITATION ON PAYMENT OF CLAIMS ARISING FROM WORK-RELATED
       INJURY OR COVERED BY WORKER'S COMPENSATION................................... 29
4.04   EXCLUSION OF PAYMENT FOR TREATMENT OF INJURIES SUSTAINED
       WHILE IN ANY UNIFORMED SERVICE.............................................................. 29
4.05   EXCLUSION OF PAYMENT FOR TREATMENT DUE TO ILLNESS OR INJURY
       ARISING OUT OF ANY ACT OF WAR OR CIVIL DISTURBANCE ......................... 30
4.06   EXCLUSION OF PAYMENT FOR TREATMENT OF INJURIES ARISING AS A
       RESULT OF PARTICIPATION IN CRIMINAL CONDUCT...................................... 30
4.07   LIMITATION ON PAYMENT FOR TREATMENT RECEIVED OUTSIDE THE
       UNITED STATES............................................................................................ 30
4.08   EXCLUSION FOR PAYMENT FOR TREATMENT CONNECTED WITH SURGERY
       FOR COSMETIC PURPOSES .......................................................................... 30
4.09   EXCLUSION OF PAYMENT FOR TREATMENT OTHERWISE COVERED UNDER
       THE SOCIAL SECURITY ACT........................................................................... 31
4.10   EXCLUSION OF PAYMENT FOR TREATMENT NOT RELATED TO ILLNESS,
       INJURY OR PREGNANCY ............................................................................... 31
4.11   EXCLUSION OF PAYMENT FOR CERTAIN DENTAL TREATMENTS................... 32
4.12   EXCLUSION OF PAYMENT FOR TREATMENT OF NON-COMPENSABLE
       PROCEDURES............................................................................................... 32
4.13   EXCLUSION OF PAYMENT FOR ROUTINE PHYSICAL EXAMINATIONS ............ 32
4.14   EXCLUSION OF PAYMENT FOR CERTAIN ITEMS............................................ 32
4.15   EXCLUSION OF PAYMENT FOR MAINTENANCE CARE .................................... 32
4.16   EXCLUSION OF PAYMENT OVER PRESCRIBED MAXIMUMS ............................ 33
4.17   LIMITATION ON ELIGIBILITY FOR COVERAGE OF CERTAIN ORGAN OR
       TISSUE TRANSPLANTS ................................................................................. 33
4.18   EXCLUSION OF PAYMENT FOR INFERTILITY TREATMENT ............................. 35
4.19   EXCLUSION OF PAYMENT FOR CHARGES FOR WHICH THE COVERED
       INDIVIDUAL IS NOT RESPONSIBLE TO PAY ..................................................... 35

**Exhibit A**

4.20    LIMITATION ON PAYMENT OF CLAIMS FOR SERVICES BY PROVIDERS NOT IN PREFERRED PROVIDER ORGANIZATION NETWORK ................................... 35
4.21    EXCLUSION FOR PAYMENT FOR TREATMENT CONNECTED WITH BARIATRIC SURGERY ................................................................................................................ 35

ARTICLE V.  COORDINATION OF BENEFITS ........................................................................ 36

5.01    PRIORITY OF COVERAGE WHERE COVERED INDIVIDUAL IS COVERED BY AN OTHER PLAN .................................................................................................... 36
5.02    EFFECT OF PRIORITY RULES ON AMOUNT  OF PAYMENTS UNDER THE PLAN ......................................................................................................................... 37
5.03    RECOVERY OF PAYMENTS WHEN AN OTHER PLAN IS INVOLVED ................. 37
5.04    PAYMENTS TO OTHER PLANS ......................................................................... 37
5.05    NO FAULT, PERSONAL INJURY PROTECTION OR FINANCIAL RESPONSIBILITY MOTOR VEHICLE INSURANCE COVERAGE ............................. 38
5.06    COORDINATION OF BENEFITS WITH AN HMO ................................................... 38

ARTICLE VI.  CONTRIBUTIONS AND FUNDING OF BENEFITS ................................................ 39

6.01    EMPLOYER'S OBLIGATION TO CONTRIBUTE TO THE PLAN ............................. 39
6.02    CREDITS FOR ERRONEOUS EMPLOYER CONTRIBUTIONS ............................. 39
6.03    IRREVOCABLE NATURE OF CONTRIBUTIONS .................................................... 39
6.04    SELF-PAYMENTS ................................................................................................. 39

ARTICLE VII.  AMENDMENTS AND PLAN TERMINATION ........................................................ 40

7.01    PROCEDURE FOR AMENDING THE PLAN ........................................................... 40
7.02    TERMINATION OF THE PLAN .............................................................................. 40

ARTICLE VIII.  PLAN ADMINISTRATION ............................................................................... 41

8.01    TRUSTEE STATUS AS "NAMED FIDUCIARY" ...................................................... 41
8.02    POWERS OF THE TRUSTEES ............................................................................. 41
8.03    DECISIONS OF TRUSTEES .................................................................................. 41
8.04    EFFECT OF ANY MISREPRESENTATION WITH RESPECT TO CLAIMS ............. 41
8.05    PAYMENTS TO PERSONS WHO HAVE FAILED TO INFORM THE TRUSTEES OF A CHANGE OF ADDRESS ................................................................................. 41
8.06    INFORMATION CONCERNING COVERED INDIVIDUALS ..................................... 42
8.07    USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION ................... 42
8.08    SAFEGUARDS FOR PROTECTED HEALTH INFORMATION ................................ 43

ARTICLE IX.  BENEFIT CLAIMS ......................................................................................... 45

9.01    CLAIMS TO BE SUBMITTED IN WRITING ON AUTHORIZED FORMS ................ 45
9.02    PROCESSING CLAIMS INVOLVING URGENT CARE ........................................... 45
9.03    PROCESSING CLAIMS FOR BENEFITS (OTHER THAN URGENT CARE CLAIMS) ................................................................................................................. 46
9.04    NOTICE OF ADVERSE BENEFIT DETERMINATIONS ......................................... 46

**Exhibit A**

9.05    CONCURRENT CARE DECISIONS ................................................................ 47
9.06    MISCELLANEOUS BENEFIT CLAIMS PROVISIONS ............................................. 48

ARTICLE X. APPELLATE REVIEW PROCEDURES AND DETERMINATIONS ........................................... 50

10.01    PROCEDURES DURING APPELLATE REVIEW OF ADVERSE BENEFIT
         DETERMINATIONS .................................................................................... 50
10.02    DEFINITION OF TRUSTEE-REVIEWABLE DETERMINATIONS ............................ 52
10.03    TIME LIMITATIONS FOR APPELLATE REVIEW OF ADVERSE BENEFIT
         DETERMINATIONS .................................................................................... 53
10.04    NOTICE OF BENEFIT DETERMINATIONS AFTER APPELLATE REVIEW ........... 54
10.05    MISCELLANEOUS APPELLATE REVIEW PROVISIONS ........................................ 55

ARTICLE XI. MISCELLANEOUS PROVISIONS ........................................................................ 57

11.01    VALIDITY OF CHANGES IN THE PLAN .................................................... 57
11.02    CLAIM FORMS ........................................................................................ 57
11.03    TIME WITHIN WHICH CERTAIN CLAIMS ARE TO BE FILED ............................... 57
11.04    RECOVERY OF EXCESS PAYMENTS .......................................................... 57
11.05    FUND MAY ORDER PHYSICAL EXAMINATION AND/OR AUTOPSY ................... 57
11.06    TO WHOM BENEFITS ARE PAYABLE ....................................................... 57
11.07    CERTAIN ACTS OF THE FUND DO NOT CONSTITUTE A WAIVER OF RIGHTS 58
11.08    NO MEDICAL EXAMINATION REQUIRED AS PREREQUISITE TO COVERAGE . 58
11.09    ALL BENEFIT PAYMENTS BASED ON REASONABLE AND CUSTOMARY
         CHARGES FOR THE SERVICE .................................................................. 58
11.10    PERIOD DURING WHICH BENEFIT PAYMENTS MUST BE CLAIMED ................. 58
11.11    APPLICABLE LAW .................................................................................. 58
11.12    SEVERABILITY OF PLAN PROVISIONS .................................................... 59
11.13    RIGHT TO REVIEW ALL CLAIMS ............................................................. 59
11.14    SUBROGATION ...................................................................................... 59
11.15    WORKER'S COMPENSATION SUBROGATION ............................................. 62
11.16    RIGHT TO PROVIDE ALTERNATIVE CARE .............................................. 62

ARTICLE XII. BASIC BENEFITS ........................................................................................ 64

12.01    OUTLINE OF BASIC BENEFITS ................................................................ 64
12.02    LOSS OF TIME BENEFIT—PARTICIPANT ONLY ....................................... 64
12.03    HOSPITAL EXPENSE BENEFIT ................................................................ 66
12.04    SURGICAL AND OBSTETRICAL EXPENSE BENEFIT .................................. 66
12.05    OUTPATIENT DIAGNOSTIC X-RAY AND LABORATORY EXPENSE BENEFIT.... 67
12.06    OUTPATIENT ACCIDENTAL BODILY INJURY EXPENSE BENEFIT ................. 67
12.07    PRESCRIPTION DRUG BENEFIT .............................................................. 68
12.08    PSYCHIATRIC, ALCOHOLISM AND DRUG ABUSE—INPATIENT TREATMENT
         BENEFIT ................................................................................................ 69
12.09    PSYCHIATRIC, ALCOHOLISM AND DRUG ABUSE—OUTPATIENT TREATMENT
         BENEFIT ................................................................................................ 70
12.10    ORGAN TRANSPLANT DONOR BENEFIT ................................................. 71

**Exhibit A**

12.11  HEARING AID BENEFIT..................................................................................... 71
12.12  OUTPATIENT CANCER TREATMENT BENEFIT.................................................... 72
12.13  AMBULANCE SERVICE BENEFIT ...................................................................... 72
12.14  CHIROPRACTIC EXPENSE BENEFIT .................................................................. 73
12.15  WOMEN'S HEALTH BENEFIT............................................................................ 74
12.16  MAYO CLINIC TREATMENT .............................................................................. 74
12.17  WELLNESS BENEFIT ....................................................................................... 74
12.18  WAIVER OF DEDUCTIBLE/CO-PAYMENT REQUIREMENT (OFFICE VISITS)..... 76
12.19  PAYMENT BASED ON PROPRIETY OF PROCEDURES ...................................... 76
12.20  PAYMENT OF CERTAIN BASIC BENEFITS FOR TREATMENT CONTINUING
       AFTER TERMINATION OF COVERAGE UNDER THE PLAN ............................... 76
12.21  TERMINATION OF THE BASIC BENEFIT EXTENSION.......................................... 77

ARTICLE XIII.  MAJOR MEDICAL EXPENSE BENEFITS............................................................ 78

13.01  OUTLINE OF MAJOR MEDICAL BENEFITS ........................................................ 78
13.02  MAXIMUM MAJOR MEDICAL EXPENSE BENEFITS............................................. 78
13.03  EXTENSION OF THE MAJOR MEDICAL EXPENSE BENEFIT.............................. 78
13.04  TERMINATION OF THE MAJOR MEDICAL EXTENSION ..................................... 79

ARTICLE XIV.  LIFE INSURANCE BENEFITS ........................................................................... 80

14.01  BENEFITS ...................................................................................................... 80
14.02  LIFE INSURANCE BENEFIT ............................................................................. 80
14.03  DEPENDENT LIFE INSURANCE BENEFIT........................................................... 80
14.04  TOTAL AND PERMANENT DISABILITY INSTALLMENT/WAIVER OF PREMIUM
       DISABILITY BENEFITS ..................................................................................... 80
14.05  TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT......................... 81
14.06  WAIVER OF PREMIUM DISABILITY BENEFIT ..................................................... 81
14.07  ELIGIBILITY AND ADMINISTRATION ................................................................. 82
14.08  ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT.................................... 82
14.09  BENEFICIARY AND MODE OF SETTLEMENT...................................................... 84
14.10  GRACE PERIOD............................................................................................... 85

ARTICLE XV.  DENTAL BENEFITS ....................................................................................... 86

15.01  PAYMENT FOR CERTAIN TREATMENT PERFORMED BY A DENTIST............... 86
15.02  COVERED DENTAL PROCEDURES AND MAXIMUM AMOUNT PAYABLE.......... 86
15.03  LIMITATIONS ON PAYMENT OF DENTAL BENEFITS ......................................... 86
15.04  ORTHODONTIA BENEFIT—DEPENDENT CHILDREN ONLY.............................. 89
15.05  EXTENSION OF DENTAL BENEFITS ................................................................. 89
15.06  COVERAGE FOR SPECIFIC DENTAL PROCEDURES ........................................ 90

ARTICLE XVI.  VISION BENEFITS ........................................................................................ 91

16.01  COVERED VISION EXPENSES ......................................................................... 91

**Exhibit A**

16.02  COVERED VISION PROCEDURES AND MAXIMUM AMOUNT PAYABLE............ 91
16.03  LIMITATION ON PAYMENT FOR VISION BENEFITS ........................................... 91

ARTICLE XVII.  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT...................................................... 93

ARTICLE XVIII.  PLAN BENEFIT LIMIT............................................................................................. 95

18.01  THE TERM PLAN BENEFIT LIMIT IS DEFINED AS THE MAXIMUM PAYABLE BY
THE PLAN IN A GIVEN CALENDAR YEAR UNDER ANY OR ALL APPLICABLE
PLAN BENEFITS.  THE PLAN MAY INCLUDE SUCH PLAN BENEFIT LIMIT AS
DESCRIBED.  THE AMOUNT OF THE PLAN BENEFIT LIMIT, IF ANY, IS
DETERMINED BY REFERENCING SECTION 20.06. ........................................... 95

18.02  IN ADDITION TO ALL OTHER LIMITATIONS, THERE IS A SEPARATE
COVERAGE LIMIT OF $1,000,000 PER COVERED INDIVIDUAL PER CALENDAR
YEAR: PAYMENTS BY THE FUND, UPON ALL COVERED CLAIMS INCURRED
BY ANY COVERED INDIVIDUAL IN ANY CALENDAR YEAR (2002 OR LATER),
SHALL NOT EXCEED $1,000,000.  THIS COVERAGE LIMIT IS TO BE
CALCULATED AND APPLIED SEPARATELY, WITHOUT ANY REGARD FOR
ANY OTHER LIMIT THAT MAY ALSO BE APPLICABLE........................................ 95

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (PLAN C6).................................... 96

ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C6) .................................................................... 97

20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS......................... 97
20.02  DENTAL BENEFITS ............................................................................... 100
20.03  VISION BENEFITS ................................................................................. 100
20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
THE WAIVER OF PREMIUM DISABILITY BENEFIT ............................................ 100
20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT...................................... 101
20.06  PLAN BENEFIT LIMIT ............................................................................. 101
20.07  PLAN DEDUCTIBLE ............................................................................... 101
20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT........ 101

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan C5).................................... 103

ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C5) .................................................................... 104

20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS....................... 104
20.02  DENTAL BENEFITS ............................................................................... 107
20.03  VISION BENEFITS ................................................................................. 107
20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
THE WAIVER OF PREMIUM DISABILITY BENEFIT ............................................ 107
20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT...................................... 108
20.06  PLAN BENEFIT LIMIT ............................................................................. 108

**Exhibit A**

20.07   PLAN DEDUCTIBLE ........................................................................... 108
20.08   TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT......... 108

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS  (Plan C4)..................................... 110

ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C4) ............................................................. 111

20.01   BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 111
20.02   DENTAL BENEFITS ........................................................................ 113
20.03   VISION BENEFITS ......................................................................... 114
20.04   LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
         BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
         THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 115
20.05   MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT........................................ 115
20.06   PLAN BENEFIT LIMIT ..................................................................... 115
20.07   PLAN DEDUCTIBLE ........................................................................ 116
20.08   TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT......... 116

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS  (PLAN MODIFIED C4) ............... 117

ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN MODIFIED C4)............................................. 118

20.01   BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 118
20.02   DENTAL BENEFITS ........................................................................ 120
20.03   VISION BENEFITS ......................................................................... 121
20.04    LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
         BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
         THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 122
20.05   MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT........................................ 122
20.06   PLAN BENEFIT LIMIT ..................................................................... 122
20.07   PLAN DEDUCTIBLE ........................................................................ 122
20.08   TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT......... 123

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan A)..................................... 124

ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN A) ............................................................. 125

20.01   BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 125
20.02   DENTAL BENEFITS ........................................................................ 127
20.03   VISION BENEFITS ......................................................................... 128
20.04   LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
         BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
         THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 128
20.05   OUT-OF-POCKET EXPENSE LIMIT.............................................................. 129
20.06   PLAN BENEFIT LIMIT ..................................................................... 129
20.07   PLAN DEDUCTIBLE ........................................................................ 129

ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan B)..................................... 130

**Exhibit A**

ARTICLE XX. SCHEDULE OF BENEFITS (PLAN B) ............................................................... 131

    20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 131
    20.02  DENTAL BENEFITS ................................................................................... 133
    20.03  VISION BENEFITS .................................................................................... 134
    20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
           BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
           THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 134
    20.05  OUT-OF-POCKET EXPENSE LIMIT................................................................ 135
    20.06  PLAN BENEFIT LIMIT ................................................................................ 135
    20.07  PLAN DEDUCTIBLE ................................................................................... 135

ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan S)........................................ 136

ARTICLE XX. SCHEDULE OF BENEFITS (PLAN S) ............................................................... 137

    20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 137
    20.02  DENTAL BENEFITS ................................................................................... 139
    20.03  VISION BENEFITS .................................................................................... 140
    20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
           BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
           THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 140
    20.05  OUT-OF-POCKET EXPENSE LIMIT................................................................ 140
    20.06  PLAN BENEFIT LIMIT ................................................................................ 140
    20.07  PLAN DEDUCTIBLE ................................................................................... 140
    20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT......... 140

ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan MM100) ............................ 141

ARTICLE XX. SCHEDULE OF BENEFITS (PLAN MM100) ....................................................... 142

    20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 142
    20.02  DENTAL BENEFITS ................................................................................... 144
    20.03  VISION BENEFITS .................................................................................... 145
    20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
           BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
           THE WAIVER OF PREMIUM DISABILITY BENEFIT ........................................... 145
    20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT....................................... 146
    20.06  PLAN BENEFIT LIMIT ................................................................................ 146
    20.07  PLAN DEDUCTIBLE ................................................................................... 146
    20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT......... 147

ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan MM200) ............................ 148

ARTICLE XX. SCHEDULE OF BENEFITS (PLAN MM200) ....................................................... 149

    20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS...................... 149

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

20.02  DENTAL BENEFITS ............................................................................................ 151
20.03  VISION BENEFITS .............................................................................................. 152
20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT
       BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND
       THE WAIVER OF PREMIUM DISABILITY BENEFIT .......................................... 152
20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT ...................................... 153
20.06  PLAN BENEFIT LIMIT ........................................................................................ 153
20.07  PLAN DEDUCTIBLE ........................................................................................... 153
20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT ......... 154

**Exhibit A**

This page intentionally left blank.

**Exhibit A**

---

## ARTICLE I. DEFINITIONS

---

The terms used in this Plan shall have the following meanings.

| | | |
|---|---|---|
| 1.01 | **Accidental Bodily Injury:** | Physical damage to the body, e.g. a hurt, a wound, a trauma, resulting from a sudden and unexpected event, injury or external force occurring without forewarning. |

1.02     **Accidental Death:**     Any death directly and solely resulting from external means or an external cause, as opposed to a death caused or contributed to by a disease or infirmity. The Accidental Death and Dismemberment Benefit is not payable if a death or other loss that is otherwise within the scope of that benefit is caused or contributed to by any act, omission, condition or event that is described as a limitation or exclusion in Section 14.08.

1.03     **Accidental Death and Dismemberment Benefit:**

(a)     The benefit payable to the beneficiary of a Covered Participant upon the death of the Covered Participant resulting from Accidental Bodily Injury; or

(b)     The benefit payable to a Covered Participant upon the accidental loss of a limb or an eye as set forth in Sections 14.08 and 20.04.

The Accidental Death and Dismemberment Benefit is not payable if a death or other loss that is otherwise within the scope of that benefit is caused or contributed to by any act, omission, condition or event that is described as a limitation or exclusion in Section 14.08.

1.04     **Active Employee:**     A person who is actively at work as an Employee, after the commencement date of coverage, except that, with respect to periods during which an Employee's Employer is obligated to make Employer Contributions on his behalf pursuant to a Collective Bargaining Agreement or applicable law, or with respect to periods during which Coverage is otherwise available for the Employee under this Plan, an Employee on vacation, involved in a Temporary Work Stoppage, on Sick Leave, or confined to a hospital shall be considered an Active Employee. An Employee on Leave of Absence is not an Active Employee unless such Leave of Absence is also on Family Medical Leave under federal

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

law. An Employee on Lay-off, or otherwise unable to actively work, is not an Active Employee.

1.05 **Alcoholism or Drug Abuse Treatment Facility:**

A treatment facility or clinic which provides a program of effective medical and therapeutic treatment for either alcoholism and/or drug abuse approved by the attending Physician and the Fund, and which:

(a) Is licensed, certified or approved as an Alcoholism and/or Drug Abuse Treatment Facility by the state or jurisdiction in which it is located, and does not have a license as a "Hospital";

(b) Has or maintains a specific and detailed program requiring full residence or full participation by the patient; and

(c) Provides at least the following basic services:

(1) Room and board (inpatient);

(2) Evaluation and diagnosis;

(3) Counseling; and

(4) Referral and orientation to specialized community resources.

1.06 **Basic Benefits:**

Basic Benefits are described in detail in Article XII and Section 20.01 a) through p).

1.07 **Bone Marrow Transplant:**

Any care, treatment services or supplies related to the transfer of stem cells into (or back into) the patient, including bone marrow or stem cell harvesting and all steps involved in the administration of chemotherapy at doses higher than standard.

1.08 **Child:**

A Participant's natural child, adopted child, step-child; a child placed with a Participant for adoption; or a child for whom the Participant is obligated to provide support pursuant to a Qualified Medical Child Support Order. A child whose legal guardian or custodian is a Participant shall only be considered a "Child" under this definition if the Participant establishes that the guardianship or custodianship is permanent and established pursuant to court order and the Participant (or the Participant

- 2 -

**Exhibit A**

and spouse) is the sole support of the child unless that child is a beneficiary under a Qualified Medical Child Support Order under federal law. Temporary designation of guardianship entered into primarily for the purpose of obtaining coverage for a person under this Plan shall not qualify that person as a "Child" eligible for coverage. The term "Child" shall not include a child who is married, or who has been legally adopted and who is no longer dependent upon a Participant for support, and shall not include any child who is not dependent upon the Participant for support other than the coverage provided by this Plan, unless that child is a beneficiary under a Qualified Medical Child Support Order under federal law.

| | | |
|---|---|---|
| 1.09 | **Chiropractor:** | A legally qualified and licensed Chiropractor. |

| | | | |
|---|---|---|---|
| 1.10 | **Clinical Psychologist:** | (a) | A person who is licensed or certified as a Psychologist by the appropriate governmental authority having jurisdiction over such licensure or certification, as the case may be, in the jurisdiction where such person renders service to the Covered Individual; or |
| | | (b) | A person who is a Member or Fellow of the American Psychological Association, if there is no licensure or certification in the jurisdiction where such person renders service to the Covered Individual. |

| | | |
|---|---|---|
| 1.11 | **Collective Bargaining Agreement:** | An agreement reached by bargaining as to wages and conditions of work and to which the Local Union is a party. |

| | | |
|---|---|---|
| 1.12 | **Continuation Coverage:** | A continuation of the same terms, conditions, limitations and exclusions of Coverage as are provided by the Fund to a Covered Individual on the day before a Qualifying Event upon completion of election procedures pursuant to Section 3.19. |

| | | |
|---|---|---|
| 1.13 | **Continuous Funded Employment:** | Uninterrupted employment of a Participant during which continuous Employer Contributions have been made on his behalf, by an Employer, to the Fund or to any Other Plan having a Reciprocity Agreement in effect with the Fund. |

- 3 -

**Exhibit A**

1.14 **Cosmetic:**
Care, treatment, services or supplies the primary effect of which is to improve the physical appearance of a Covered Individual. The fact that there may be an incidental medical benefit does not prevent a determination that the care, treatment, services or supplies are cosmetic.

1.15 **Coverage:**
Full entitlement to all benefits of this Plan by a Participant or Dependent, unless limited or excluded by any provision of this Plan.

1.16 **Covered Dependent:**
A Dependent who qualifies for Coverage under this Plan in accordance with the provisions of Article III of this Plan.

1.17 **Covered Individual:**
A Covered Participant or a Covered Dependent. See also Section 3.31.

1.18 **Covered Participant:**
A Participant who qualifies for Coverage under this Plan in accordance with the provisions of Article III of this Plan.

1.19 **Dental Benefits:**
The benefits set forth in Article XV and Section 20.02.

1.20 **Dentist:**
A legally qualified and licensed Dentist.

1.21 **Dependent:**
A Participant's Spouse or Child.

1.22 **Disability:**
An illness, injury or pregnancy, except as provided in Section 12.10.

1.23 **Discharge:**
A permanent termination of employment initiated by the Employer.

1.24 **Eligible Major Medical Expenses:**
(a) The Reasonable and Customary charges incurred by a Covered Individual for medical services, supplies and treatments performed or prescribed by a Physician, including:

- 4 -

**Exhibit A**

(1)     Charges by a Hospital for room and board and other services required for purposes of treatment. The allowance for a private room is limited to the Hospital's average semi-private room rate;

(2)     Charges by a Physician or surgeon for professional services, except those related to a routine physical examination;

(3)     Charges for services of legally licensed physiotherapists, graduate registered nurses and other allied licensed health professionals, provided such services are not rendered by a member of the person's family;

(4)     Charges for drugs and medicines purchased with a Physician's prescription, dispensed by a pharmacist and bearing the Federal or State Legend;

(5)     Charges for rental of braces, crutches, wheelchairs, hospital-type beds and such durable medical equipment as may be approved by the Fund. Rental charges payable shall in no event exceed the Reasonable and Customary purchase price of such items. Purchase of such items will be approved only if deemed by the Fund to be more economical than rental;

(6)     Charges for prosthetics or prosthetic devices;

(7)     Charges for X-ray and laboratory procedures, except those related to a routine physical examination;

(8)     Charges by a Hospital or by a professional licensed ambulance service for necessary transportation by ambulance to and from the Hospital;

(9)     Charges by a Dentist or dental surgeon for repair of the jaws and for repair or

- 5 -

**Exhibit A**

replacement of natural teeth damaged. through accidental bodily injury;

(10)    Charges for chemotherapy or radiation treatments;

(11)    Charges for contact lenses and/or glasses prescribed to treat glaucoma, keratoconus or resulting from cataract surgery, once in a lifetime;

(12)    Charges for treatment or service for the prevention or cure of alcoholism or drug abuse, or for psychiatric treatment while confined in, or as an outpatient of, a Hospital or licensed psychiatric facility;

(13)    Charges for conventional hearing aids and one (1) set of batteries, once every three (3) years;

(14)    Charges for surgical assistance;

(15)    Charges for renal dialysis; and

(16)    Charges for outpatient cardiac rehabilitation programs which began less than six (6) months after onset of heart attack or other invasive cardiac procedure, are performed at a qualified Hospital, and do not exceed three (3) months in duration.

(b)    The following are not considered Eligible Major Medical Expenses:

(1)    Any charge excluded under Article IV, General Exclusions, Limitations And Conditions For Payment Of Claims, or under Article V, Coordination Of Benefits;

(2)    Any charge for eye examinations for the correction of vision, fitting of glasses or contact lenses, except as otherwise provided in Section 1.24(a)(11);

(3)    Medicines or drugs which can be purchased over the counter, dietary supplements, vitamins and any contraceptive drug or device, or any

- 6 -

**Exhibit A**

other drugs not specifically authorized by the Board of Trustees;

(4) Any charge, or any portion of any charge, covered by any benefit of this Plan, other than the Major Medical Expense Benefit under Article XIII;

(5) Any portion of a provider charge that exceeds the Reasonable and Customary charge;

(6) Cost of transportation and lodging in connection with medical treatment, transportation equipment, construction modifications, clothing (including undergarments) and capital asset items;

(7) Specialized furniture and equipment unless approved by the Fund;

(8) Any dental service or appliance, even if performed in conjunction with medical treatment, except as otherwise provided in Section 1.24(a)(9); and

(9) Any charge for educational programs or materials.

1.25 **Employee:**

(a) All persons who are accepted by the Trustees for participation in the Fund, under the terms and conditions stated by the Trustees for participation, and who are Active Employees of an Employer under the terms and conditions of a Collective Bargaining Agreement which requires Employer Contributions be made to the Fund, and such other employees of the Employer as are proposed and accepted by the Trustees for participation, on whose behalf payments are required by the agreement of the Employer or applicable law to be made to the Fund;

(b) All persons employed by the Union upon being proposed by the Union and accepted by the Trustees; as to such Union personnel, the Union shall be considered an Employer solely for the purpose of contributions within the meaning of the Trust Agreement, as herein defined, and shall, on behalf of such personnel,

- 7 -

**Exhibit A**

make payments to the Trust Fund at the same times and at the rate of payment equal to that made by any other Employer who is a party to the Trust Agreement;

(c) All persons employed by Central States, Southeast and Southwest Areas Health and Welfare Fund or Central States, Southeast and Southwest Areas Pension Fund upon acceptance by the Trustees; as to such Trust Fund personnel, the Trustees shall be deemed an Employer solely for the purpose of contributions within the meaning of the Trust Agreement, on behalf of such personnel, make payments to the Trust Fund at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust Agreement; or

(d) All persons who are Trustees of Central States, Southeast and Southwest Areas Health and Welfare Fund or Central States, Southeast and Southwest Areas Pension Fund upon acceptance by the Trustees; on behalf of such persons who are Trustees, their Employers shall make contributions to the Trust Fund at the times and at the rate of payment equal to that required by any other Employer who is a party to the Trust Agreement.

In all instances the common-law test for, or the applicable statutory definition of, master-servant relationship shall control Employee status. The continuation of Employee status shall be subject to such rules as the Trustees may adopt.

1.26 **Employer:**

Any Employer (including an Association of Employers) who is or becomes a party to a Collective Bargaining Agreement and who, with the acquiescence of the Trustees, agrees to be bound by the Trust Agreement and this Plan and is accepted for participation in the Plan by the Trustees, subject to such rules as the Trustees may in their discretion adopt. The Local Union, the Health and Welfare Fund and the Pension Fund shall be deemed to be Employers of those persons employed and proposed by such organizations and accepted by the Trustees.

- 8 -

**Exhibit A**

| 1.27 | **Employer Contributions:** | Contributions made by Employers to the Fund; contributions made by the Local Union or the Fund on behalf of their Employees; and, amounts set aside by the Fund on behalf of its Employees. |

| 1.28 | **Employer Obligation Date:** | The date on which an Employer first becomes obligated, by reason of contract or agreement with the Fund, to make contributions to the Fund on behalf of a group of Employees. |

| 1.29 | **Family Medical Leave:** | A voluntary absence from work taken by an employee pursuant to the provisions of the federal Family Medical Leave Act. |

| 1.30 | **Former Covered Participant:** | A person who was a Covered Participant but presently has no Coverage. |

| 1.31 | **Fund:** | The Central States, Southeast and Southwest Areas Health and Welfare Fund. |

| 1.32 | **Health Maintenance Organization (HMO):** | An organization operating as a Health Maintenance Organization. |

| 1.33 | **Hospital:** | A facility licensed by the State or jurisdiction in which it is located and operated for the care and treatment of sick and injured persons, with organized facilities for surgery and diagnosis and a twenty-four (24) hour nursing service. |

| 1.34 | **Hospital Confinement:** | A hospital stay of at least overnight duration. An emergency room visit is not part of a Hospital Confinement unless it leads directly to a stay in a hospital room. |

| 1.35 | **Immediate Coverage:** | Full entitlement to all benefits of this Plan without fulfilling the Initial Contribution Period. |

| 1.36 | **Initial Contribution Period:** | A period of consecutive days beginning on the day an Employer becomes obligated to make Employer Contributions for a Participant and ending on the Sunday of the eighth (8th) week thereafter, provided |

- 9 -

**Exhibit A**

|       |       | the Employer remains obligated to make weekly Employer Contributions on behalf of the Participant throughout the period. |

1.37  **Lay-Off:**

An involuntary separation from employment caused by an Employer suspending Employees. Individuals shall not be deemed on Lay-off if they engage in gainful employment for any other employer, nor shall Lay-Off status continue when an individual retires or otherwise terminates the employment relationship.

1.38  **Leave of Absence:**

An Employee's voluntary temporary absence from employment, approved by the Employer. Individuals on Leave of Absence shall not engage in gainful employment for any other employer, nor shall Leave of Absence status continue when an individual retires.

1.39  **Life Insurance Benefit:**

(a)  The benefit payable at a Covered Participant's death as set forth in Article XIV and Section 20.04 of the applicable plan.

(b)  The benefit payable to a Covered Participant upon the death of a Dependent Spouse or Child as set forth in Article XIV and Section 20.04 of the applicable plan.

1.40  **Local Union:**

Those Local Unions affiliated with the International Brotherhood of Teamsters who have executed Collective Bargaining Agreements which require contributions to be made to the Fund on behalf of the covered employees, and such other unions as the Trustees may agree upon.

1.41  **Loss of Time Benefit:**

The benefits set forth in Sections 12.02 and 20.01(a).

1.42  **Loss of Time Disability Coverage:**

Coverage for a Covered Participant and his eligible Covered Dependents which may be available during periods when the Covered Participant is eligible for the Loss of Time Benefit.    See Section 20.01(a) for application, if any.

1.43  **Maintenance Care:**

Maintenance Care is care provided to a person who needs assistance or support for the essence of daily living but who is not under a course of treatment which

- 10 -

**Exhibit A**

will improve his condition to the extent necessary to enable him to function without such assistance or support, except for care which is necessary to treat a curable illness. A Maintenance Care determination is not precluded by the fact that a patient is under the care of a Physician and that the services are provided at the Physician's request.

1.44   **Major Medical Expense Benefit:**   The benefits set forth in Article XIII and Section 20.01(p).

1.45   **Major Medical Out-of-Pocket Expense Limit:**   A maximum liability per Covered Individual or per family per calendar year as set forth in Article XVII and Section 20.05.

1.46   **New Group:**   A group of Employees who become Participants when their Employer first becomes obligated to make Employer Contributions on their behalf.

1.47   **New Participant:**   An Employee who becomes a Participant by joining a group after the Employer of the group became obligated to make Employer Contributions to the Fund on behalf of the group.

1.48   **Other Plan:**   Any group plan, insurance policy or contract which provides benefits for hospital, surgical, dental, psychiatric, chiropractic or other medical treatment, and any plan or insurance coverage hereafter described in subparagraph (f). Other Plan includes a plan providing benefits through:

(a)   Group blanket or franchise insurance coverage;

(b)   Group Blue Cross, Group Blue Shield, group practice or other prepayment coverage;

(c)   Any coverage under labor-management trusteed plans, union welfare plans, employer organizations or employee benefits organization plans;

(d)   Any coverage under government programs or any coverage required or provided by statute;

(e)   Any other arrangement providing hospital, surgical, dental, psychiatric, chiropractic or

- 11 -

**Exhibit A**

other medical treatment for members of a group; and

(f)   No fault, personal injury protection or financial responsibility motor vehicle insurance coverage which provides benefits to or for a Covered Individual for bodily or psychological injury, including but not limited to, benefits for hospital, surgical, dental, psychiatric, chiropractic and other medical treatment.

The term "Other Plan" shall be construed separately with respect to each policy or other provision thereof, sub-plan, contract or other arrangement for benefits or services and separately with respect to that portion of any such policy or other provision thereof, sub-plan, contract or other arrangement (whether a separate plan or not) which reserves the right to take the benefits or services of Other Plans into consideration in determining its benefits and that portion which does not.

1.49   **Participant:**            An Employee for whom an Employer is obligated to make Employer Contributions or an Employee who is entitled to and who does make Self-Payments to the Fund.

1.50   **Pension Fund:**          The Central States, Southeast and Southwest Areas Pension Fund.

1.51   **Physician:**             A legally qualified and licensed Physician.

1.52   **Plan:**                  The Central States, Southeast and Southwest Areas Health and Welfare Plan as set forth herein and as hereafter amended.

1.53   **Plan Benefit Limit:**    A maximum payout per calendar year for combined benefits as set forth in Article XVIII and Section 20.06.

1.54   **Prescription Drug:**     A drug or medicine prescribed by a Physician or Dentist, dispensed by a pharmacist, not available over the counter (except for insulin and insulin syringes) and bearing the Federal or State Legend.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

1.55 **Prior Carrier:**  Any insurance company, welfare plan or other entity which provided life, hospital, surgical, dental or medical coverage for a group of Employees and their Dependents immediately before the group of Employees became Participants under this Plan.

1.56 **Privacy Rule:**  The Standards for Privacy of Individually Identifiable Health Information published at 45 C.F.R. Part 160 and 45 C.F.R. Part 164, Subparts A and E.

1.57 **Protected Health Information:**  Shall have the same meaning as the term "protected health information" as defined at 45 C.F.R § 164.501.

1.58 **Psychiatric Treatment Facility:**  A facility that is:

(a)  Primarily engaged in providing, under the supervision of a Physician, psychiatric services for the diagnosis and treatment of mentally ill persons; and

(b)  Licensed, certified or approved as a Psychiatric Treatment Facility, and not as a Hospital, by the state or jurisdiction in which it is located.

1.59 **Qualified Medical Child Support Order:**  Any order entered by a court of competent jurisdiction that complies with requirements of the federal Qualified Medical Child Support Act and which requires coverage for one or more dependent children.

1.60 **Qualifying Event:**  Any of the events described in Section 3.16 which would result in a loss of coverage of the Covered Individual unless continuation coverage is elected.

1.61 **Quit:**  A permanent termination of employment initiated by the Employee.

1.62 **Reasonable and Customary:**  The usual, Reasonable and Customary charge for the treatment, supply, or service, determined by comparison with the charges customarily made for similar treatments, supplies or services to individuals with similar medical conditions within a given geographical area.

- 13 -

**Exhibit A**

1.63    **Self-Payments:**    Contributions to the Fund under this Plan by a Participant on his own behalf.

1.64    **Service in the Uniformed Services:**    Service by a Covered Participant in the Uniformed Services, which means and includes the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or emergency, provided that such services includes the performance of duty by the Covered Participant on a voluntary or involuntary basis in a Uniformed Service under competent authority and also includes any period during which a Covered Participant is absent from employment by an Employer for the purpose of an examination to determine the Covered Participant's fitness to perform any such duty, and provided further that such service results in the absence of the Covered Participant from Continuous Funded Employment by an Employer.

1.65    **Sick Leave:**    A temporary absence from work caused by an Employee's illness, injury or pregnancy.

1.66    **Spouse:**    An individual who is married to a Participant in a legally recognized civil or religious ceremony. A Participant's common-law Spouse shall be considered a Spouse for purposes of the Plan, if:

(a)    The Participant's state of domicile recognizes common-law marriage; and

(b)    The Participant furnishes the Fund with appropriate documentation that the couple has fulfilled all conditions which his state of domicile requires for such a marriage.

1.67    **Standard Medical Care,**
**Treatment, Services or Supplies:**    Care, treatment, services or supplies which are uniformly and professionally endorsed by the general medical community as Standard Medical Care, Treatment, Services, or Supplies.

- 14 -

**Exhibit A**

1.68   **TeamCare®:**

A program of preferred providers who agree to negotiated rates for medical services and supplies for the Fund, in exchange for which the Fund provides financial incentives for Participants to use the services of these providers. The Fund publishes a list of TeamCare providers periodically, as well as the benefit modifications which apply and the areas covered by a TeamCare network.

1.69   **Teamsters:**

The International Brotherhood of Teamsters, and its affiliated Local Unions.

1.70   **Temporary Work Stoppage:**

A strike by Participants which is sanctioned by the Teamsters.

1.71   **Terminated Employee:**

An individual who is separated from his employment by reason of Quit or Discharge.

1.72   **Total and Permanent Disability:**

A disease or bodily injury which will permanently, continuously and wholly prevent a person from engaging in any occupation or employment for wage or profit for the duration of his life. Additionally, the complete and irrecoverable loss of the sight of both eyes, or the use of both hands, or of both feet, or of one hand and one foot.

1.73   **Total and Permanent Disability Installment Benefit:**

The benefit set forth in Sections 14.05 and 20.04 provided to those Covered Participants under the age of fifty (50), who become totally and permanently disabled, as defined in Section 1.72 of this Document.

1.74   **Trust Agreement:**

The Agreement and Declaration of Trust made and entered into on the fourteenth (14th) day of March, 1950, by and between Central Conference of Teamsters, Southern Conference of Teamsters and their affiliated Local Unions, and the Southeastern Area Motor Carriers Labor Relations Association; Southwest Operators Association; and Motor Carriers Employers Conference—Central States, and as amended from time to time thereafter by the Trustees.

1.75   **Trustees:**

The Trustees designated and appointed in accordance with the terms of the Trust Agreement.

- 15 -

**Exhibit A**

1.76    **Trust Fund:**                          All assets, including principal and interest, of the Trust created by the Trust Agreement.

1.77    **Vision Benefits:**                     The benefits set forth in Article XVI and Section 20.03.

1.78    **Waiver of Premium Disability Benefit:**                                The benefit set forth in Sections 14.06 and 20.04 provided to those Covered Participants, between the ages of fifty (50) and fifty-nine (59) inclusive, who become totally and permanently disabled by bodily injury or disease, as defined in Section 1.72 of this document.

F.234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE II. EFFECTIVE DATE OF GENERAL PROVISIONS

2.01   THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, <u>PROVIDED THAT</u> THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), <u>AND PROVIDED FURTHER</u> THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 /  09/30/2007

**Exhibit A**

## ARTICLE III.  PARTICIPATION AND COVERAGE

### 3.01   QUALIFICATIONS AS A COVERED PARTICIPANT

Unless otherwise provided herein, a Participant shall become a Covered Participant when his period of Continuous Funded Employment equals or exceeds his Initial Contribution Period and, unless otherwise provided herein, a Participant shall be a Covered Participant only in the period for which his Employer is required to make Employer Contributions on his behalf pursuant to the Collective Bargaining Agreement or applicable law.

### 3.02   QUALIFICATIONS AS A COVERED DEPENDENT

Unless otherwise provided herein, a Dependent shall be considered a Covered Dependent when the person upon whom he is dependent is considered a Covered Participant provided the Covered Participant has elected the dependent coverage option under his plan.

### 3.03   COMMENCEMENT OF COVERAGE OF MEMBERS OF A NEW GROUP PREVIOUSLY INSURED

If an Employer of a New Group had provided group life, hospital, surgical, dental or medical insurance coverage for members of the New Group and their Dependents immediately prior to the Employer Obligation Date, members of the New Group shall have Coverage under the Plan as follows:

  (a)   A member of the New Group who is an Active Employee on the Employer Obligation Date shall receive Immediate Coverage retroactive to the Employer Obligation Date when the following is received from the Employer:

  (1)   An initial list of Active Employees (as of the Employer Obligation Date) on the "509—New Group Report" form which includes the name of such Active Employee; and

  (2)   A copy of the Prior Carrier's policy or welfare plan or sufficient proof of said policy.

  (b)   A member of the New Group who is not an Active Employee on the Employer Obligation Date shall receive Immediate Coverage on the later of (1) the date he becomes an Active Employee or (2) the date the Fund receives from the Employer a seniority list of his Employees.

### 3.04   COMMENCEMENT OF COVERAGE OF MEMBERS OF A NEW GROUP NOT PREVIOUSLY INSURED

If an Employer of a New Group had not provided group life, hospital, surgical, dental or medical insurance coverage for members of the New Group and their Dependents immediately prior to the Employer Obligation Date, members of the New Group shall have Coverage under the Plan as follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

(a)     A member of the New Group who is an Active Employee on the Employer Obligation Date shall have Coverage under the Plan on the first (1st) day following the Initial Contribution Period, provided the Fund receives from the Employer an initial list of Active Employees (as of the Employer Obligation Date) on the "509—New Group Report" form which includes the name of such Active Employee.

(b)     A member of the New Group who is not an Active Employee shall become a Participant only upon becoming an Active Employee, at which time his Initial Contribution Period shall commence and his Coverage shall be determined in accordance with the rules in Section 3.05.

## 3.05    COMMENCEMENT OF COVERAGE OF NEW PARTICIPANTS

A New Participant shall have Coverage under the Plan on the first (1st) day following the Initial Contribution Period, provided the Participant is an Active Employee on this day.  The Fund shall accept Self-Payments from the Participant during the Initial Contribution Period only after the first contribution has been made by the Employer.

A New Participant who previously had Coverage and then terminated employment with an Employer in order to enter Service in the Uniformed Services shall receive Immediate Coverage upon his return to covered employment provided it is within twenty-six (26) weeks of his discharge from Service in the Uniformed Services.

A New Participant whose Coverage is terminated and returns to Coverage within twenty-six (26) weeks of the date that his previous Coverage (including Loss of Time Coverage) terminated shall have Immediate Coverage.

A Former Covered Dependent who goes to work for an Employer who is obligated to make contributions to the Fund shall receive Immediate Coverage upon the date the Employer becomes required to make contributions on behalf of this former Covered Dependent, provided such contributions are required to begin within sixty (60) days after the termination of Dependent Coverage.

## 3.06    COMMENCEMENT OF COVERAGE OF COVERED PARTICIPANTS FOR WHOM UNINTERRUPTED EMPLOYER CONTRIBUTIONS AND/OR SELF-PAYMENTS HAVE BEEN RECEIVED

If the Fund has received uninterrupted Employer Contributions and/or Self-Payments on behalf of a Covered Participant, such Covered Participant shall have Immediate Coverage when he commences employment for any Employer required to make contributions under the Plan on his behalf.

## 3.07    COMMENCEMENT OF COVERAGE OF EMPLOYEES COVERED UNDER ANOTHER PLAN OFFERED BY THE FUND

An Employee and his Dependents covered under one plan offered by the Fund shall be considered a Covered Participant and Covered Dependents under a successor plan offered by the Fund on the date the Employer of the Covered Participant becomes obligated to make the amount of contributions required for the successor plan, with the exception of the Total and Permanent Disability Installment Benefit.

- 19 -

**Exhibit A**

(a)     Payment of the Loss of Time Benefit will be governed by the terms and conditions of the successor plan if the Disability began while the first plan was in effect.

(b)     A Participant under one plan offered by the Fund who is making Self-Payments in accordance with that Plan may not elect to gain Coverage under a different plan by increasing or decreasing the level of his Self-Payments.

(c)     Payment of the Total and Permanent Disability Installment Benefit will be governed by the terms and conditions of the first plan if the Disability began while the first plan was in effect.

### 3.08    COMMENCEMENT OF COVERAGE OF NEW PARTICIPANTS ELIGIBLE UNDER A PLAN OFFERED BY A LOCAL UNION

A New Participant who has, through his previous Employer, established eligibility for benefits under a health and welfare plan offered by a Local Union affiliated with the Teamsters and not offered by the Fund, shall receive Immediate Coverage on the date he begins to work for an Employer, subject to the following conditions:

(a)     His coverage must be continuous, and

(b)     On the date he begins to work for an Employer, there must be a reciprocity agreement in effect between the Fund and the Local Union.

### 3.09    EFFECT OF TEMPORARY WORK STOPPAGE ON COVERAGE

Unless the Trustees in their sole discretion decide at any time to disallow or terminate Plan Coverage before or during a specific Temporary Work Stoppage, a Covered Participant who is absent from employment because of a Temporary Work Stoppage (but not Covered Participants who elect to return to work during the Temporary Work Stoppage) shall receive Plan Coverage regardless of whether contributions to the Fund are actually made, subject to the following conditions:

(a)     The Temporary Work Stoppage must be sanctioned by the Teamsters;

(b)     Except for a Temporary Work Stoppage by Employees subject to the National Master Freight Agreement, the Local Union involved must provide the Fund with confirmation of the sanctioning, the inception and termination dates thereof, and a list of Employers and Employees involved in said Temporary Work Stoppage; and

(c)     The Covered Participant must be an Active Employee when the Temporary Work Stoppage begins.

A Participant who has not established Coverage and who is absent from employment because of a Temporary Work Stoppage shall, unless the Trustees in their sole discretion decide at any time to disallow or terminate Plan Coverage before or during a Temporary Work Stoppage, receive Coverage on the first (1st) day after the Initial Contribution Period would have ended had the Employer remained obligated to make Employer Contributions throughout the Temporary Work Stoppage, regardless of whether contributions to the Fund are actually made subject to the conditions set forth in (a) and (b) above. If a Temporary Work Stoppage is in progress before the Trustees decide to disallow or terminate Plan

- 20 -

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

Coverage during that Temporary Work Stoppage, that decision by the Trustees will be applied prospectively and will not result in a loss of Coverage during periods prior to the decision.

### 3.10    EFFECT ON COVERAGE OF ABSENCE FROM CONTINUOUS FUNDED EMPLOYMENT DURING, AND AS A RESULT OF, SERVICE IN THE UNIFORMED SERVICES

A Covered Participant who is absent from Continuous Funded Employment by an Employer for a period of less than thirty-one (31) days during, and as a result of, Service in the Uniformed Services, shall receive Coverage for himself and all of his Covered Dependents throughout such period, without making Self-Payments, regardless of whether Employer Contributions are actually made to the Fund during such period. A Covered Participant who is absent from Continuous Funded Employment for a period of more than thirty (30) days during, and as a result of, Service in the Uniformed Service, shall be eligible (as will all of his Covered Dependents) to elect Continuation Coverage in accordance with the provisions of Sections 3.15 through 3.21. If Coverage of a Covered Participant (and his Covered Dependents) is terminated at any time during his absence from Continuous Funded Employment by an Employer as a result of Service in the Uniformed Services and he makes a timely application for reemployment by the same Employer at the conclusion of such Service in the Uniformed Services, any such reinstatement of Coverage of the Covered Participant (and his Covered Dependents) shall be Immediate Coverage, provided that there shall be no such Immediate Coverage relative to any illness or injury of the Covered Participant which is determined by the Secretary of Veterans Affairs to have been incurred or aggravated during performance of Service in the Uniformed Services. As used in the preceding sentence, "a timely application for reemployment by the same Employer" means such application within the following time limitations (except as those limitations are required by law to be extended):

   (a)    within ninety (90) days after completion of a period of Service in the Uniformed Services that was more than one hundred eighty (180) days; and

   (b)    within thirty (30) days after completion of a period of Service in the Uniformed Services that was more than 30 days and less than one hundred eighty-one (181) days.

### 3.11    TERMINATION OF COVERAGE OF PARTICIPANTS HAVING TOTAL AND PERMANENT DISABILITY OR ON SICK LEAVE

A Covered Participant who has a Total and Permanent Disability or who goes on Sick Leave shall lose his Coverage after the Saturday of the last week for which Employer Contributions are required to be made on his behalf under the applicable law or Collective Bargaining Agreement, unless Loss of Time Disability Coverage is in effect (see Section 20.01(a) for application, if any). Upon exhaustion of his Coverage, such Former Covered Participant may maintain Coverage if he elects to make Self-Payments pursuant to Section 3.20.

### 3.12    TERMINATION OF COVERAGE OF PARTICIPANTS CHANGING EMPLOYEE STATUS

A Covered Participant who goes on Lay-Off or a Leave of Absence, whose employment relationship is terminated, or whose employer is the subject of a voluntary or involuntary petition in bankruptcy shall lose his Coverage after the Saturday of the last week for which Employer Contributions are required to be made on his behalf or (in the case of bankruptcy) after the Saturday of the week of filing. A Former Covered Participant may maintain Coverage by making Self-Payments pursuant to the Plan's Continuation Coverage provisions.

- 21 -

**Exhibit A**

### 3.13    TERMINATION OF COVERAGE DUE TO EMPLOYER WITHDRAWAL

A Covered Participant shall lose his Coverage after the Saturday of the last week for which Employer Contributions are required to be made on behalf of any Employees of the Employer of the Covered Participant, including a cessation of Employer Contributions that results from a rejection by the Trustees, acting pursuant to the Trust Agreement, of a Collective Bargaining Agreement of the Employer.  Such a Former Covered Participant may not maintain Coverage by making Self-Payments, and the Fund will not accept Self-Payments from such a Former Covered Participant, except as authorized by any other applicable section of this Plan.

### 3.14    RETURN TO COVERED EMPLOYMENT

A Former Covered Participant who returns to covered employment that requires Employer Contributions on his behalf may re-establish eligibility for Coverage by making Self-Payments for periods in which his status permits him to do so.  All Employer Contributions and/or Self-Payments must be submitted on a consecutive basis for eight (8) weeks to re-establish Coverage, and at least one week of Employer Contributions must precede Self-Payments for this purpose.  Any Self-Payments made pursuant to this section must be received within forty-five (45) days after the week to which they are to be applied.

### 3.15    ELIGIBILITY TO ELECT CONTINUATION COVERAGE

Each Covered Individual who would lose Coverage under this Plan as a result of a Qualifying Event, as defined in Section 3.16, is eligible to elect Continuation Coverage, as defined in Section 3.18, upon compliance with notice requirements and election procedures described in Sections 3.17 and 3.19.

### 3.16    DEFINITION OF QUALIFYING EVENT

For purposes of Sections 3.15 through 3.21, the term "Qualifying Event" means, with respect to any Covered Individual, any of the following events which, unless there is an election of Continuation Coverage pursuant to Section 3.19, would result in a loss of Coverage of the Covered Individual under this Plan:

      (a)    the death of a Covered Participant;

      (b)    the termination, or reduction of hours, of a Covered Participant's employment (including an absence and/or separation from employment caused by Sick Leave, Disability, Leave of Absence, Lay-Off, Quit, Discharge and the pendency of any bankruptcy proceeding filed by or against the Covered Participant's Employer; and including an absence and/or separation from employment, for a period of more than thirty (30) days, during and as a result of Service in the Uniformed Services);

      (c)    the divorce or legal separation of a Covered Participant from the Covered Participant's Spouse;

      (d)    the commencement of entitlement of a Covered Participant to Medicare benefits under Title XVIII of the Social Security Act (42 U.S.C. § 1395 et seq.); and

- 22 -

**Exhibit A**

(e)     the termination of Coverage of a Child as a Covered Dependent because of a loss of dependent status, relative to a Covered Participant, under generally applicable terms of this Plan, including Sections 3.29 and 3.30.

## 3.17    NOTICE OF QUALIFYING EVENT

With respect to each Qualifying Event defined in Section 3.16, notice shall be provided in accordance with the following requirements:

(a)     General notice by the Fund -- at the time of commencement of Coverage of a Covered Participant under this Plan, the Fund shall provide written notice to the Covered Participant and his or her Spouse (if any) of their rights pursuant to Sections 3.15 through 3.21.

(b)     Specific notice by Employers -- within sixty (60) days after a Qualifying Event defined in any of Sections 3.16(a), 3.16(b) and 3.16(d), the Employer (relative to any Covered Participant affected by the event) shall provide written notice of the Qualifying Event to the Fund.

(c)     Specific notice by Covered Individuals -- within sixty (60) days after a Qualifying Event defined in either of Sections 3.16(c) and 3.16(e), either the Covered Participant or another Covered Individual affected by the event (or both) shall provide written notice of the Qualifying Event to the Fund.

(d)     Specific notice by the Fund -- within sixty (60) days after notice of a Qualifying Event has been provided to the Fund in compliance with subsection (b) or (c) of this section, the Fund shall provide written notice of the Qualifying Event to the Covered Participant affected by the event (if living), to his or her Spouse (if any) and to any other Covered Individual who is both affected by the event and not residing with either the Covered Participant or the Covered Participant's Spouse.

## 3.18    ELIGIBILITY FOR CONTINUATION COVERAGE

After the occurrence of a Qualifying Event and upon timely election pursuant to Section 3.19, a Covered Individual is eligible to receive Continuation Coverage until termination of eligibility pursuant to Section 3.21, subject to the same modifications of coverage that apply to Covered Individuals to whom no Qualifying Event has occurred. As an alternative, the affected Covered Individual may elect to receive a reduced plan of coverage.

## 3.19    PROCEDURES TO ELECT CONTINUATION COVERAGE

After occurrence of a Qualifying Event and timely notice to the Fund is received in compliance with Section 3.17(b) or Section 3.17(c), a Covered Individual may elect Continuation Coverage by providing written election of Continuation Coverage to the Fund, in such form as the Fund prescribes, before expiration of the "election period." The "election period" begins on the date of the Qualifying Event and ends on the sixtieth (60th) day after the date of the Qualifying Event or, if later and if the Fund received timely notice of the Qualifying Event pursuant to Section 3.17(b) or Section 3.17(c), on the sixtieth (60th) day after notice of Qualifying Event is provided by the Fund to the Covered Individual pursuant to Section

**Exhibit A**

3.17(d).  A timely election shall be deemed to include Continuation Coverage for each Covered Individual. who would otherwise lose coverage as a result of the Qualifying Event.

### 3.20    SELF-PAYMENTS TO MAINTAIN CONTINUATION COVERAGE

If a written election of Continuation Coverage is provided to the Fund in compliance with Section 3.19, Self-Payments must be remitted to the Fund on behalf of the Covered Individuals on whose behalf the election is made, in order to maintain their eligibility for Continuation Coverage.  Self-Payments must be remitted for all periods of Continuation Coverage in such amounts, form and manner as the Fund prescribes, except that the Fund will not require any Self-Payments to be remitted prior to expiration of forty-five (45) days after the initial written election of Continuation Coverage is provided to the Fund in compliance with Section 3.19.  A Covered Participant who is absent from employment by a Contributing Employer for a period of less than thirty-one (31) days during, and as a result of, Service in the Uniformed Services shall receive coverage for himself and all of his Covered Dependents throughout such period without making Self-Payments.

### 3.21    TERMINATION OF CONTINUATION COVERAGE

Continuation Coverage provided to a Covered Individual pursuant to an election in compliance with Section 3.19 shall begin on the date of the Qualifying Event and shall terminate on the earliest of:

(a)    For a Qualifying Event defined in Section 3.16(b), the date twenty-four (24) months after the Qualifying Event; except, that if during the initial period, another Qualifying Event, as defined in Section 3.16, occurs, the termination date is the date thirty-six (36) months after the initial Qualifying Event;

(b)    For a Qualifying Event defined in Section 3.16 other than Section 3.16(b), the date thirty-six (36) months after the date of the Qualifying Event;

(c)    The date which is 31 days after the date on which Self-Payments pursuant to Section 3.20 (and related procedures) are owed to the Fund but remain unpaid (unless such Self-Payments are remitted to the Fund within such thirty-one (31)-day period);

(d)    The date on which the Covered Individual first becomes, after the date of the election, covered under any other employee welfare benefit plan providing coverage for medical care (as defined in Section 213[d] of Title 26 of the United States Code) to participants and beneficiaries directly or through insurance, reimbursement or otherwise, if such Other Plan does not contain any applicable exclusion or limitation with respect to any preexisting condition of the Covered Individual, except that, on such date of coverage by another plan, the Continuation Coverage of only Covered Individuals covered under such other employee welfare benefit plan will be terminated, subject to the provisions of Section 3.30;

(e)    The date on which the Covered Individual first becomes, after the date of the election, entitled to Medicare benefits under Title XVIII of the Social Security Act (42 U.S.C. § 1395 et seq.), except that on such date the Continuation Coverage of only the Covered Individual thus entitled to Medicare benefits will be terminated; or

(f)    the date on which this Plan is terminated.

- 24 -

**Exhibit A**

Continuation Coverage for a Qualifying Event described in Section 3.16(b) may be extended to twenty-nine (29) months if a Covered Individual is determined under Title II or XVI of the Social Security Act to have been disabled during the first sixty (60) days of Continuation Coverage and if a Covered Individual notifies the plan administrator of the determination within sixty (60) days of the determination and before the end of the initial twenty-four (24)-month period of Continuation Coverage. This extension will terminate if there is a final determination under Title II or XVI of the Social Security Act that the disability has ended, but the termination will apply only to the formerly disabled Covered Individual.  The termination of the extension in such a case will be effective on the first day of the first month which begins more than thirty (30) days after such final determination, so long as the final determination is after the twenty-four (24)-month initial Continuation Coverage period.

### 3.22    STATUS OF A COVERED PARTICIPANT WHEN EMPLOYER FAILS TO MAKE CONTRIBUTIONS

Default by an Employer in making Employer Contributions on behalf of a Participant shall not prevent such person from being a Covered Participant, except in the case of a Suspension of Benefits as described in Section 3.23.

### 3.23    STATUS AND COVERAGE OF A COVERED INDIVIDUAL WHEN EMPLOYER FAILS TO REMIT EMPLOYER CONTRIBUTIONS: SUSPENSION OF BENEFITS

Except as otherwise provided herein, any default by an Employer in remitting Employer Contributions on behalf of a Participant who is otherwise entitled to Coverage shall not disqualify such Participant as a Covered Participant.  However, all benefits payable by the Plan to or on behalf of a Participant or his Dependent shall be suspended during certain periods, established by the Trustees, in which the Employer of such Participant remains continuously delinquent in his obligations to remit Employer Contributions. During such benefits suspension periods the Participant shall have the right to remit Self-Payments subject to rules established by the Trustees. No benefits suspension period shall commence until the expiration of a reasonable and adequate period (as determined by the Trustees) and after advance written notice of such suspension to all affected Participants.  After any benefits suspension period is concluded by remittance of all delinquent Employer Contributions or by alternative commitments by the Employer approved by the Trustees, all proper benefit claims accrued but unpaid during the suspension period will be paid by the Plan to or on behalf of Covered Participants and their Covered Dependents and all Self-Payments will be reimbursed.

### 3.24    CERTAIN PARTICIPANTS NOT TO BE CLASSIFIED AS COVERED DEPENDENT

A Participant's Child shall not be a Covered Dependent if that Child is also a Participant.  A Participant's Spouse shall not be a Covered Dependent if that Spouse is also a Participant, except as provided in Article V.

### 3.25    COMMENCEMENT OF COVERED DEPENDENT STATUS FOR SPOUSE OF A COVERED PARTICIPANT

The Spouse of a Covered Participant shall be a Covered Dependent and shall participate in and have Coverage under this Plan on the date of marriage to the Participant or on the date the Participant becomes

**Exhibit A**

a Covered Participant, whichever occurs later, provided the Covered Participant has elected the spouse coverage option under his plan.

### 3.26    COMMENCEMENT OF COVERED DEPENDENT STATUS FOR CHILD OF A COVERED PARTICIPANT

A Child of a Covered Participant shall be a Covered Dependent and shall participate in and have Coverage under this Plan on the date such status as Child begins or on the date the Participant becomes a Covered Participant, whichever occurs later, provided the Covered Participant has elected the dependent coverage option under his plan.

### 3.27    STATUS OF MENTALLY OR PERMANENTLY PHYSICALLY DISABLED CHILD OF A COVERED PARTICIPANT

A Covered Participant's unmarried Child who is incapable of independent financial self-support because of mental or permanent physical disability and who is dependent on the Covered Participant for support and maintenance, shall remain a Covered Dependent or be eligible to receive benefits (except the Life Insurance Benefit) beyond attaining nineteen (19) years of age subject to the following conditions:

      (a)    The Child must be a Covered Dependent prior to reaching nineteen (19) years of age.

      (b)    If the Child reached nineteen (19) years of age, the Fund may, at its discretion, require that a certification, signed by a licensed Physician and stating that the Child is mentally or permanently physically disabled, accompany each claim.

      (c)    In no case will the Child be a Covered Dependent or be eligible to receive benefits unless the mental or permanent physical disability is sustained prior to the Child's nineteenth (19th) birthday and the Child's Disability has been continuous.

      (d)    A Child meeting the requirements of this Section may be employed and maintain his accident and health benefits under this Plan, provided he is not covered by any Other Plan.

### 3.28    STATUS OF NEWBORN CHILD OF A COVERED PARTICIPANT

A Covered Participant's newborn Child shall become a Covered Dependent or eligible to receive benefits at the time of birth.

### 3.29    STATUS OF UNMARRIED CHILD OF A COVERED PARTICIPANT WHO IS A STUDENT BETWEEN THE AGES OF 19 AND 23

A Covered Participant's unmarried Child who is a full-time student at an accredited high school, trade school, vocational school, junior college, college or university shall have Coverage, except for Dental, Vision and Life Insurance Benefits, under the Plan, until he reaches twenty-three (23) years of age, subject to the following conditions:

**Exhibit A**

(a)     The Covered Participant must submit to the Fund, along with the claim for benefit, a notarized statement signed by a representative of the institution attended by the Child and stating that the Child was, at the time the claim for benefits arose, a full-time student at the educational institution; and

(b)     The Fund may, at its discretion, require the Covered Participant to supply additional documentation of the information required in Paragraph (a) above.

A Child who loses his student status may re-establish his Coverage upon resumption of being a student, provided he meets the requirements of this Section.

## 3.30    LOSS OF DEPENDENT'S COVERAGE

A Covered Dependent shall lose his Coverage on the earliest of the dates below:

(a)     On the date the Covered Participant loses Coverage. In the case of the Covered Participant's death, Coverage will be extended to Dependents for thirty-one (31) days following the last day of the week in which Employer Contributions end. The Spouse of the deceased Covered Participant may elect to make Self-Payments in accordance with the terms and procedures specified in Section 3.20. However, the initial Self-Payment will be applied to the thirty-one (31) day period following the termination of Employer Contributions;

(b)     On the contribution due date, if the Covered Participant is making Self-Payments and fails to do so;

(c)     In the case of a Child, on the date he becomes a Participant;

(d)     In the case of a Spouse, on the day which said Spouse ceases to be legally married to a Covered Participant;

(e)     In the case of a Child, on the day he enters Service in the Uniformed Services;

(f)     Subject to the provisions of Sections 3.27 and 3.29, on the day a Child reaches nineteen (19) years of age;

(g)     On the day a Child assumes full-time employment. A student meeting the requirements of Section 3.29 and who has a full-time job for a duration of less than four (4) months shall not be deemed to have assumed full-time employment; or

(h)     On the day which a Child becomes married; however, he may regain his Coverage if he ceases to be married and meets all the applicable eligibility requirements.

## 3.31    RESIDUAL COVERAGE OF FORMER COVERED PARTICIPANTS

In the remaining provisions of the Plan, the term "Covered Participant" shall be extended to include a Former Covered Participant, and the term "Covered Individual" shall be extended to include a Former Covered Participant and/or his Dependents during the period that such Former Covered Participant and/or his Dependents were eligible to receive benefits provided according to Plan provisions.

- 27 -

**Exhibit A**

## 3.32    **ELIGIBILITY FOR FAMILY PROTECTION PLAN BENEFIT**

A Covered Dependent shall be eligible, subject to the conditions described below, for a family protection plan benefit, consisting of the extension of coverage of Covered Dependents of a Participant who dies while residing in an area covered by a TeamCare network or while recorded by the Fund as an enrolled participant of such a network (regardless of residence), for a maximum of five (5) years after the date of death. This benefit shall terminate upon the earlier of the following: reinsurance, remarriage, Medicare eligibility, or loss of dependent status by a Dependent Child as set forth in Section 3.30(c) through (h) of the Active Plan Document. This benefit is subject to the following conditions:

(a)    If a different family protection plan benefit has been established and published to Participants in a specific TeamCare area, it shall apply in lieu of the benefit set forth in this provision.

(b)    The family protection plan benefit will be lost if, within twenty-four (24) months prior to the Participant's death, charges payable by the Fund are incurred by the Participant or a Covered Dependent through non-emergency use of a Hospital or Physician outside the Participant's TeamCare network.

(c)    If eligibility for the family protection plan benefit has been granted, services from TeamCare providers for non-emergency care will be required for benefits to be payable.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

**ARTICLE IV.  GENERAL EXCLUSIONS, LIMITATIONS AND CONDITIONS FOR PAYMENT OF CLAIMS**

### 4.01   PAYMENT ONLY FOR COVERED CLAIMS OF COVERED INDIVIDUALS

A Covered Individual shall not be entitled to any payment on a claim for benefits unless the benefits are provided by the Plan, the claimant is a Covered Individual and the claim for benefits is submitted in proper form as determined by the Fund.

### 4.02   EXCLUSION OF PAYMENT FOR TREATMENT NOT CONSIDERED STANDARD MEDICAL CARE OR MEDICALLY NECESSARY

A Covered Individual shall not be entitled to payment of any charges for care, treatment, services or supplies which are not medically necessary or are not uniformly and professionally endorsed by the general medical community as Standard Medical Care, Treatment, Services or Supplies.

### 4.03   LIMITATION ON PAYMENT OF CLAIMS ARISING FROM WORK-RELATED INJURY OR COVERED BY WORKER'S COMPENSATION

A Covered Individual shall not be entitled to payment on a claim for any charge incurred for any treatment or service for any illness or injury which is sustained as a result of any enterprise or occupation for wage or profit or is an illness or injury of the type covered by any applicable Worker's Compensation Act or similar law providing benefits to employees for on-the-job injuries.

In the event that a Covered Individual is awaiting disposition of a Worker's Compensation claim (or a similar claim arising as a result of an on-the-job injury) and coverage for the illness or injury is disputed, the Covered Individual may be eligible to receive some benefits if the Covered Individual agrees to reimburse the Fund for any benefits advanced in the event he settles or receives an award from any Employer or insurance company relating to his on-the-job injury.

After a five (5) year period from the date of Disability, any complication arising from the illness or injury shall be deemed payable in accordance with the Plan provisions, unless it is still compensable under Worker's Compensation.

### 4.04   EXCLUSION OF PAYMENT FOR TREATMENT OF INJURIES SUSTAINED WHILE IN ANY UNIFORMED SERVICE

A Covered Individual shall not be entitled to payment for any charge incurred for treatment or service due to illness or injury sustained while in any Uniformed Service, except short-term service provided for in Section 3.20, or for treatment of any complication of such illness or injury.  After a five (5) year period from the date of Disability, any complication arising from the illness or injury shall be deemed payable in accordance with the Plan provisions.

- 29 -

**Exhibit A**

**4.05    EXCLUSION OF PAYMENT FOR TREATMENT DUE TO ILLNESS OR INJURY ARISING OUT OF ANY ACT OF WAR OR CIVIL DISTURBANCE**

A Covered Individual shall not be entitled to payment for any charge incurred for treatment or services due to illness or injury arising out of declared or undeclared war or any act of war or civil disturbance, including riots, demonstrations and marches or for treatment of any complication of such illness or injury. After a five (5) year period from the date of Disability, any complication arising from the illness or injury shall be deemed payable in accordance with the Plan provisions, unless it is compensable by an Other Plan or government agency.

**4.06    EXCLUSION OF PAYMENT FOR TREATMENT OF INJURIES ARISING AS A RESULT OF PARTICIPATION IN CRIMINAL CONDUCT**

(a)    A Covered Individual shall not be entitled to payment for any charge incurred for treatment or services due to injury, and any complication thereof, sustained as a result of participation in conduct which results in a conviction for violating any federal or state law. The Fund shall have the right to recover the amount of any payment upon discovery that the injury, and any complication thereof, for which payment was made resulted from participation in conduct which results in a conviction for violating any federal or state criminal law.

(b)    Notwithstanding the provisions of subsection 4.06(a), a Covered Individual shall not be entitled to payment for any charge incurred for treatment or services due to injury, and any complication thereof, sustained as a result of participation in an illegal act if the Covered Individual dies within 30 days of the date of the illegal act regardless of whether such illegal act results in a conviction for violating any federal or state criminal law. The Fund shall have the right to recover the amount of any payment upon discovery that the injury, and any complication thereof, for which payment was made resulted from participation in an illegal act if the Covered Individual dies within 30 days of the date of the illegal act regardless of whether such participation in an illegal act results in a conviction for violating any federal or state criminal law.

**4.07    LIMITATION ON PAYMENT FOR TREATMENT RECEIVED OUTSIDE THE UNITED STATES**

A Covered Individual shall not be entitled to payment for treatment outside the United States if it is not care, treatment, services or supplies that is medically necessary and is uniformly and professionally endorsed by the general medical community in the United States as Standard Medical Care, Treatment, Services or Supplies. All exclusions and limitations of the Plan shall be fully applicable to all such care, treatment, services and supplies to the same extent as if it were provided within the United States. Interpretations relative to these exclusions and limitations will be resolved by the Fund at its discretion, assisted by the Fund's medical consultants. Benefits will be paid in United States currency.

**4.08    EXCLUSION FOR PAYMENT FOR TREATMENT CONNECTED WITH SURGERY FOR COSMETIC PURPOSES**

A Covered Individual shall not be entitled to payment on a claim for benefits for any charge incurred for treatment or service connected with a cosmetic procedure, even if performed for psychological reasons,

- 30 -

**Exhibit A**

unless the treatment or service is medically required as a result of an Accidental Bodily Injury incurred while a Covered Individual.

This exclusion includes, but is not limited to:

(a)    Any surgery primarily for obesity, including gastric bypass, gastric stapling, intestinal bypass, lipectomy, suction lipectomy, abdominoplasty, panniculectomy, and any other surgical procedure, a purpose and result of which is primarily to remove adipose tissue, even if the surgery results in some medical benefits;

(b)    Augmentation mammoplasty, unless part of reconstructive surgery for the treatment of malignancy of the breast necessitating removal of a portion or all of the breast tissue;

(c)    Rhinoplasty, unless the patient has sustained a traumatic fracture of the nasal septum, or unless the patient has chronic nasal obstruction and the procedure is undertaken to relieve this obstruction;

(d)    Otoplasty for irregular deformity or macrotia.  This is sometimes referred to as plastic surgery for lop ears or cauliflower ears;

(e)    Blepharoplasty, or repair of drooping eyelids, unless the droop of the eyelids is such as to restrict the field of vision and the visual field restriction is documented by the ophthalmological consultant;

(f)    Radical Keratectomy or Keratotomy, unless the patient has myopia of such a severe degree that it cannot be corrected by lenses;

(g)    Rhytidectomy (face lift);

(h)    Dyschromia (tattoo removal); and

(i)    Genioplasty (chin augmentation).

## 4.09    EXCLUSION OF PAYMENT FOR TREATMENT OTHERWISE COVERED UNDER THE SOCIAL SECURITY ACT

A Covered Individual shall not be entitled to payment for any charge incurred for treatment or service to the extent that such charge is covered or provided by the Social Security Act, as amended, except as provided in Article V.

## 4.10    EXCLUSION OF PAYMENT FOR TREATMENT NOT RELATED TO ILLNESS, INJURY OR PREGNANCY

Except as otherwise provided herein, a Covered Individual shall not be entitled to payment of a claim for Basic Benefits or Major Medical Expense Benefits unless the Covered Individual is ill, injured, pregnant or an organ transplant donor, and receives treatment, compensable under this Plan, related to the illness, injury, pregnancy or organ donation.

- 31 -

**Exhibit A**

### 4.11   EXCLUSION OF PAYMENT FOR CERTAIN DENTAL TREATMENTS

Except as provided below, a Covered Individual shall only be entitled to payment of Basic Benefits, as outlined in Article XII, and Major Medical Expense Benefits, as outlined in Article XIII, for charges incurred in connection with dental operations, if prescribed by a Physician as a result of a medical condition and as approved by the Fund, or for Hospital Confinements where the patient or condition is any one of the following:

(a)   Dependent Child three years or younger;

(b)   Physically disabled Child or adult;

(c)   Mentally disabled Child or adult (includes those with Cerebral Palsy);

(d)   Bell's Palsy;

(e)   Hemophilia;

(f)   Asthma, Chronic Obstructive Lung Disease, or Chronic Obstructive Pulmonary Disease; or

(g)   Heart Disease, Diabetes or Hypertension, provided that eligibility for benefits is approved by Fund Medical Consultants prior to hospital confinement.

The Plan shall not pay Basic Benefits or Major Medical Expense Benefits for dental materials or dental procedures, except as outlined in Section 15.06.

### 4.12   EXCLUSION OF PAYMENT FOR TREATMENT OF NON-COMPENSABLE PROCEDURES

A Covered Individual shall not be entitled to payment for any charge incurred for treatment of complications arising from the performance of any procedure not compensable under this Plan.

### 4.13   EXCLUSION OF PAYMENT FOR ROUTINE PHYSICAL EXAMINATIONS

Except as otherwise provided in this Plan, a Covered Individual shall not be entitled to payment for any charge incurred in connection with routine physical examinations, including diagnostic procedures.

### 4.14   EXCLUSION OF PAYMENT FOR CERTAIN ITEMS

A Covered Individual shall not be entitled to payment for any charge incurred for sales taxes, surcharges, interest, late charges, completion of any claim form or missed appointments.

### 4.15   EXCLUSION OF PAYMENT FOR MAINTENANCE CARE

A Covered Individual shall not be entitled to payment for any charge incurred for Maintenance Care, as defined in Section 1.43.

- 32 -

**Exhibit A**

## 4.16  EXCLUSION OF PAYMENT OVER PRESCRIBED MAXIMUMS

A Covered Individual shall not be entitled to payment for any charge which would exceed the stated maximum, scheduled fee or stated percentage of covered charges payable as set forth in Article XX of the Plan unless "balance under Major Medical" immediately follows such reference.

## 4.17  LIMITATION ON ELIGIBILITY FOR COVERAGE OF CERTAIN ORGAN OR TISSUE TRANSPLANTS

Benefits for bone marrow, heart, kidney, liver, lung and pancreas transplants, including all related services, are payable only if the recipient provides requested documentation for consideration by the Fund's Medical Consultants on a pre-admission basis. Such documentation will include, but may not be limited to, written opinions by Physicians associated with the case testifying to the following:

(a)  Absence of significant co-existing morbidity;

(b)  Evidence of medical suitability of candidate for transplantation;

(c)  Criteria for patient selection is in agreement with published medical literature;

(d)  Alternative procedures, services or courses of treatment are not effective or available; and

(e)  Facility and physicians involved in transplant services have appropriate approval by regulatory agencies and from internal authorities.

After consideration by the Fund's Medical Consultants, each case will be brought to the Trustees for their review. No organ or tissue transplant proposed for coverage under this Section will be payable unless there is prior approval by the Trustees following their consideration of the circumstances of each case.

The Fund's financial responsibility for Hospital, medical and other expenses incident to, or resulting from, any transplant of any Covered Individual, including expenses incurred in any post-transplant treatment and in any complications arising from the transplant at any time, shall be limited to the following aggregate amounts:

**Exhibit A**

| Transplant | Surgical Benefits (1) and Follow-up Benefits (2) |
|---|---|
| Heart | $350,000 |
| Lung | 300,000 |
| Liver | 275,000 |
| Pancreas | 175,000 |
| Kidney | 125,000 |
| Bone Marrow-<br>  Autologous | 200,000 |
|   Allogeneic<br>  Related | 300,000 |
|   Allogeneic<br>  Unrelated | 400,000 |

The Fund is not responsible for any expense of any other type of transplant, or for any expense incident to a transplant of an animal organ or a mechanical device to replace a natural human organ. A Covered Individual, after he has received any organ transplant and the Fund has paid all or any part of Hospital, medical or other expenses incident to the transplant, shall no longer be eligible to claim that the Fund is responsible for any expense incident to a subsequent transplant of the same organ.

Note (1)   Surgical Benefits include Hospital and related facility charges, Physician professional fees, ancillary charges and all related expenses associated with the surgical transplant procedure. Organ procurement expenses are included, to the extent they are covered.

The benefit payments for human organ transplants under Benefit Plan S will not be subject to the overall benefit plan limit.

Note (2)   Follow-Up Benefits include all professional fees, Hospital and related facility charges, Prescription Drugs, ancillary charges and all expenses which result directly from the transplant procedure and which are incurred after discharge from the Hospital stay during which the transplant occurred. Subsequent hospitalizations and outpatient costs resulting directly from the transplant are included in follow-up costs. The above-referenced limitations on Follow-Up Benefits are applicable only to the 12-month period that begins on the date of the transplant.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

4.18   **EXCLUSION OF PAYMENT FOR INFERTILITY TREATMENT**

A Covered Individual shall not be entitled to payment for any charge incurred in connection with the treatment of infertility. This limitation includes but is not limited to:

      (a)     Charges incurred in connection with in vitro fertilization;

      (b)     Charges incurred in connection with artificial insemination;

      (c)     Charges for Prescription Drugs designed to enhance the ability to conceive, used in connection with (a) and (b) above, including but not limited to Clomid, Milophene, Metrodin, Lutrepulse, Pergonal and human chorionic gonaditropin in any form; and

      (d)     Charges incurred in connection with reversal of prior sterilization procedures.

4.19   **EXCLUSION OF PAYMENT FOR CHARGES FOR WHICH THE COVERED INDIVIDUAL IS NOT RESPONSIBLE TO PAY**

A Covered Individual shall not be entitled to payment for any charge incurred for any Care, Treatment, Services or Supplies if the medical service provider has waived any co-payments due from the Covered Individual or has otherwise relieved the Covered Individual from an obligation to pay for the Care, Treatment, Services or Supplies or agrees to accept as full payment whatever amount is payable under this Plan.

In no event will the Fund pay for any Care, Treatment, Services or Supplies which have been represented by the person supplying those examinations, services or supplies to be free to the Covered Individual.

4.20   **LIMITATION ON PAYMENT OF CLAIMS FOR SERVICES BY PROVIDERS NOT IN PREFERRED PROVIDER ORGANIZATION NETWORK**

      (a)     Benefits otherwise payable shall be reduced by 10% if there exists a TeamCare network covering the Participant; and

      (b)     The charges were incurred by the Participant or Covered Dependent through non-emergency use of a Hospital or Physician outside of the TeamCare network.

4.21   **EXCLUSION FOR PAYMENT FOR TREATMENT CONNECTED WITH BARIATRIC SURGERY**

A Covered Individual shall not be entitled to payment on a claim for benefits for any change incurred for treatment or service connected with bariatric surgery performed to correct obesity or to remove fat tissue. This exclusion includes but is not limited to gastric bypass, gastric stapling intestinal bypass, lipectomy, suction lipectomy, abdominoplasty, and panniculectomy and any charges that are related to these procedures.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE V.  COORDINATION OF BENEFITS

### 5.01    PRIORITY OF COVERAGE WHERE COVERED INDIVIDUAL IS COVERED BY AN OTHER PLAN

If the benefits of this Plan duplicate or overlap with benefits for hospital, surgical, dental, psychiatric, chiropractic or other medical treatment provided by an Other Plan, such duplication or overlapping shall be avoided. In this regard, primary responsibility for providing benefits shall be determined in the following order:

(a)     An Other Plan shall have primary responsibility if it has no coordination of benefits provision or if the Other Plan provides specific risk coverage, including but not limited to, premises liability or medical benefits coverage.

(b)     An Other Plan providing no fault, personal injury protection or financial responsibility motor vehicle insurance coverage or benefits shall have primary responsibility.

(c)     Whichever of this Plan or an Other Plan that provides benefits for the person, other than as a Dependent, shall have primary responsibility.

(d)     If there is coverage for a Child by more than one (1) plan, the plan which covers the Spouse who has the earliest birthday (month and day) shall have primary responsibility, except that in the case of a Child whose parents are separated or divorced, the following rules apply:

(1)     The benefits of the plan of the custodial parent shall be primary to the benefits of the plan of the non-custodial parent;

(2)     If the parents have joint custody, the plan which covers the parent who has the earliest birthday (month and day) shall have primary responsibility;

(3)     If the custodial parent has remarried, the benefits of the plan of the custodial parent shall be primary to the benefits of a plan which covers the Child as a Dependent of a step-parent, and the benefits of a plan which covers the Child as a Dependent of a step-parent shall be primary to the benefits of a plan which covers the non-custodial parent; and

(4)     Notwithstanding (1), (2), and (3) above, if there is a court decree which establishes responsibility for the medical, dental, or other health care of the Child, the plan of the parent with such responsibility shall be primary. If the parent with such responsibility has no coverage, but that parent has remarried and that parent's new spouse has coverage, that spouse's plan is primary.

(e)     If there is coverage provided for a Participant or Dependent by more than one (1) plan, the plan which is providing coverage through active employment shall have primary responsibility.

(f)      If a Covered Individual whose coverage is provided under a right of continuation provided by federal or state law also is covered under an Other Plan, the plan covering

- 36 -

Exhibit A

the person as an employee, member, subscriber or retiree (or as that person's dependent) is primary, and the continuation coverage is secondary.

(g) If both the husband and wife are Covered Participants of the Central States Health and Welfare Fund, this Plan will be considered an Other Plan.

(h) Whichever of this Plan or the Other Plan that has covered the person for the longer period of time shall have primary responsibility.

(i) If there is coverage provided by a governmental program, that coverage shall have primary responsibility unless prohibited by federal law.

## 5.02    EFFECT OF PRIORITY RULES ON AMOUNT OF PAYMENTS UNDER THE PLAN

Whenever this Plan is determined to have primary responsibility, the Covered Individual shall receive benefits without regard to coverage under the Other Plan. Whenever this Plan is determined not to have primary responsibility, this Plan shall pay, after the Other Plan has paid its maximum allowable benefits, any remaining covered charges up to the amount this Plan would have paid if this Plan had primary responsibility and without the payments from the Other Plan being taken into account in applying the specific benefit maximums indicated in this Plan. As used in this section, the term "Covered Charges" means charges by a provider that a Covered Individual is responsible to pay the provider and that entitle a Covered Individual to benefits under the Plan. Covered Charges shall not include payment for charges for which the Covered Individual is not responsible to pay as enumerated in Section 4.19, regardless of whether this Plan is the primary or secondary provider. Maximum allowable benefits will always be construed under this section to mean the amount payable by the Other Plan without regard to coverage under this Plan; that is, the Other Plan's maximum allowable benefits will be computed as if there were no coverage under this Plan.

## 5.03    RECOVERY OF PAYMENTS WHEN AN OTHER PLAN IS INVOLVED

Whenever this Plan has made benefit payments which exceed the amount of benefits payable under the terms of this Plan or which an Other Plan was required to make under Section 5.01, the Fund shall have the right to recover the amount of such payments from any persons receiving such payments or from any Other Plans having primary responsibility for the payment of benefits. The Trustees are authorized to file suit on behalf of the Fund to recover any such payments or to seek a judicial declaration that an Other Plan has primary responsibility for the payment of benefits.

## 5.04    PAYMENTS TO OTHER PLANS

Whenever payments should have been made by this Plan pursuant to the provisions of Article V, but are made by an Other Plan, the Fund shall have the right to pay over to such Other Plan any amounts this Plan should have paid under the provisions of Article V.

**Exhibit A**

5.05    **NO FAULT, PERSONAL INJURY PROTECTION OR FINANCIAL RESPONSIBILITY MOTOR. VEHICLE INSURANCE COVERAGE**

Benefits under no fault, personal injury protection or financial responsibility motor vehicle insurance coverage, as described in Section 1.48(f), shall be primary to benefits under this Plan notwithstanding state or local law or regulation to the contrary. In the event an Other Plan, as described in Section 1.48(f), fails or refuses to assume primary responsibility for the payment of benefits, the Fund may provide the Covered Individual with benefits under this Plan. Such benefits shall be provided under a reservation of rights and without prejudice to the Fund's right to recover the amount of such benefits from the Other Plan.

A Covered Individual shall cooperate with this Plan in any attempt to recover the amount of benefits paid under a reservation of rights pursuant to this Section. Upon request by the Fund, the Covered Individual shall execute an assignment of rights and any other documents the Fund deems necessary to effect a recovery of the amount of benefits paid under such reservation of rights. A Covered Individual shall do nothing to prejudice the Fund's rights under Article V and is not authorized to subordinate no fault, personal injury protection, financial responsibility or medical reimbursement benefits to benefits under this Plan.

5.06    **COORDINATION OF BENEFITS WITH AN HMO**

When a Covered Individual has primary coverage through an Other Plan, such as an HMO, this Plan will coordinate benefits as described in Section 5.01 provided the Covered Individual is utilizing the HMO network of Hospitals, Physicians and ancillary providers. If the Covered Individual is denied benefits by the HMO for using out of network providers or not obtaining proper referrals or authorization, this Plan will deny benefits.

- 38 -

Exhibit A

## ARTICLE VI. CONTRIBUTIONS AND FUNDING OF BENEFITS

### 6.01    EMPLOYER'S OBLIGATION TO CONTRIBUTE TO THE PLAN

Each Employer shall make continuing and prompt Employer Contributions to the Fund, as required by either a Collective Bargaining Agreement or an applicable law (including but not limited to the Uniformed Services Employment and Reemployment Rights Act of 1994), at rates established by the terms of a Collective Bargaining Agreement. Any Employer which, based upon the Uniformed Services Employment and Reemployment Rights Act of 1994, is required to make Employer Contributions to the Fund, shall make those Employer Contributions at the rates and in the amounts of Employer Contributions which that Employer would have been obligated to pay to the Fund, relative to the Covered Participant, if his employment by that Employer had continued throughout (and had not been interrupted by) such Service in the Uniformed Services (plus interest, to the extent such Employer Contributions are not paid at the time of such absence from employment as a result of Service in the Uniformed Services, in accordance with the trust agreement of the Fund). Each Employer shall make Employer Contributions to the Fund on behalf of each Employee whose classification of work is covered by its Collective Bargaining Agreement.    All Employer Contributions must be made according to rules established by the Board of Trustees. The obligation to make Employer Contributions shall continue during periods when a Collective Bargaining Agreement is being negotiated, but such Employer Contributions shall not be required in case of strike or after termination of the Collective Bargaining Agreement, unless the parties mutually agree otherwise or unless required by an applicable law.

### 6.02    CREDITS FOR ERRONEOUS EMPLOYER CONTRIBUTIONS

The Fund shall credit the Employer's account for contributions that have been billed to an Employer only if permitted by Article XI, Section 1 of the Fund's Trust Agreement.

### 6.03    IRREVOCABLE NATURE OF CONTRIBUTIONS

Except as provided in Section 6.02, any and all contributions made by or on behalf of an individual shall be irrevocable and shall be transferred to the Trustees and held as provided in this Plan and in the Trust Agreement, to be used in accordance with the provisions of this Plan in providing benefits and paying the expenses of the Fund.

### 6.04    SELF-PAYMENTS

All Participants making Self-Payments shall comply with Fund procedures, including the submission of prescribed forms to confirm the Participant's status.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE VII.  AMENDMENTS AND PLAN TERMINATION

### 7.01   PROCEDURE FOR AMENDING THE PLAN

This Plan may be amended, from time to time, by majority vote of the Trustees.  A copy of each amendment of this Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

### 7.02   TERMINATION OF THE PLAN

This Plan shall be maintained and operated in full force and effect until the occurrence of any of the following events, in which case the Plan shall be terminated:

   (a)   The Trust Fund, in the opinion of the Trustees, shall be inadequate to effectuate the intent and purposes of the Trust Agreement.

   (b)   The Trust Fund, in the opinion of the Trustees, shall be inadequate to meet payments due, or to become due, to persons already drawing benefits.

   (c)   There are no individuals living who can qualify as Employees, as defined in Article I of this Plan.

   (d)   All contracts between the Fund and Employers expire, terminate or are canceled.

In the event of termination, the Trust Fund shall be distributed by the Trustees in accordance with any plan which conforms to the intent and purposes of the Trust Agreement and the "Employee Retirement Income Security Act of 1974".

F:234919 / 05094020 /  09/30/2007

**Exhibit A**

## ARTICLE VIII.  PLAN ADMINISTRATION

### 8.01    TRUSTEE STATUS AS "NAMED FIDUCIARY"

Each Trustee by reason of his position is a "named fiduciary" of this Plan within the meaning of the "Employee Retirement Income Security Act of 1974".

### 8.02    POWERS OF THE TRUSTEES

The Trustees shall have authority to jointly control and manage the operation and administration of the Fund and of this Plan, in accordance with the terms of the Trust Agreement and of this Plan, including the authority to allocate fiduciary responsibilities among the Trustees and the authority to designate persons other than Trustees to carry out fiduciary responsibilities in the administration of the Fund and this Plan, except that the Trustees may allocate only a committee of Trustees or one (1) or more "investment managers" (as defined by the "Employee Retirement Income Security Act of 1974") to administer investment and other responsibilities relating to assets of the Fund. All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with any claim for any benefits preferred by any Participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations contained in this Plan, shall be submitted  to the Trustees, or to a Committee of the Trustees, and the decision of the Trustees or of such Committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit under the terms of this Plan.

### 8.03    DECISIONS OF TRUSTEES

All decisions by the Trustees, including all rules and regulations adopted by the Trustees, all amendments of the Trust Agreement and this Plan by the Trustees and all interpretations by the Trustees of any of said documents shall be binding upon all parties to the Trust Agreement, the Local Union, each Employer, all individuals claiming benefits pursuant to this Plan or any amendment thereof and all other individuals engaging in any transaction with the Fund. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by Covered Participants, Covered Dependents and other claimants, and including Trustee decisions interpreting plan documents of the Fund.

### 8.04    EFFECT OF ANY MISREPRESENTATION WITH RESPECT TO CLAIMS

Any misrepresentation in any claim or document submitted by a claimant to the Fund shall constitute grounds for rejection of the claim, for the denial of any requested benefits, and for the recovery by the Fund of all benefit payments made in reliance upon said misrepresentation.

### 8.05    PAYMENTS TO PERSONS WHO HAVE FAILED TO INFORM THE TRUSTEES OF A CHANGE OF ADDRESS

If any person who is entitled to receive payment of benefits, in accordance with this Plan, fails to inform the Trustees in writing and by registered mail of a change of address, and if the Trustees are unable to communicate with such person at the address last recorded by the Fund, and if a letter sent by registered

- 41 -

**Exhibit A**

mail from the Fund to such person is returned because it is not deliverable, all payments due such person · shall be held without interest until a claim has been received and approved by the Trustees.

## 8.06   INFORMATION CONCERNING COVERED INDIVIDUALS

For purposes of implementing the terms of the Plan, the Fund may, without notice to or consent of any Covered Individual, obtain from any person or entity such information concerning the Covered Individual as the Fund deems necessary. Any person claiming benefits under the Plan shall furnish the Fund with such information as the Fund deems necessary to implement the Plan. When any claim for benefits under the terms of this Plan is submitted by a Covered Individual or any medical service provider that provided Care, Treatment Services or Supplies to a Covered Individual then, the furnishing of such claim shall act as a release by the Covered Individual to any medical service provider to allow the Fund, without further notice or consent of any Covered Individual, to obtain any  medical records of the Covered Individual from any medical service provider whose claims for treatment of the Covered Individual are submitted for payment.

Failure on the part of any Covered Individual or medical service provider that provided Care, Services, Treatment or Supplies to any Covered Individual to supply or furnish any information requested by the Fund or its agent may result in the rejection of a claim for benefits.

## 8.07   USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION

The Plan may make any use and disclosure of Protected Health Information to the extent of and in accordance with the uses and disclosures permitted or required by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) as amended.

Protected Health Information concerning employees of the Fund (including, for purposes of this section 8.07, all former employees of the Fund) may be disclosed to other employees of the Fund to carry out plan administration functions as set forth in this section.  The Fund may make any use and disclosure of Protected Health Information concerning employees of the Fund that are required or permitted by law. Protected Health Information concerning employees of the Fund may only be disclosed to other employees of the Fund after the Trustees of the Fund have certified that the Plan document has been amended to incorporate all provisions required by law.

The Trustees agree and hereby certify that:

(a)     Protected Health Information concerning employees of the Fund shall not be used or disclosed other than as permitted or required by the Plan documents or as required by law;

(b)     Protected Health Information concerning employees of the Fund shall not be used or disclosed to any agents, including a subcontractor, to whom the Fund provides Protected Health Information concerning the employees of the Fund until such agents agree to the same restrictions and conditions that apply to the Plan sponsor with respect to such information;

(c)     Protected Health Information shall not be used or disclosed for employment – related actions and decisions or in connection with any other benefit or employee benefit plan of the Plan sponsor without a valid authorization;

**Exhibit A**

(d)     Any use or disclosure of such information that is inconsistent with the uses or disclosures permitted by the Plan shall be reported to the Fund's Privacy Officer;

(e)     Protected Health Information concerning the employees of the Fund will be made available in accordance with 45 C.F.R. Section 164.524;

(f)     Protected Health Information concerning the employees of the Fund will be made available for amendment in accordance with 45 C.F.R. Section 164.526;

(g)     Any and all Protected Health Information concerning employees of the Fund will be made available to provide an accounting of disclosures in accordance with 45 C.F.R. Section 164.528;

(h)     The internal practices, books, and records relating to the use and disclosure of Protected Health Information relating to employees from the Fund that was received from the Plan will be made available to the secretary of Health and Human Services for purposes of determining compliance by the Plan with the privacy rule;

(i)     That any and all Protected Health Information concerning employees of the Fund received from the Plan will, if feasible, be returned or destroyed and no copies of such information will be retained when no longer needed for the purpose for which disclosure was made, except that, if such return or destruction is not feasible, any further use or disclosure of such information will be limited to the purposes that make the return or destruction of the information infeasible.

The Plan sponsor will insure that adequate separation between the Plan and the Plan sponsor will be established in accordance with the Privacy Rule. To insure that adequate separation between the Plan and the Plan sponsor exists, access to the Protected Health Information of the employees of the Fund will be limited to the following classes of employees: (1) Manager of Human Resources Information Systems; (2) Benefits Coordinator; and (3) Human Resources Generalist. The access to, and use by, such classes of employees shall be limited to the plan administration functions that these employees perform for the Plan. In order to provide an effective mechanism for resolving any issues of non-compliance by such employees with the Plan document provisions set forth herein, all such employees shall be expressly subject to all of the Fund's Privacy Policies and Procedures. In no event shall Protected Health Information concerning employees of the Fund be used for the purpose of employment–related actions or decisions or in connection with any other benefit or employee benefit plan of the Plan sponsor.

## 8.08    SAFEGUARDS FOR PROTECTED HEALTH INFORMATION

The Trustees will implement administrative, physical and technological safeguards to reasonably and appropriately protect the confidentiality, integrity and availability of the electronic Protected Health Information that they create, receive, maintain or transmit on behalf of the Plan.

The Trustees will ensure that the "adequate separation" required by the Privacy Rule and by Section 8.07 of the Plan is supported by reasonable and appropriate security measures.

The Trustees will ensure that any agent, including a subcontractor, to whom they provide Protected Health Information agrees to implement reasonable and appropriate security measures to protect the Protected Health Information.

- 43 -

**Exhibit A**

The Trustees will report to the Plan any security incident (within the meaning of 45 C.F.R. § 164.304) of which it becomes aware.

- 44 -

**Exhibit A**

## ARTICLE IX.  BENEFIT CLAIMS

### 9.01    CLAIMS TO BE SUBMITTED IN WRITING ON AUTHORIZED FORMS

Claims for benefits shall be submitted electronically or in writing, within the time limits specified in Section 11.03, in a method or form authorized by the Fund.

### 9.02    PROCESSING CLAIMS INVOLVING URGENT CARE

(a)    The Fund, upon its receipt of a claim involving urgent care (as defined in Section 9.02[c]), shall notify the claimant of the Fund's benefit determination (whether adverse or not) as soon as possible, taking into account the medical exigencies, but not later than 72 hours after the Fund receives the claim unless the claimant fails to provide sufficient information to determine whether and/or to what extent benefits are covered or payable in accordance with this Plan.  If the claimant fails to provide such sufficient information, the Fund shall notify the claimant as soon as possible, but not later than 24 hours after the Fund receives the claim, of the specific information necessary to complete the claim.  The claimant shall then be afforded a reasonable amount of time, taking into account the circumstances, but not less than 48 hours, to provide the specified information, and the Fund shall thereafter notify the claimant of the Fund's benefit determination as soon as possible, but in no case later than 48 hours after the earlier of:

(1)    the Fund's receipt of the specified information;

(2)    the end of the period afforded the claimant to provide the specified additional information.

(b)    Notice of any adverse benefit determination pursuant to this Section 9.02 shall be provided in accordance with Section 9.04.

(c)    A "claim involving urgent care" is any claim for medical care or treatment with respect to which the application of the time periods for making non-urgent care determinations (as those periods are specified in Section 9.03):

(1)    could seriously jeopardize the life or health of the claimant or the ability of the claimant to regain maximum function; or

(2)    would, in the opinion of a physician with knowledge of the claimant's medical condition, subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim.

Any claim that a physician with knowledge of the claimant's medical condition determines is a "claim involving urgent care" shall be treated by the Fund as a "claim involving urgent care".  In the absence of such a physician's determination, any question whether or not a claim is a "claim involving urgent care" is to be determined by an individual acting on behalf of the Fund and applying the judgment of a prudent layperson who has average knowledge of health and medicine.

- 45 -

**Exhibit A**

9.03   **PROCESSING CLAIMS FOR BENEFITS (OTHER THAN URGENT CARE CLAIMS)**

(a)   The Fund, upon its receipt of a claim that is neither a claim involving urgent care nor a claim involving a benefit described in Section 9.03(b) (which relates to benefits requiring the Fund's pre-approval), shall notify the claimant of the Fund's benefit determination (if it is an adverse benefit determination) within a reasonable period of time and not later than 30 days after the Fund receives the claim, provided that this period may be extended for an additional 15 days if the Fund both determines that such an extension is necessary due to matters beyond the control of the Fund and notifies the claimant, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which the Fund expects to render a decision. If such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(b)   The Fund, upon its receipt of a claim (not involving urgent care) for a benefit, the receipt of which is conditioned by this Plan upon required approval by the Fund in advance of obtaining the medical care, shall notify the claimant of the Fund's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances but not later than 15 days after the Fund receives the claim, provided that this period may be extended for an additional 15 days if the Fund both determines that such an extension is necessary due to matters beyond the control of the Fund and notifies the claimant, prior to the expiration of the initial 15-day period, of the circumstances requiring the extension of time and the date by which the Fund expects to render a decision. If such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(c)   In the event that a time period for notice of any benefit determination by the Fund is extended pursuant to this Section 9.03 in order for the claimant to submit information necessary to decide the claim, the time period for making the benefit determination and providing related notice shall be tolled (i.e., not counted) from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

(d)   Notice of any adverse benefit determination pursuant to this Section 9.03 shall be provided in accordance with Section 9.04.

9.04   **NOTICE OF ADVERSE BENEFIT DETERMINATIONS**

(a)   Whenever an adverse benefit determination (as defined in Section 9.04[c]) is made by the Fund, except upon a claim involving urgent care (in which instance Section 9.04[b] governs the notice), the Fund shall provide the claimant with written (or electronic) notice of the determination that shall include statements, in a manner calculated to be understood by the claimant, of the following:

(1)   the specific reason or reasons for each adverse benefit determination;

- 46 -

**Exhibit A**

(2)    references to the specific provisions of this Plan on which each adverse benefit determination is based;

(3)    a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(4)    a description of the Fund's appellate review procedures and the time limitations applicable to those procedures, including a statement of the claimant's right to bring a civil action pursuant to Section 502 of the Employee Retirement Income Security Act following an adverse benefit determination at the end of appellate review by the Fund;

(5)    in the case of any adverse benefit determination,

    (i)    if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse benefit determination, either a statement of the contents of the specific rule, guideline, protocol or other criterion or a statement that the specific rule, guideline, protocol or other criterion will be provided free of charge to the claimant upon request; and

    (ii)    if the adverse benefit determination is based on a medical-necessity requirement or an experimental-treatment exclusion or a similar exclusion or limitation, either an explanation of the scientific or clinical judgment for the determination, applying the terms of this Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge to the claimant upon request; and

(6)    in the case of any adverse benefit determination of a claim involving urgent care, a description of the expedited review process that is applicable to such claims.

(b)    Whenever an adverse benefit determination (as defined in Section 9.04[c]) is made by the Fund upon a claim involving urgent care, the Fund may provide the information described in Section 9.04(a) to the claimant by oral notification within the time limitations prescribed in Section 9.02(a), provided that written (or electronic) notice of the determination that includes the information described in Section 9.04(a) is also to be furnished to the claimant not later than 3 days after the oral notification.

(c)    An "adverse benefit determination" means any of the following: a denial, reduction or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a Plan exclusion of Coverage or a Plan limitation of Coverage as applied to a claim for benefits, or that is based on a determination relative to the question of a Covered Individual's or any other individual's eligibility for Coverage.

## 9.05   CONCURRENT CARE DECISIONS

(a)    If the Fund has approved an ongoing course of treatment to be provided over a period of time and/or to include a number of treatments, any reduction or termination by the Fund of such course of treatment (other than by plan amendment or termination) before

- 47 -

**Exhibit A**

•

the end of such period of time or number of treatments shall constitute an adverse benefit determination for all purposes of this Plan. In such an event, the Fund shall notify the claimant, in accordance with Section 9.04, of the adverse benefit determination at a time sufficiently in advance of the reduction or termination to allow the claimant to appeal and to obtain a determination on review of that adverse benefit determination before the benefit is reduced or terminated.

(b) Any request by a claimant to extend such an ongoing course of treatment, previously approved by the Fund, beyond the approved period of time or the approved number of treatments shall, if the course of treatment is a claim involving urgent care, be decided as soon as possible, taking into account the medical exigencies, and the Fund shall notify the claimant of the Fund's benefit determination (whether adverse or not) within 24 hours after receipt of the request by the Fund, provided that any such request is received by the Fund at least 24 hours prior to the expiration of the prescribed period of time or number of treatments.

(c) Whenever an adverse benefit determination (as defined in Section 9.04[c]) is made by the Fund upon a request by a claimant to extend an ongoing course of treatment, previously approved by the Fund, beyond the approved period of time or the approved number of treatments, whether or not urgent care is involved, notice of the determination shall be provided in accordance with Section 9.04.

## 9.06   MISCELLANEOUS BENEFIT CLAIMS PROVISIONS

(a) Any time limitation specified in this Article IX for a determination and/or a notice by the Fund may be waived and/or modified at any time on the basis of a request, agreement or consent by the claimant or by an authorized representative of the claimant, including a retroactive waiver and/or modification of an applicable time limitation after it has expired.

(b) The burden of proof in demonstrating any fact essential to the approval of any claim for benefits, including eligibility for any claimed benefit and the extent to which a claimed benefit is covered or payable in accordance with this Plan, shall at all times be the responsibility of the claimant.

(c) It is a condition precedent to any civil action by a Covered Individual or other individual to recover benefits covered or payable in accordance with this Plan and/or to clarify the individual's rights to past, present or future benefits covered or payable in accordance with this Plan, including any civil action pursuant to Section 502 of the Employee Retirement Income Security Act, that the claimant or other individual files a benefit claim and initiates and actively pursues appellate review of any adverse benefit determination upon any claim, and secures all related benefit determinations by the Fund, in accordance with Articles IX and X of this Plan, prior to the commencement of any civil action.

(d) To the extent that a Hospital, Physician or other provider or person is assigned a claim of a Covered Individual for reimbursement by the Fund of the costs of medical or other services or benefits, any and all rights and authority of such assignee:

- 48 -

**Exhibit A**

(1)     are limited by the validity, enforceability and terms of the assignment;

(2)     are limited by all exclusions, limitations, terms and provisions of this Plan;

(3)     are subordinate to any claims and defenses of the Fund against the Covered Individual; and

(4)     are conditioned upon complete compliance by the assignee with all conditions and requirements imposed upon claimants by Articles IX and X of this Plan, including the requirement that the assignee (as claimant) files a benefit claim and initiates and actively pursues appellate review of any adverse benefit determination upon any claim, and secures all related benefit determinations by the Fund, in accordance with Articles IX and X, prior to the commencement of any civil action.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE X.  APPELLATE REVIEW PROCEDURES AND DETERMINATIONS

**10.01 PROCEDURES    DURING    APPELLATE    REVIEW    OF    ADVERSE    BENEFIT DETERMINATIONS**

(a)    Whenever an adverse benefit determination (as defined in Section 9.04[c]) is made by the Fund, there are multiple available stages of appellate review of the determination, as follows:

   (1)    for any Trustee-Reviewable Determination, as defined in Section 10.02, there are two available stages of appellate review of that determination, the first of which is conducted by the Appeals Committee and the second of which is conducted by the Trustee Appellate Review Committee;

   (2)    for any adverse benefit determination upon a claim involving urgent care (as defined in Section 9.02[c]), there is a single stage of appellate review, which is conducted by the Appeals Committee; and

   (3)    for any other adverse benefit determination ("Other Determination") that is neither a Trustee-Reviewable Determination nor an adverse benefit determination upon a claim involving urgent care, there are two available stages of appellate review of that determination, the first of which is conducted by the Staff Interim-Review Committee and the second of which is conducted by the Staff Final-Review Committee.

The Appeals Committee and the Staff Final-Review Committee each shall be composed of one or more employees of the Fund appointed as members of the committee by the Executive Director of the Fund, provided that the Executive Director retains the authority to terminate any such appointment at any time.  The Staff Interim-Review Committee shall be composed of one or more employees of the Fund.  If a claimant requests appellate review of multiple adverse benefit determinations, and they consist of both one or more Trustee-Reviewable Determinations and one or more Other Determinations, the Fund in its sole discretion may consolidate all of the determinations into the same appellate review (treating all determinations as Trustee-Reviewable Determinations).

(b)    All authority and responsibilities of the Board of Trustees with respect to appellate review of adverse benefit determinations is delegated to a committee of Trustees designated as the Trustee Appellate Review Committee.

(c)    The following procedures shall govern the operations of the Trustee Appellate Review Committee:

   (1)    a quorum of the Trustees at any meeting of the Trustee Appellate Review Committee, for the conduct of its business and for all benefit determinations on review by that committee, shall be at least one Employer Trustee and at least one Employee Trustee (all Trustee members of the Board of Trustees are and shall be de facto members of the Trustee Appellate Review Committee);

   (2)    for each matter voted upon at any meeting of the Trustee Appellate Review Committee, the Employee Trustees and the Employer Trustees shall each have the same number of votes based upon the larger number (of Employee Trustees

- 50 -

**Exhibit A**

or Employer Trustees) in attendance, provided that each vote shall be cast as the vote of an individual Trustee and not as part of a block, and each determination by the Trustee Appellate Review Committee shall be based upon a majority vote of those present and voting;

(3)    the meetings of the Trustee Appellate Review Committee shall be monthly according to a schedule approved by the Trustees;

(4)    the Trustees who attend and participate in any meeting of the Trustee Appellate Review Committee shall be vested, relative to all appellate review of adverse benefit determinations, with all authority and responsibilities of the Board of Trustees established by the Fund's benefit plan documents, as heretofore and hereafter amended, including discretionary and final authority in making determinations during all such appellate review; and

(5)    the records of monthly meetings of the Trustee Appellate Review Committee, and of its determinations during appellate review, shall be regularly kept and maintained with records of meetings of the Board of Trustees.

(d)    At all stages of appellate review of any adverse benefit determination, the following procedures shall be enforced:

(1)    the claimant shall be provided an opportunity to submit written comments, documents, records and other information relating to the claim for benefits;

(2)    the claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information possessed by the Fund and relevant to the claimant's claim for benefits;

(3)    the appellate review shall take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

(4)    the appellate review shall not afford deference to the initial adverse benefit determination by the Fund and shall be conducted by one or more individuals each of whom shall be an appropriate named fiduciary of the Fund who is neither an individual who made the adverse benefit determination that is the subject of the review nor a subordinate of any such individual;

(5)    the appellate review shall require that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including any determination whether a particular treatment, drug or other item is experimental, investigational or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

(6)    the appellate review shall require the identification to the claimant of any medical or vocational expert whose advice was obtained on behalf of the Fund in

- 51 -

**Exhibit A**

connection with the claimant's adverse benefit determination, whether or not the advice was relied upon in making that determination;

(7)     the appellate review shall require that each health care professional engaged by the appropriate named fiduciary for purposes of a consultation during appellate review, pursuant to this Section 10.01, shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the review nor a subordinate of any such individual; and

(8)     the appellate review in the case of a claim involving urgent care (as defined in Section 9.02[c]) shall require an expedited review process pursuant to which a request for an expedited appeal from an adverse benefit determination may be submitted orally or in writing by the claimant, and all necessary information, including the Fund's benefit determination on review, shall be transmitted between the Fund and the claimant by telephone, facsimile or other available and similarly expeditious method.

## 10.02  DEFINITION OF TRUSTEE-REVIEWABLE DETERMINATIONS

"Trustee-Reviewable Determinations" are defined to include any adverse benefit determination (as defined in Section 9.04[c]) which is within any of the following classifications (other than a *de minimis* determination which means a single or series of adverse benefit determinations upon monetary claims which involve potential aggregate Fund liability no greater than $2,500: *de minimis* determinations shall be reviewed as Other Determinations):

(a)     all adverse benefit determinations based upon Article III (PARTICIPATION AND COVERAGE);

(b)     all adverse benefit determinations based upon Article IV (GENERAL EXCLUSIONS, LIMITATIONS AND CONDITIONS FOR PAYMENT OF CLAIMS) except determinations based upon Section 4.16 (EXCLUSION OF PAYMENT OVER PRESCRIBED MAXIMUMS);

(c)     all adverse benefit determinations based upon Section 11.14 (SUBROGATION) or Section 11.15 (WORKER'S COMPENSATION SUBROGATION);

(d)     all adverse benefit determinations based upon Article XII (BASIC BENEFITS) except determinations upon claims for Prescription Drug Benefits (Section 12.07), Hearing Aid Benefits (Section 12.11) and Chiropractic Expense Benefits (Section 12.14);

(e)     all adverse benefit determinations based upon Article XIII (MAJOR MEDICAL EXPENSE BENEFITS);

(f)     all adverse benefit determinations based upon Article XIV (LIFE INSURANCE BENEFITS); and

(g)     all other types of adverse benefit determinations which the Fund expressly classifies as Trustee-Reviewable Determinations.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

**10.03 TIME LIMITATIONS FOR APPELLATE REVIEW OF ADVERSE BENEFIT DETERMINATIONS**

(a)     Whenever an adverse benefit determination is made by the Fund, including a determination by the Fund affecting a payment amount claimed by a Covered Individual or any medical provider who is an assignee or beneficiary of a Covered Individual, the claimant may initiate appellate review of the determination by submission to the Fund, within 180 days after the claimant's receipt of the Fund's notice of such adverse benefit determination, of a request for such appellate review. All requests for appellate review shall be submitted to the Fund, electronically or in writing, in a method or form authorized by the Fund.

(b)     The Fund, upon its receipt of a claimant's timely request for appellate review of an earlier adverse benefit determination upon a claim involving urgent care (as defined in Section 9.02[c]), shall notify the claimant of the benefit determination by the Appeals Committee as soon as possible, taking into account the medical exigencies, but not later than 72 hours after the Fund receives the claimant's request for appellate review.

(c)     The Fund, upon its receipt of a claimant's timely request for appellate review of a Trustee-Reviewable Determination, shall perform and complete appellate review, and shall notify the claimant of the determinations upon completion of such review, in accordance with the following time limitations:

        (1)     all appellate review and benefit determinations by the Appeals Committee shall be completed, and the Fund shall provide written notice to the claimant of those determinations, no later than 30 days after the Fund's receipt of the claimant's timely request for appellate review of a Trustee-Reviewable Determination;

        (2)     whenever an adverse benefit determination is made by the Appeals Committee at the end of its appellate review, the claimant may initiate appellate review by the Trustee Appellate Review Committee, by request to the Fund within 180 days after the claimant's receipt of the Fund's notice of such determination;

        (3)     all appellate review and benefit determinations by the Trustee Appellate Review Committee shall be completed within a reasonable time and at the <u>first</u> monthly meeting that takes place on a date 30 or more days after the Fund receives the claimant's timely request for appellate review by the Trustee Appellate Review Committee; and

        (4)     after appellate review and benefit determinations by the Trustee Appellate Review Committee, the Fund shall provide written notice to the claimant of those determinations by the Trustees no later than 5 days after the determinations are made.

(d)     The Fund, upon its receipt of a claimant's timely request for appellate review of an Other Determination, shall perform and complete appellate review, and shall notify the claimant of the determinations upon completion of such review, in accordance with the following time limitations:

- 53 -

**Exhibit A**

(1)     all appellate review and benefit determinations by the Staff Interim-Review Committee shall be completed, and the Fund shall provide written notice to the claimant of those determinations, no later than 30 days after the Fund's receipt of the claimant's timely request for appellate review of an Other Determination;

(2)     whenever an adverse benefit determination is made by the Staff Interim-Review Committee at the end of its appellate review, the claimant may initiate appellate review by the Staff Final-Review Committee, by written request to the Fund within 180 days after the claimant's receipt of the Fund's notice of such determination; and

(3)     all appellate review and benefit determinations by the Staff Final-Review Committee shall be completed, and the Fund shall provide written notice to the claimant of those determinations, no later than 30 days after the Fund's receipt of the claimant's timely request for appellate review by the Staff Final-Review Committee.

(e)     The Fund, upon its receipt of a claimant's timely request for appellate review of an adverse benefit determination upon a claim (not involving urgent care) for a benefit, the receipt of which is conditioned by this Plan upon required approval by the Fund in advance of obtaining the medical care, shall arrange a single stage of appellate review within a reasonable period of time appropriate to the medical circumstances, provided that the Appeals Committee shall complete (and send the claimant notice of) the Fund's benefit determination on review no later than 30 days after the Fund receives the claimant's request for appellate review.

(f)     Notice of any adverse benefit determination pursuant to this Section 10.03 shall be provided in accordance with Section 10.04.

## 10.04  NOTICE OF BENEFIT DETERMINATIONS AFTER APPELLATE REVIEW

Whenever a benefit determination is made after appellate review (by the Staff Interim-Review Committee, the Staff Final-Review Committee, the Appeals Committee or the Trustee Appellate Review Committee), the Fund shall provide the claimant with written (or electronic) notice of the determination that shall include statements, in a manner calculated to be understood by the claimant, of the following:

(a)     the specific reason or reasons for each adverse benefit determination;

(b)     references to the specific provisions of this Plan on which each adverse benefit determination is based;

(c)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits;

(d)     a description of the Fund's appellate review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action pursuant to Section 502 of the Employee Retirement Income Security Act following an adverse benefit determination at the end of appellate review by the Fund; and

**Exhibit A**

(e)    in the case of any adverse benefit determination relating to disability benefits,

    (1)    if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse benefit determination, either a statement of the contents of the specific rule, guideline, protocol or other criterion or a statement that the specific rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy will be provided free of charge to the claimant upon request; and

    (2)    if the adverse benefit determination is based on a medical-necessity requirement or an experimental-treatment exclusion or a similar exclusion or limitation, either an explanation of the scientific or clinical judgment for the determination, applying the terms of this Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge to the claimant upon request.

## 10.05  MISCELLANEOUS APPELLATE REVIEW PROVISIONS

(a)    Any time limitation specified in this Article X for a determination and/or a notice by the Fund may be waived and/or modified at any time on the basis of a request, agreement or consent by the claimant or by an authorized representative of the claimant, including a retroactive waiver and/or modification of an applicable time limitation after it has expired.

(b)    In the event that any time period for any appellate review by the Fund of an earlier adverse benefit determination, and of notice of the determinations upon completion of such review, is extended based upon a failure by the claimant to submit information necessary to decide the claim, each time period for the conduct and completion of such appellate review, and for making benefit determinations, and of providing notice of those determinations, relative to the claimant's claim, shall be tolled (i.e., not counted) from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

(c)    Each individual who is authorized to conduct interim appellate review (as a member of the Appeals Committee or the Staff Interim-Review Committee) is vested with discretionary and final authority in making any determination within the scope of this Article X, except that, upon further appellate review by the Trustee Appellate Review Committee or the Staff Final-Review Committee, the prior discretionary and final authority of the interim appellate-review agency is displaced by the discretionary and final authority of the final appellate-review agency (the Trustee Appellate Review Committee or the Staff Final-Review Committee), which shall not afford any deference to any determination by the interim appellate-review agency.

(d)    The Trustees are vested with discretionary and final authority in making any determination within the scope of this Article X.

(e)    The burden of proof in demonstrating any fact essential to the approval of any claim for benefits, including eligibility for any claimed benefit and the extent to which a claimed benefit is covered or payable in accordance with this Plan, shall at all times be the responsibility of the claimant, provided that the Fund will at all times during appellate

- 55 -

**Exhibit A**

review of an adverse benefit determination provide to the claimant, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information possessed by the Fund and relevant to the claimant's claim for benefits.

(f)    It is a condition precedent to any civil action by a Covered Individual or other individual to recover benefits covered or payable in accordance with this Plan and/or to clarify the individual's rights to past, present or future benefits covered or payable in accordance with this Plan, including any civil action pursuant to Section 502 of the Employee Retirement Income Security Act, that the claimant or other individual files a benefit claim and initiates and actively pursues appellate review of any adverse benefit determination upon any claim, and secures all related benefit determinations by the Fund, in accordance with Articles IX and X of this Plan, prior to the commencement of any civil action.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XI.  MISCELLANEOUS PROVISIONS

### 11.01  VALIDITY OF CHANGES IN THE PLAN

No agent has authority to change the terms of this Plan or to waive any of its provisions.  No change in this Plan shall be valid unless adopted by the Trustees of the Fund.

### 11.02  CLAIM FORMS

The Fund, upon written request of the claimant, will furnish to the claimant such forms as are required for filing a claim.

### 11.03  TIME WITHIN WHICH CERTAIN CLAIMS ARE TO BE FILED

A claim for any loss (excluding Total and Permanent Disability Installment Benefit or Waiver of Premium) must be filed within one (1) year after the date of such loss.  A claim for Life Insurance, Accidental Death and Dismemberment, Total and Permanent Disability Installment Benefit or Waiver of Premium must be filed within three years (3) after the date of the event.

### 11.04  RECOVERY OF EXCESS PAYMENTS

Whenever this Plan has made benefit payments which exceed the amount of benefits payable under the terms of this Plan, the Fund shall have the right to recover the excess payments from any responsible persons or entities, including the right to deduct the amount of excess payments from any subsequent payable benefits.

### 11.05  FUND MAY ORDER PHYSICAL EXAMINATION AND/OR AUTOPSY

The Fund shall have the right and opportunity to have a claimant examined by a medical service provider, of the Fund's choosing and at the Fund's expense, when, and so often as it may reasonably require during the pendency of a claim.  In the case of death, the Fund shall also have the right to request an autopsy where it is not forbidden by law.

### 11.06  TO WHOM BENEFITS ARE PAYABLE

All benefits are payable to, or for the benefit of, a Covered Individual or his estate, except as otherwise provided in this Plan.

Any provider of medical or healthcare services or goods receiving, or seeking to receive, payment from the Fund will, in the absence of evidence to the contrary, be presumed to have claimed a right to do so pursuant to a valid assignment of benefits under the Plan from a Covered Individual.  Any such provider will accordingly be presumed to have presented a claim as a beneficiary under this Plan and will be bound by all provisions of this Plan, including but not limited to, the provisions relating to Amendments and Plan Termination (Article VII), Plan Administration (Article VIII), Benefit Claims (Article IX), Appellate Review Procedures and Determinations (Article X), and Miscellaneous Provisions (Article XI).

- 57 -

**Exhibit A**

## 11.07  CERTAIN ACTS OF THE FUND DO NOT CONSTITUTE A WAIVER OF RIGHTS

The furnishing of forms by the Fund for filing a claim for benefits, or the acceptance of such filings or the investigation of any claim hereunder, shall not operate as a waiver of any rights of the Fund.

## 11.08  NO MEDICAL EXAMINATION REQUIRED AS PREREQUISITE TO COVERAGE

In no case shall any individual be required to submit to a medical examination as a prerequisite to Coverage under this Plan.

## 11.09  ALL BENEFIT PAYMENTS BASED ON REASONABLE AND CUSTOMARY CHARGES FOR THE SERVICE

In all instances, other than when a specific dollar amount is the stated allowance, benefits to be paid by the Fund will be based upon a charge which is the usual, Reasonable and Customary charge for the treatment, supply or service, determined by comparison with the charges customarily made for similar treatments, supplies or services to individuals with similar medical conditions within a given geographical area.

## 11.10  PERIOD DURING WHICH BENEFIT PAYMENTS MUST BE CLAIMED

Any benefit amounts payable under this Plan must be claimed by the proper beneficiaries within a period of six (6) years from the date that such amounts become due and payable to such beneficiaries. Benefits unclaimed after this six (6) year period shall be considered the property of the Fund which shall have the immediate right to recover the amount of any unclaimed benefits from any persons in possession of said benefit amounts or from any Other Plans having primary responsibility for payment of such benefits.

## 11.11  APPLICABLE LAW

The Trust Agreement was created and accepted in the State of Illinois. All questions pertaining to the validity or construction of the Trust Agreement shall be determined in accordance with the laws of the State of Illinois.

The Fund is a self-funded employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. All questions concerning the validity of the terms of the Plan shall be determined under ERISA. Any state law that relates to the operation or administration of the Plan is preempted by ERISA and this Plan. The Fund shall be entitled to assert a lien against third parties, insurers and attorneys when necessary to protect the rights of the beneficiaries of the Plan or when necessary to protect the Fund's rights to recover any reimbursements provided for by the terms of this Plan.

**Exhibit A**

## 11.12  SEVERABILITY OF PLAN PROVISIONS

Should any provision of this Plan be held null and void by a court of competent jurisdiction, such holding shall not adversely affect any other provision of this Plan.

## 11.13  RIGHT TO REVIEW ALL CLAIMS

The Fund reserves the right to question any charge or procedure and to have the same professionally reviewed to determine if it is covered under the Plan.  The results of said professional review shall not be binding on the Trustees.

## 11.14  SUBROGATION

(a)     The Fund, whenever it makes any payment for any benefits on behalf of a Covered Individual or other person related to any illness, injury or disability (collectively and separately "Disability") of the person, is immediately subrogated and vested with subrogation rights ("Subrogation Rights") to all present and future rights of recovery ("Loss Recovery Rights") arising out of the Disability which that person and his parents, heirs, guardians, executors, attorneys, agents and other representatives (individually and collectively called the "Covered Individuals") may have.  The Fund's Subrogation Rights extend to all Loss Recovery Rights of the Covered Individual.  The Loss Recovery Rights of the Covered Individual include, without limitation, all rights based upon any one or more of the following:

(1)     Any act or omission by any person or entity, including the Covered Individual; and/or

(2)     Any policy, contract, plan or other document creating responsibility for any insurance, indemnity or reimbursement (collectively "insurance") (including but not limited to every document within the definition of "Other Plan" in Section 1.48 and also including every other form of no-fault liability insurance, personal-injury-protection insurance, financial responsibility insurance, uninsured and/or underinsured motorist insurance and any casualty liability insurance or medical payments coverage including, but not limited to, homeowners or premises insurance, school insurance, workers' compensation insurance, athletic team insurance and any other specific risk insurance or coverage; and/or

(3)     Any medical reimbursement insurance not purchased by the Participant who is the source of Coverage of the Covered Individual; and/or

(4)     Any government-funded or government-sponsored financial entity which may be a source of payment or reimbursement of Loss Recovery Rights to a Covered Individual.

(b)     The Covered Individual shall fully cooperate with the Fund in enforcement of the Fund's Subrogation Rights, shall make prompt, full, accurate and continuous disclosures to the Fund's representatives of all information about all circumstances of his Disability and about all other specifics of his Loss Recovery Rights (including prompt, full, accurate and continuous disclosures of the specifics of applicable insurance and all other

- 59 -

**Exhibit A**

potential sources of recovery), shall upon request by a Fund representative execute. whatever documents are appropriate to enforce and preserve the Fund's Subrogation Rights, shall perform whatever acts are requested by a Fund representative to enable the Fund to effectively prosecute a civil action in the name of the Covered Individual and/or the Fund and one or more Trustees if the Fund deems such action necessary or appropriate and shall refrain from any act or omission that would to any extent prejudice or impair the Fund's Subrogation Rights.

(c)     The payment by the Fund for any benefits on behalf of a Covered Individual related to his Disability, and simultaneous creation of the Fund's Subrogation Rights to the full extent of present and future payments, shall by itself (without any documentation from, or any act by, the Covered Individual) result in an immediate assignment to the Fund of all right, title and interest of the Covered Individual to and in any and all of his Loss Recovery Rights to the extent of such payments.

(d)     No Covered Individual (including his attorneys and other representatives) is authorized to act on behalf of the Fund with respect to the Fund's Subrogation Rights, or to receive any payment or reimbursement on behalf of the Fund or to release or impair the Fund's Subrogation Rights to any extent.   The Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds or other proceeds (collectively "Proceeds") in full or partial satisfaction of his or her Loss Recovery Rights.   If the Fund is vested with Subrogation Rights pursuant to this Section 11.14, then, before the Covered Individual receives any Proceeds, the Covered Individual, and every person and entity that provides any recovery of Proceeds to or on behalf of a Covered Individual, are obligated to cause all such Proceeds to be paid primarily and directly to the Fund until the Fund has received full payment and reimbursement of the Fund's Subrogation Rights.

(e)     If at any time, either before or after the Fund becomes vested with Subrogation Rights pursuant to this Section 11.14, a Covered Individual directly or indirectly receives any Proceeds as full or partial satisfaction of his Loss Recovery Rights, including arrangements for an annuity or other similar installment benefit plan, and including any payment or reimbursement of expenses (including attorneys' fees) incurred by or on behalf of the Covered Individual, without prior written approval of an authorized Fund representative, the Fund shall be vested with each of the following mutually independent rights:

(1)     The right, at any time, to decline to make any payment for any benefits on behalf of the Covered Individual related to the Disability on which the Proceeds were based;

(2)     The right, at any time after the Fund becomes vested with Subrogation Rights, to decline to make any payment for any benefits on behalf of the Covered Individual, related to any circumstance or condition for which the Fund otherwise has a Coverage obligation, until the amount of such unpaid Coverage is equal to the unrecovered amount of the Fund's Subrogation Rights; and

(3)     The right, at any time after the Fund becomes vested with Subrogation Rights, to prosecute a civil action against the Covered Individual and/or against any person and/or any other entity (including any insurance company) which the

- 60 -

**Exhibit A**

Fund claims to be responsible, in whole or in part, to provide payment or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights.

(f)     The Fund may assert a lien, for recovery of the Fund's Subrogation Rights against any person or entity.   The fact that the Fund does not initially assert or invoke its Subrogation Rights until a time after a Covered Individual, acting without prior written approval of an authorized Fund representative, has made any settlement or other disposition of, or has received any Proceeds as full or partial satisfaction of, his Loss Recovery Rights, shall not relieve the Covered Individual of his obligation to reimburse the Fund in the full amount of the Fund's Subrogation Rights.

(g)     The Fund shall not be financially responsible for any expenses, including attorneys' fees, incurred by or on behalf of a Covered Individual in the enforcement of his Loss Recovery Rights, except to the extent such responsibility is formally accepted by written agreement of an authorized Fund representative.

(h)     The Fund is authorized but not required to bring civil actions in enforcement of the Fund's Subrogation Rights, including direct actions (as subrogee or otherwise) against any person or other entity which the Fund claims to be responsible, in whole or in part, to provide payment or compensation or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights, and including actions against any person or other entity to enjoin any act or practice which violates the Fund's Subrogation Rights and/or to obtain other appropriate equitable relief to redress such violations and/or to enforce the Fund's Subrogation Rights.

(i)     The Trustees are vested with discretionary and final authority in making decisions that interpret plan documents of the Fund that relate to subrogation.  Any one or more Trustees and the Executive Director, and any other person authorized by the Executive Director, may, in his sole discretion, compromise or settle any Fund claim of Subrogation Rights.

(j)     This subsection (j) is added by the Trustees at a board meeting on June 14, 2000, effective immediately and retroactively, in order to add clarification to what have long been intended and understood to be the intention and the purposes of the Trustees in providing for the Subrogation Rights of the Fund (this section was most recently revised by the Trustees at a board meeting on July 18, 1994). Subsection (d) has long provided in part that '[t]he Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds or other proceeds (collectively "Proceeds') in full or partial satisfaction of his or her Loss Recovery Rights....[and] all such Proceeds [are] to be paid primarily and directly to the Fund until the Fund has received full payment and reimbursement of the Fund's Subrogation Rights' (emphasis added). The Fund's entitlement to full payment and reimbursement of its Subrogation Rights is absolute and unqualified, and is not to be reduced or impaired by the relationship of the gross or net amount of the Proceeds to the aggregate monetary damages sustained, or claimed to be sustained, by the Covered Individual in connection with the Disability related to his or her Loss Recovery Rights. The Fund's Subrogation Rights are not in any way subordinate to or affected by any 'make whole' rule. Subsection (g) has long provided in part that, unless otherwise expressly agreed in a specific instance, "[t]he Fund shall not be financially responsible for any expenses, including attorneys' fees, incurred by or on

- 61 -

**Exhibit A**

behalf of a Covered Individual in the enforcement of his or her Loss Recovery Rights...". The Fund's Subrogation Rights are not in any way subordinate to or affected by any 'common fund' principle or factor -- sometimes described as the equitable concept of a 'common fund' which governs the allocation of attorney's fees in any case in which a lawyer hired by one party creates through his efforts a fund in which others are entitled to share as well -- the acceptance of plan benefits from the Fund entirely subordinates the Loss Recovery Rights of the Covered Individual to the Subrogation Rights of the Fund (without any 'common fund' reduction or other reduction of those Subrogation Rights). Every payment and reimbursement to the Fund based upon its Subrogation Rights results in a monetary benefit to all of the Covered Individuals of the Fund. The Fund does maintain systematic procedures to ascertain the extent to which its Subrogation Rights should be compromised and not fully enforced in specific instances, and each Covered Individual is free to invoke the appeals procedures of this Plan document in any instance in which he or she claims that the Fund's application of its Subrogation Rights is unfair and/or unreasonable and/or unsatisfactory.

## 11.15 WORKER'S COMPENSATION SUBROGATION

If any Covered Individual has a claim denied pursuant to Section 4.03 of this Plan and the Covered Individual's claim for Worker's Compensation benefits is denied by the Worker's Compensation Carrier, the Fund may enter into an agreement with the Covered Individual to provide benefits during the appeal of the denial. Such an agreement would be entitled "Agreement to Reimburse Central States Health and Welfare Fund".

The Fund will enter into such an Agreement subject to the following conditions:

(a) The Covered Individual provides proof that a claim is pending before the appropriate Compensation Commission or court;

(b) The Covered Individual agrees to pursue the claim for Worker's Compensation benefits to a final disposition;

(c) The Covered Individual agrees to notify the Fund of the disposition of his claim and to notify the Worker's Compensation Carrier of the Agreement;

(d) The Covered Individual establishes sufficient need for the Fund to consider application of this Section; and

(e) The Covered Individual agrees to reimburse the Fund for benefits paid from the proceeds of any recovery.

The Agreement described in this Section is a binding contract between the Covered Individual and the Fund, and in the event the Covered Individual does not honor this Agreement, the Fund reserves the right to take any necessary step to protect its interest.

## 11.16 RIGHT TO PROVIDE ALTERNATIVE CARE

The Trustees reserve the right to provide benefits for medical care not addressed in this Plan where such alternative care is in the best interest of the Fund and its beneficiaries, and where the Covered

- 62 -

**Exhibit A**

Individual or his or her legal guardian and, in the case of a Child, the Covered Participant agree in writing to such alternative care. Alternative care options will be examined on a case by case basis and subject to the approval of the Trustees.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XII.  BASIC BENEFITS

### 12.01  OUTLINE OF BASIC BENEFITS

The Sections of Article XII describe policies and procedures applicable to all Plans offering the referenced Basic Benefit.  However, levels of payment, if any, and/or program limitations specific to the Covered Individual's Plan are determined by referencing the appropriate sub-section of Section 20.01.

The specific Basic Benefits and the Sections of this Article pertaining to the same are as follows:

|  | **Section** |
|---|---|
| Loss of Time Benefit—Participant Only | 12.02 |
| Hospital Expense Benefit | 12.03 |
| Surgical and Obstetrical Expense Benefit | 12.04 |
| Outpatient Diagnostic X-ray and Laboratory Expense Benefit | 12.05 |
| Outpatient Accidental Bodily Injury Expense Benefit | 12.06 |
| Prescription Drug Benefit | 12.07 |
| Psychiatric, Alcoholism and Drug Abuse—Inpatient Treatment Benefit | 12.08 |
| Psychiatric, Alcoholism and Drug Abuse—Outpatient Treatment Benefit | 12.09 |
| Organ Transplant Donor Benefit | 12.10 |
| Hearing Aid Benefit | 12.11 |
| Outpatient Cancer Treatment Benefit | 12.12 |
| Ambulance Service Benefit | 12.13 |
| Chiropractic Expense Benefit | 12.14 |
| Women's Health Benefit | 12.15 |
| Mayo Clinic Treatment | 12.16 |
| Wellness Benefit | 12.17 |

### 12.02  LOSS OF TIME BENEFIT—PARTICIPANT ONLY

A Covered Participant may receive from the Plan a Loss of Time Benefit as follows:

**Periods of Disability for the Loss of Time Benefit—Participant Only**

**Exhibit A**

(a)     A Covered Participant shall receive from the Plan a weekly Loss of Time Benefit in the amount and for the maximum benefit period referenced under Section 20.01(a) during a single period of Disability, as determined in Sub-Section (c) of this Section, for loss of time from employment as a result of being unable to work because of illness, injury or pregnancy. To qualify for the Loss of Time Benefit a Covered Participant must:

    (1)     Be absent from work because of a Disability, the treatment of which is compensable under this Plan;

    (2)     Be an Active Employee at the onset of the Disability for which the Loss of Time Benefit is claimed; and

    (3)     Be under the regular care of a Physician.

(b)     Benefits shall begin to accrue as follows:

    (1)     For loss of time due to illness or pregnancy, benefits shall accrue from the eighth (8th) day of lost work time specified by a Physician and verified by the Employer, if the Covered Participant first received medical attention by a Physician within one (1) day before or three (3) days after the date of disablement specified by the Physician as resulting from the illness or pregnancy. If the Covered Participant did not receive medical attention within these time frames, benefits shall accrue from the eighth (8th) day after the date medical attention is received from a Physician; and

    (2)     For loss of time due to Accidental Bodily Injury, benefits shall accrue from the first (1st) day of lost work time specified by the Physician and verified by the Employer, provided that the Covered Participant first received medical attention within one (1) day before or three (3) days after the date of disablement specified by the Physician as resulting from the injury. Benefits shall accrue from the date medical attention is received from the Physician, if this medical attention was received more than three (3) days after the occurrence of the injury. If a period of loss of time due to an injury begins more than two (2) weeks after the date of the occurrence of the injury, it shall be treated for purposes of this Sub-Section (1) as loss of time due to an illness.

(c)     All periods of loss of time for which a Loss of Time Benefit is payable shall be deemed to occur during a single period of Disability except:

    (1)     Loss of time due to related illnesses, injuries or pregnancy shall be deemed to arise during separate periods of Disability, if, and only if, thirty (30) or more consecutive calendar days of active employment separate the dates on which the Covered Participant is absent from work; or

    (2)     Loss of time due to unrelated illnesses, injuries or pregnancy shall be deemed to arise during separate periods of Disability, if, and only if, one (1) day of active employment separates any periods of absence from work.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## 12.03  HOSPITAL EXPENSE BENEFIT

A Covered Individual may receive from the Plan a Hospital Expense Benefit as follows:

(a)  Conditions—

   (1)  The Hospital Confinement must be the result of illness, injury, pregnancy or organ transplant donation; and

   (2)  The Covered Individual must be under the care of a Physician.

(b)  Covered Expenses—

For the number of days and at the level of benefits specified under Section 20.01(b), the Plan shall pay for all covered charges incurred in a Hospital by Covered Individuals for services which are required for purposes of treatment. Coverage shall include, but not be limited to: room and board, general nursing care, operating room, administration of anesthesia, X-ray examinations, laboratory analyses, drugs and medicines, unreplaced blood, and necessary disposable items. Standard hospital admission kits are also payable. A private room used for isolation purposes will only be covered if the Covered Individual is contagious to other patients.

(c)  Non-Covered Expenses—

   (1)  Telephone, television, radio, barber and beauty services, other personal items and replaced blood;

   (2)  Taxes, surcharges or interest charges;

   (3)  Any amount in excess of the Hospital's average Semi-Private Room rate, except as provided in Paragraph (b) above; and

   (4)  Private room charges for reverse isolation.

## 12.04  SURGICAL AND OBSTETRICAL EXPENSE BENEFIT

A Covered Individual may receive from the Plan a Surgical and Obstetrical Expense Benefit as follows:

(a)  Conditions—

   (1)  The surgery, except for sterilizations, must be necessitated by illness, injury, pregnancy or organ transplant donation; and

   (2)  The surgery must be performed by a Physician, podiatrist or Dentist provided they are so licensed to perform such surgery.

(b)  Covered Expenses—

The Plan shall pay the level of benefits specified under Section 20.01(c) for the covered Physician's charges. All payments shall be based upon the Reasonable and Customary charge as established by the Fund.

- 66 -

**Exhibit A**

(c)    Non-Covered Expenses—

Charges for stand-by surgeons and any portion of the surgical expense which exceeds the Reasonable and Customary allowance.

## 12.05  OUTPATIENT DIAGNOSTIC X-RAY AND LABORATORY EXPENSE BENEFIT

A Covered Individual may receive from the Plan an Outpatient Diagnostic X-ray and Laboratory Expense Benefit as follows:

(a)    Conditions—

(1)    Except as otherwise provided in this Plan, the X-ray or laboratory examination must be necessitated by illness, injury, pregnancy or organ transplant donation; and

(2)    X-ray and laboratory charges will be paid on the basis of Reasonable and Customary allowances and/or usage limitations.

(b)    Covered Expenses—

The Plan shall pay the level of benefits for out-patient X-ray and laboratory charges as a Major Medical Expense Benefit and as specified under Sections 20.01(d) and 20.01(p).

(c)    Non-Covered Expenses—

(1)    Diagnostic procedures rendered as part of a routine physical examination, except as otherwise provided in this Plan;

(2)    Any portion of the X-ray and laboratory charges that exceed Reasonable and Customary allowances and/or usage limitations; and

(3)    Dental X-rays or laboratory work.

## 12.06  OUTPATIENT ACCIDENTAL BODILY INJURY EXPENSE BENEFIT

A Covered Individual may receive from the Plan an Outpatient Accidental Bodily Injury Expense Benefit as follows:

(a)    Conditions—

(1)    The emergency care must be the result of an Accidental Bodily Injury;

(2)    The Covered Individual must not be confined to the Hospital as a resident patient; and

(3)    Treatment must be received within five (5) days of the occurrence of the injury.

- 67 -

**Exhibit A**

(b)    Covered Expenses—

The Plan shall pay the level of benefits specified under Section 20.01(e) for all covered expenses incurred due to any Accidental Bodily Injury on the first (1st) day of treatment only.

(c)    Non-Covered Expenses—

No payment shall be made under this benefit for illness.

## 12.07  PRESCRIPTION DRUG BENEFIT

A Covered Individual may receive from the Plan a Prescription Drug Benefit as follows:

(a)    Conditions—

The Plan will pay the level of benefits specified under Section 20.01(f) for covered charges for these Prescription Drugs.

(b)    Covered Expenses—

The Plan will provide benefits only for those covered drugs prescribed by a Physician or Dentist, dispensed by a Pharmacist and not available over the counter (except insulin and insulin syringes), including:

 (1) Any medicinal substance which bears the legend: "Caution: Federal Law Prohibits Dispensing Without a Prescription";

 (2) Any medicinal substance which may be dispensed by prescription only according to state law;

 (3) Any medicinal substance which has at least one ingredient that is a federal or state restricted drug in a therapeutic amount; and

 (4) Insulin and syringes.

(c)    Non-Covered Expenses—

 (1) Therapeutic devices or appliances, hypodermic needles, support garments and other non-medicinal substances;

 (2) All contraceptive and prophylactic Prescription Drugs and devices, except that contraceptive Prescription Drugs will be treated as Covered Expenses in any instance in which the Fund receives persuasive evidence that the contraceptive Prescription Drug has been prescribed by a Physician for the medical care and treatment of a specific existing medical condition of the Covered Individual;

 (3) Medications supplied to Covered Individuals in a Hospital or other treatment facility (includes take home drugs);

- 68 -

**Exhibit A**

(4)     Drugs or medicines supplied to the Covered Individual by a prescribing Physician or Dentist;

(5)     Cosmetic or beauty aids, dietary supplements, vitamins, medications prescribed for weight-loss;

(6)     Immunizing agents, blood and blood plasma or medication prescribed for parenteral administration;

(7)     Medication for which the cost is recoverable under any Worker's Compensation or Occupational Disease Law or any state or federal agency.  Any medication furnished by any other drug or medical service for which no charge is made to the Covered Individual;

(8)     Any drug labeled: "Caution:  Limited by Federal Law to Investigational Use", or any experimental drug;

(9)     Any drug or medication available over the counter;

(10)    Any drug or medication for enhancing sexual function, including but not limited to Viagra; and

(11)    Any drug or medication primarily intended for cosmetic or lifestyle enhancement rather than treatment of an illness or injury.

## 12.08  PSYCHIATRIC, ALCOHOLISM AND DRUG ABUSE—INPATIENT TREATMENT BENEFIT

A Covered Individual may receive from the Plan a Psychiatric, Alcoholism and Drug Abuse—Inpatient Treatment Benefit as follows:

(a)     Covered Expenses—

The Plan will provide benefits for necessary care and treatment including, but not limited to: room at semi-private rate, meals, nursing care, medical supplies and other services as regularly rendered by a qualified Hospital or a licensed Psychiatric Treatment Facility or Alcoholism or Drug Abuse Treatment Facility, as approved by the Fund.

(b)     Amount Paid—

For the number of days at the level of benefits specified under Section 20.01(g), all covered charges up to the calendar year and/or lifetime maximum specified under Section 20.01(g) when incurred by a Covered Individual in a qualified Hospital or in a licensed Psychiatric Treatment Facility or Alcoholism and Drug Abuse Treatment facility.

(c)     Non-Covered Expenses—

(1)     Maintenance Care;

(2)     Treatment not prescribed by a psychiatrist, Physician or clinical psychologist;

- 69 -

**Exhibit A**

(3)    Half-way house type facilities;

(4)    Legal Services;

(5)    Recreational, vocational, financial, educational, family or marital counseling;

(6)    Services rendered by a federal, state or other facility for which the member is not legally required to pay;

(7)    Detoxification or drug withdrawal programs not rendered by a Hospital, a licensed Psychiatric Treatment Facility or Alcoholism and Drug Abuse Treatment Facility;

(8)    Services rendered by a social worker or counselor who is not licensed or not registered in the state where services are performed; and

(9)    Telephone, television, radio, barber, beauty services and other personal comfort items.

## 12.09  PSYCHIATRIC, ALCOHOLISM AND DRUG ABUSE—OUTPATIENT TREATMENT BENEFIT

A Covered Individual may receive from the Plan a Psychiatric, Alcoholism and Drug Abuse—Outpatient Treatment Benefit as follows:

(a)    Covered Expenses—

All services rendered on an outpatient basis under the direction of a psychiatrist, Physician, Clinical Psychologist, or licensed social worker performed for maintenance of a psychiatric condition or chemical abuse program in affiliation with a Hospital, Psychiatric Treatment Facility or Alcoholism or Drug Abuse Treatment Facility.

(b)    Amount Paid—

The Plan will pay the level of benefits specified under Section 20.01(h) for all covered outpatient expenses up to the calendar year maximum specified under Section 20.01(h) for each Covered Individual.

(c)    Non-Covered Expenses—

The Plan will not pay charges for:

(1)    Educational, vocational, financial, family or marital counseling;

(2)    Legal Services;

(3)    Recreational counseling;

(4)    Services rendered by a federal, state or other institution for which the member is not legally required to pay;

- 70 -

Exhibit A

(5)     Dues or contributions to a supportive organization or facility; and

(6)     Services rendered by a social worker or counselor who is not licensed or not registered in the state where services are performed.

## 12.10  ORGAN TRANSPLANT DONOR BENEFIT

A Covered Individual may receive from the Plan an Organ Transplant Donor Benefit as follows:

(a)     This Plan will provide Coverage for the donor of an organ only in the absence of any other group or individual policy coverage for the donation of an organ, and only if such donation pertains to a procedure which has met the requirements for coverage as defined in Sections 4.02 and 4.17, except for the limitations on amounts in Section 4.17. The donor's medical expenses will be considered part of, and subject to, the provisions of the recipient's Plan.  Donors shall be entitled to Basic Benefits, except for the Loss of Time Benefit.  Major Medical Expense Benefits for donors are payable while the donor is confined in a Hospital for the actual donation of the organ and for ninety (90) days after the end of this Hospital confinement; and

(b)     If both the recipient and the donor are covered under any Fund Plan, each shall be entitled to the maximum benefits provided and outlined under their respective Plans.

(c)     Non-Covered Expenses—

(1)     Surgical procedures considered not to be Standard Medical Care, Treatment, Services or Supplies; and

(2)     Charges covered by any Other Plan.

## 12.11  HEARING AID BENEFIT

A Covered Individual may receive from the Plan a Hearing Aid Benefit as follows:

(a)     Covered Expenses–

The Plan will provide benefits for all medically necessary services rendered by an audiologist or a certified hearing aid specialist, if recommended or prescribed by a Physician, including fitting, initial batteries and cost of approved hearing aid correction devices.

(b)     Amount Paid–

The Plan will pay the level of benefits under the time frames specified in Section 20.01(j) for Reasonable and Customary covered charges, up to a maximum of $1,000 per hearing aid, per ear, incurred by each Covered Individual.

(c)     Non-Covered Expenses–

(1)     Replacement of lost, missing or stolen appliances;

**Exhibit A**

(2)    Repair or replacement of broken appliances;

(3)    Replacement of batteries;

(4)    Hearing aids purchased without prescription or recommendation by a Physician or without a Waiver approved by the Food and Drug Administration;

(5)    Charges for care, treatment, services or supplies which are not uniformly and professionally endorsed by the general medical community as Standard Medical Care, Treatment, Services or Supplies; and

(6)    Services and supplies for which the Covered Individual is not legally required to pay.

## 12.12  OUTPATIENT CANCER TREATMENT BENEFIT

A Covered Individual may receive from the Plan an Outpatient Cancer Treatment Benefit as follows:

(a)    Covered Expenses—

The Plan will provide benefits for outpatient nuclear therapy, radiation therapy, chemotherapy, X-ray and laboratory procedures and Physician visits for the treatment of cancer.

(b)    Amount Paid—

The Plan will pay the level of benefits specified under Section 20.01(k) for all Reasonable and Customary covered charges incurred during the treatment period.

(c)    Non-Covered Expenses—

(1)    Charges for care, treatment, services or supplies which are not uniformly and professionally endorsed by the general medical community as Standard Medical Care, Treatment, Services or Supplies;

(2)    Services and supplies for which the Covered Individual is not legally required to pay; and

(3)    Services and supplies determined to be follow-up or screening services, occurring during a period when active treatment, such as chemotherapy or radiation therapy is not occurring.

## 12.13  AMBULANCE SERVICE BENEFIT

A Covered Individual may receive from the Plan an Ambulance Service Benefit as follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

(a) Covered Expenses—

  (1) The Plan will provide benefits for professional licensed ambulance service charges incurred solely for required medical treatment, including licensed Air Ambulance; and

  (2) The Fund will provide benefits for transportation by a Commercial Carrier when it is more economical than a private ambulance service.

(b) Amount Paid—

The Plan will pay the level of benefits specified under Section 20.01(l) for all Reasonable and Customary covered charges for each Covered Individual.

(c) Non-Covered Expenses—

  (1) Transportation in any privately owned vehicle;

  (2) Services and supplies for which the Covered Individual is not legally required to pay;

  (3) Transportation for reason other than receiving required medical treatment; and

  (4) Transportation to receive medical treatment which is available at point of origin.

## 12.14 CHIROPRACTIC EXPENSE BENEFIT

A Covered Individual may receive from the Plan a Chiropractic Expense Benefit as follows:

(a) Conditions and Covered Expenses—

  (1) The services must be necessitated by illness or injury;

  (2) The Covered Individual must be age 12 or older;

  (3) The services can be performed on either an inpatient or an outpatient basis; and

  (4) All services provided by a Chiropractor, or under his direction, including x-rays, laboratory, therapy, hospitalization and office visits, or any other covered services will be processed solely under this benefit.

(b) Amount Paid—

  (1) The Plan shall pay the level of benefits specified under Section 20.01(m) for covered charges up to the calendar year maximum specified under Section 20.01(m). In no event shall payment exceed the scheduled benefit; and

  (2) Each individual charge will be reviewed and only the portion of the charge deemed Reasonable and Customary will be considered for payment.

- 73 -

**Exhibit A**

(c)     Non-Covered Expenses—

(1)     Any portion of the Chiropractic expense which exceeds the scheduled benefit;

(2)     Any portion of the Chiropractic expense which exceeds the Reasonable and Customary allowance as established by the Fund;

(3)     Any services not necessitated by illness or injury; and

(4)     Any services performed on a Covered Individual under age twelve (12).

## 12.15  WOMEN'S HEALTH BENEFIT

A Covered Individual may receive from the Plan a Women's Health Benefit as follows:

(a)     Covered Expenses-

(1)     An annual office visit when done in conjunction with an annual Pap test for women 18 years of age or older;

(2)     An annual Pap test for women eighteen (18) years of age or older; and

(3)     An annual mammogram for women forty (40) years of age or older.

(b)     Amount Paid-

The Plan will pay the level of benefits specified under Section 20.01(O) for all Reasonable and Customary covered charges for each Covered Individual.

(c)     Non-Covered Expenses-

(1)     No payment shall be made for any routine laboratory procedures performed in conjunction with annual examination/pap test/mammogram;

(2)     An annual office visit in conjunction with an annual pap test for women under 18 years of age; and

(3)     An annual mammogram for women under forty (40) years of age.

## 12.16  MAYO CLINIC TREATMENT

The Plan will pay the level of benefits specified under Section 20.01(n).  Covered Individuals shall not be entitled to payment for travel, lodging and other non-medical costs associated with obtaining medical services at Mayo Clinic.

## 12.17  WELLNESS BENEFIT

A Covered Individual may receive from the Plan a Wellness Benefit as follows:

- 74 -

**Exhibit A**

(a) Covered Expenses –

    (1) Age 18 years and older – The Plan shall pay 100% of Reasonable and Customary covered charges for one routine physical examination per calendar year for a Covered Individual who is age 18 years or older (up to an aggregate $1,000 maximum Wellness Benefit per calendar year per Covered Individual age 18 years or older) by a Physician participating in a TeamCare preferred provider organization network, except that the required $20 per office visit co-payment (Section 12.18) is payable by the Covered Individual;

    (2) Age 18 years and older – The Plan shall pay (after Plan Deductible) 80% of Reasonable and Customary covered charges for routine X-ray, laboratory and other diagnostic screening tests, examinations and procedures provided to a Covered Individual who is age 18 years or older (up to an aggregate $1,000 maximum Wellness Benefit per calendar year per Covered Individual age 18 years or older) in a Hospital or other medical services facility (including a physician's office) to the extent such routine diagnostic services are performed by or under the direction of a Physician participating in a TeamCare preferred provider organization network (diagnostic services that are covered by this subsection include prostate-specific antigen [PSA] tests, bone density tests, colonoscopies, sigmoidoscopies, complete blood count [CBC] tests, basic metabolic profile or panel [BMP] tests and diabetes screening procedures); and

    (3) Age 6 years and younger – The Plan shall pay 100% of Reasonable and Customary covered charges for routine physical examinations and routine immunizations provided to a Covered Dependent less than 7 years of age by a Physician participating in a TeamCare preferred provider organization, except that any required $20 per office visit co-payment (Section 12.18) is payable on behalf of the Covered Dependent.

(b) Non-Covered Expenses – The Plan will not cover as a Wellness Benefit, or pay (as a Wellness Benefit), any charges for:

    (1) Any test, examination, procedure, service or product which is not provided by or under the direction of a physician participating in a TeamCare preferred provider organization network;

    (2) Any test, examination, procedure, service or product which is not uniformly and professionally endorsed by the general medical community as Standard Medical Care, Treatment, Services or Supplies;

    (3) Any amount in excess of the Reasonable and Customary charge for the procedure or service provided, as determined by the Fund;

    (4) Any charge which is covered by any Other Plan and/or which is paid by any employer, governmental unit or other entity;

    (5) Any test, examination, procedure, service or product for which the Covered Individual is not required to pay;

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

(6)    Educational, vocational, recreational, exercise, weight-loss and smoking-cessation programs, routine hearing tests, medications and vitamins that are not covered as Prescription Drugs under Section 12.07, and any test, examination, procedure, service or product that is provided exclusively for the personal and non-medical comfort of a Covered Individual;

(7)    Any test, examination, procedure, service or product that is within the scope (and subject to the exclusions and limitations) of the Women's Health Benefit (Sections 12.15 and 20.01), Dental Benefits (Article XV and Section 20.02) or Vision Benefits (Article XVI and Section 20.03); and

(8)    Any taxes, any surcharges and any charges for late payments, interest, document preparation or missed appointments.

## 12.18  WAIVER OF DEDUCTIBLE/CO-PAYMENT REQUIREMENT (OFFICE VISITS)

Deductibles shall not apply to the cost of covered Physician office visits by Covered Individuals if the Physician is participating in a TeamCare preferred provider organization network, except for a $20 per visit co-payment, which shall be required.

## 12.19  PAYMENT BASED ON PROPRIETY OF PROCEDURES

If multiple procedures and/or services are performed on the same day or in the same surgical setting or are inclusive with surgery or other services performed, benefits are allowed based on the propriety of the procedures according to accepted medical standards. Reimbursement is based on the Reasonable and Customary allowance for the appropriate procedure(s).

## 12.20  PAYMENT OF CERTAIN BASIC BENEFITS FOR TREATMENT CONTINUING AFTER TERMINATION OF COVERAGE UNDER THE PLAN

(a)    Conditions—

A Covered Individual whose Coverage under this Plan terminates for any reason other than Employer withdrawal, shall continue to be eligible for all Basic Benefits for a period of thirteen (13) weeks after the date the Individual's Coverage terminates, if:

(1)    The illness, injury or pregnancy being treated exists on the date the Individual's Coverage under the Plan terminates;

(2)    The Covered Individual incurs expenses compensable under the Plan on or prior to the date on which the Individual's Coverage under the Plan terminates; and

(3)    The Covered Individual is, on the date his Coverage under the Plan is terminated, so incapacitated by the illness, injury or pregnancy that he is severely restricted from engaging in normal activities.

(b)    Covered Expenses—

- 76 -

Exhibit A

Only those expenses directly related to the illness, injury or pregnancy being treated will be covered by the extension of Basic Benefits.

(c)     Non-Covered Expenses—

If, immediately upon termination of his Coverage under this Plan, a Covered Individual becomes eligible for benefits under the Retiree's Health and Welfare Plan sponsored by the Fund, he shall not be eligible for benefits under this Section.

## 12.21  TERMINATION OF THE BASIC BENEFIT EXTENSION

On the date the Covered Individual becomes eligible for insurance coverage under an Other Plan, all benefits provided under Section 12.20 shall cease.

**Exhibit A**

---

## ARTICLE XIII. MAJOR MEDICAL EXPENSE BENEFITS

### 13.01  OUTLINE OF MAJOR MEDICAL BENEFITS

A Covered Individual may receive Major Medical Expense Benefits from the Plan.  The Sections of Article XIII describe policies and procedures applicable to all plans offering Major Medical Expense Benefits.  However, levels of payment, if any, and/or program limitations specific to the Covered Individual's Plan are determined by referencing Section 20.01(p).  Certain benefits, defined in Section 1.24 of this Plan as Eligible Major Medical Expenses, may be modified by the provisions of Article XX.  Thus, in cases of conflict between provisions, Article XX shall control.

### 13.02  MAXIMUM MAJOR MEDICAL EXPENSE BENEFITS

The maximum Major Medical Expense Benefit payable for any Covered Individual shall be the calendar year maximum specified under Section 20.01(p).

### 13.03  EXTENSION OF THE MAJOR MEDICAL EXPENSE BENEFIT

The Major Medical Expense Benefit may be extended if, on the date his Coverage under the Plan terminates, a Covered Individual:

(a)     Is suffering from a Disability; the treatment of which is compensable under the Plan;

(b)     Is so incapacitated by that Disability that he is severely restricted from engaging in normal activities; and

(c)     Becomes eligible for Major Medical Expense Benefits relating to that Disability.

The Covered Individual may establish further eligibility for Major Medical Expense Benefits related to that Disability for twenty-four (24) months from the last day of Basic Benefit Coverage (including Loss of Time Coverage and the Basic Benefit extension, if applicable), after deduction of the annual Plan Deductible amount specified in Section 20.07 to covered charges per calendar year incurred by the Covered Individual.

A Participant making Self-Payments subsequent to the end of his Active Coverage period, and who is applying for the Total and Permanent Disability Installment Benefit or the Waiver of Premium Disability Benefit and is subsequently approved for the Total and Permanent Disability Installment Benefit or the Waiver of Premium Disability Benefit, shall not be considered ineligible for the twenty-four (24) month extension.

Only those compensable expenses directly related to the Disability necessitating the Major Medical extension will be covered.

Exhibit A

## 13.04 **TERMINATION OF THE MAJOR MEDICAL EXTENSION**

The eligibility of a Covered Individual for the extended Major Medical Benefits provided in Section 13.03 shall terminate if:

    (a)    The Covered Individual's condition improves so that he is no longer incapacitated by his disability; or

    (b)    The Covered Individual becomes eligible for coverage under an Other Plan.

    (c)    Termination of the Major Medical Extension shall not be considered a COBRA event for purposes of Self-Payments (as described in Article III) to extend coverage.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XIV.  LIFE INSURANCE BENEFITS

### 14.01  BENEFITS

The Fund may provide Covered Participants with a Life Insurance Benefit, Dependent Life Insurance Benefit, Total and Permanent Disability Installment Benefit, Waiver of Premium Disability Benefit and Accidental Death and Dismemberment Benefit.  The following sections describe policies and procedures applicable to all plans offering the referenced benefits.  However, the levels of payment, if any, and/or program limitations specific to the Covered Individual's Plan are determined by referencing Section 20.04.

### 14.02  LIFE INSURANCE BENEFIT

The amount of the Life Insurance Benefit is specified in Section 20.04.

The Life Insurance Benefit shall not be provided to a beneficiary if such beneficiary is convicted by a court of competent jurisdiction of any willful act which caused or resulted in the death of the Covered Participant.  Under such circumstances, the Life Insurance Benefit shall be provided to the next surviving class of beneficiaries as stated in the second paragraph of Section 14.09.  In the event of a charge of wrongdoing against the beneficiary in connection with the death of the Covered Participant, the Fund retains the right to investigate the circumstances of such death and to withhold payment of any benefit until termination of any investigation or prosecution involving the beneficiary.

### 14.03  DEPENDENT LIFE INSURANCE BENEFIT

The amount of the Life Insurance Benefit provided for the Spouse and Child of a Covered Participant is specified in Section 20.04.

Coverage of the Spouse and Child begins simultaneously with coverage of the Participant.

A Spouse's or a Child's coverage ends at the times outlined in Article III, Section 3.30.

The Life Insurance Benefit shall not be provided to a beneficiary if such beneficiary is convicted by a court of competent jurisdiction of any willful act which caused or resulted in the death of the Covered Dependent.  Under such circumstances, the Life Insurance Benefit shall be provided to the next surviving class of beneficiaries as stated in the second paragraph of Section 14.09.  In the event of a charge of wrongdoing against the beneficiary in connection with the death of the Covered Dependent, the Fund retains the right to investigate the circumstances of such death and to withhold payment of any benefit until termination of any investigation or prosecution involving the beneficiary.

### 14.04  TOTAL AND PERMANENT DISABILITY INSTALLMENT/WAIVER OF PREMIUM DISABILITY BENEFITS

The Fund provides a Total and Permanent Disability Benefit for Covered Participants who became totally and permanently disabled as defined in Section 1.72 of this document, prior to reaching age sixty (60).

- 80 -

**Exhibit A**

If a Covered Participant becomes totally and permanently disabled, as defined in Section 1.72 of this document, then:

    (a)    The Total and Permanent Disability Installment Benefit will be provided to the Covered Participant if he has not yet reached age fifty (50); or

    (b)    The Waiver of Premium Disability Benefit will be provided to the Covered Participant if he is between age fifty (50) and age fifty-nine (59), inclusive.

## 14.05  TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT

The Total and Permanent Disability Installment Benefit award specified in Section 20.04 shall consist of payment in lieu of any other benefits specified in Section 20.04.  Payment shall be made in 60 equal monthly installments together with an interest allowance at two and one-half percent (2½%) per annum.

The first (1st) monthly installment shall be due and payable on whichever of the following is the latest date:

    (a)    Six (6) months after commencement of such Total and Permanent Disability, or

    (b)    In the month that a Social Security Award is dated (not the effective date), if the date is on or before the fifteenth (15th) of the month, or

    (c)    In the month following the month that a Social Security Award is dated (not the effective date), if the Award date is after the fifteenth (15th) of the month.

Subsequent monthly installments shall be paid on the corresponding day of each month thereafter.  Any installments remaining unpaid at the death of the eligible recipient of this award shall be commuted into one (1) sum on the basis of two and one-half percent (2½%) per annum in accordance with Section 14.09.

It shall be the responsibility of the Covered Participant to furnish the Fund with an application for this benefit within three (3) years after the Participant's date of disability.

It shall further be the responsibility of the Covered Participant to furnish the Fund with proof sufficient to determine initial and continuing eligibility for this award.

A Social Security Award of Disability with a disability date on or prior to the Covered Participant's last date of Coverage will be considered as evidence and constitute proof sufficient of such Disability when application for this benefit is considered by the Fund.

## 14.06  WAIVER OF PREMIUM DISABILITY BENEFIT

The Waiver of Premium Disability Benefit provides an eligible Covered Participant with a Total and Permanent Disability Benefit in the form of Life Insurance, without payment of further contributions on his behalf or by him.  At the death of a Covered Participant who received a Waiver of Premium award, the proceeds of his Total and Permanent Disability Benefit shall be paid according to Section 14.09.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

It shall be the responsibility of the Covered Participant to furnish the Fund with an application for this, benefit within three (3) years after the Participant's date of disability.

It shall further be the responsibility of the Covered Participant to furnish the Fund with proof sufficient to determine initial and continuing eligibility for this award.

A Social Security Award of Disability with a disability date on or prior to the Covered Participant's last date of Coverage will be considered as evidence and constitute proof sufficient of such Disability when application for this benefit is considered by the Fund.

## 14.07  ELIGIBILITY AND ADMINISTRATION

The Fund shall have the right at any time to require proof of the continuance of a Total and Permanent Disability.  If the recipient fails to furnish satisfactory proof or if it appears at any time that the Total and Permanent Disability has terminated, no further payments shall be made and any Fund obligation with respect to the benefit on the life of such person shall cease, except that the remaining benefit on the life of such person, if eligible under this Plan, may be restored, subject to payment of contributions on behalf of the Covered Participant and to the limitation of the amount listed in Section 20.04.

If a Former Covered Participant receives all or part of the Total and Permanent Disability Installment Benefit, and subsequently becomes an Active Employee, that Employee shall again become eligible for the full Life Insurance Benefit after the completion of five (5) years as a Covered Participant.

For purposes of determining eligibility for the Total and Permanent Disability Installment Benefit or the Waiver of Premium Disability Benefit, the age of the Participant at the date of Disability shall control.

## 14.08  ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT

The Fund provides a Covered Participant with an Accidental Death and Dismemberment Benefit for loss, as provided below and not hereinafter excluded, sustained while covered under this Plan and occurring within one hundred-twenty (120) days after the date of the Accidental Bodily Injury resulting in the loss, provided that this benefit is not payable if the death or other loss resulting from an Accidental Bodily Injury occurs more than thirty-one (31) days after the Coverage of the Covered Participant has been terminated.  For any one (1) of the losses listed below, the Fund will pay, subject to the provisions hereinafter contained, the portion set opposite such loss, of the Life Insurance Benefit in force on the date of the accident.  Only one (1) of the amounts so specified, the largest, will be paid for all injuries resulting from any one (1) accident.

For Loss of:

| | |
|---|---|
| Life............................................................................................................. | The Principal Sum |
| Both Hands or Both Feet or Sight of Both Eyes ........................................... | The Principal Sum |
| One Hand and One Foot................................................................................ | The Principal Sum |
| One Hand and Sight of One Eye................................................................... | The Principal Sum |
| One Foot and Sight of One Eye.................................................................... | The Principal Sum |
| One Hand or One Foot .................................................................................. | ½ Principal Sum |
| Sight of One Eye........................................................................................... | ½ Principal Sum |

"Loss" shall mean, with regard to hands and feet, dismemberment by severance through or above wrist or ankle joints; with regard to eyes, "loss" means entire and irrecoverable loss of sight.

- 82 -

**Exhibit A**

(a)    Exclusions—

The benefit shall not cover any of the following losses:

    (1)    Loss resulting from the contracting of disease;

    (2)    Loss caused, or contributed to, by bodily or mental infirmity, disease or medical or surgical treatment thereof, or infection (except pus-forming infection which occurs through an accidental cut or wound), even though the proximate and precipitating cause of the loss is Accidental Bodily Injury;

    (3)    Loss caused or contributed to by war or any act of war, whether war is declared or not, or by any act of international armed conflict, or conflict involving the Uniformed Services of any international authority, or while in the Uniformed Services of any country;

    (4)    Loss caused or contributed to by any intentional or reckless act and/or omission by the Covered Participant, if he knew or should have known (based upon objective analysis of the actual circumstances) that his death or bodily injury to himself was likely to result from his act and/or omission, including but not limited to the following:

        (A)    his participation in a violation of any law or laws applicable to his conduct;

        (B)    his operation of a motor vehicle while intoxicated in excess of the maximum legal limits established by a law or laws applicable to his conduct;

        (C)    his ingestion, injection or other consumption into his body of any unlawful drug; or of any other unlawful substance; or of any Prescription Drug which was not prescribed for him by a Physician or, if prescribed for him by a Physician, was consumed by him in an amount or amounts exceeding the maximum prescribed dosage;

        (D)    his participation in an altercation in which he was an aggressor; and

        (E)    his participation (regardless of his mental state) in any suicidal act or omission or in any act or omission which he intended to cause or contribute to his death.

    In any determination whether or not death or a bodily injury was likely to result from a particular act and/or omission by a Covered Participant, within the meaning of this subsection, it is and shall be irrelevant whether or not he subjectively expected that his death or that bodily injury to himself would result from his act or omission.

(b)    Written proof of any loss under this Section must be furnished to the Fund within three (3) years after the date of such loss.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

(c)    The Fund, at its expense, shall have the right and opportunity to have the Covered Participant examined when, and so often as, it may reasonably require during the pendency of a claim under this Article, and also the right and opportunity to request an autopsy in the case of death, where it is not forbidden by law.

(d)    Any benefit for loss of life provided under the Accidental Death and Dismemberment Benefit is payable in accordance with Section 14.09.  Any benefit for loss other than life is payable to the Covered Participant.

## 14.09  BENEFICIARY AND MODE OF SETTLEMENT

It is the responsibility of each Covered Participant to supply the Fund with properly executed enrollment forms as required by the Fund, designating the beneficiary of any benefit described in this Article.  If a Covered Participant desires to change the designated beneficiary who had been previously designated on the enrollment card, then, it is his responsibility to provide the Fund with a properly executed Designation of Beneficiary card.

If a Covered Participant's marital status is terminated due to a final decree of divorce, ANY beneficiary designation made by the Covered Participant pursuant to this Article, prior to the final decree of divorce, will be null and void.  If, after a final decree of divorce, a Covered Participant fails to supply the Fund with a properly executed enrollment form as required by the Fund, designating the beneficiary of any benefit described in this Article, benefits will be payable pursuant to the preference provisions as described below.

If a Covered Participant fails to execute proper enrollment forms, then, at his death, benefits will be payable to the first surviving class, as follows:

1. Covered Participant's Spouse
2. Covered Participant's Children, in equal shares
3. Covered Participant's Parents, in equal shares
4. Covered Participant's Siblings, in equal shares
5. Covered Participant's Estate

If a Covered Participant's Spouse or Dependent Child pre-decease the Covered Participant, the Spouse's or Dependent Child's Life Insurance Benefit will be payable only to the Covered Participant.

In the event a Covered Spouse of a Covered Participant dies simultaneously with the Participant, the Spouse's Life Insurance Benefit will be payable to the first surviving class, as follows:

1. Spouse's Surviving Children, in equal shares
2. Spouse's Parents, in equal shares
3. Spouse's Siblings, in equal shares
4. Spouse's Estate

The Fund reserves the right to make reasonable regulations as to the number of beneficiaries and method of payment of the Life Insurance Benefit.  If the Fund receives an order from a divorce or family court which, in the judgment of the Trustees, purports to require that a benefit be payable otherwise than as provided in this section, the Trustees may withhold paying any benefit until all claimants to the benefit exhaust the administrative appeals process required by the Plan.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

14.10  **GRACE PERIOD**

The Fund shall provide a grace period to a Covered Individual of thirty-one (31) days following the termination of a Covered Participant's active coverage to receive the Life Insurance Benefit.    The Accidental Death Benefit shall not be payable during the grace period.

**Exhibit A**

## ARTICLE XV. DENTAL BENEFITS

### 15.01 PAYMENT FOR CERTAIN TREATMENT PERFORMED BY A DENTIST

A Covered Individual may receive from the Plan Dental Benefits to help defray the cost of covered dental procedures. The remaining Sections of Article XV describe policies and procedures applicable to all plans offering the referenced Dental Benefit. However, levels of payment, if any, and/or program limitations specific to the Covered Individual's Plan are determined by referencing Section 20.02.

### 15.02 COVERED DENTAL PROCEDURES AND MAXIMUM AMOUNT PAYABLE

Payments of Dental Benefits are subject to the following:

(a)     The Plan shall pay the level of benefits specified in Section 20.02 for covered procedures as described by the American Dental Association's current dental terminology (CDT) for a Covered Individual. All payments are subject to Reasonable and Customary charge limits as determined by the Fund;

(b)     The maximum amount payable for any Covered Individual in a calendar year (January 1st to December 31st) is specified in Section 20.02;

(c)     The maximum amount payable for orthodontic treatment for a Dependent Child up to the nineteenth (19th) birthday is specified in Section 20.02; and

(d)     If there are alternate treatment procedures available which render effective treatment, the Fund reserves the right to provide benefits for only the least costly of the procedures.

### 15.03 LIMITATIONS ON PAYMENT OF DENTAL BENEFITS

Dental Benefit payments shall not be made for charges incurred for:

(a)     Any amount over the Reasonable and Customary allowance established by the Fund;

(b)     Treatment by someone other than a Dentist or doctor, except for cleaning and scaling of teeth and application of fluoride treatment and/or sealants by a licensed dental hygienist when such services are rendered under the direct supervision and guidance of the Dentist;

(c)     Services and/or supplies for cosmetic purposes;

(d)     Orthodontic services and/or supplies for a Covered Participant, Spouse or Dependent Child past their nineteenth (19th) birthday, including orthodontia in conjunction with TMJ and/or other medical/dental conditions;

(e)     Services and/or supplies which do not satisfy Section 4.02 or which are not necessary according to those standards professionally endorsed by the general dental community;

- 86 -

**Exhibit A**

(f)     Services and supplies for which the Covered Individual is not legally required to pay;

(g)     Precision attachments, specialized techniques and personalization or characterization of dental prostheses;

(h)     Procedures, restorations and appliances to increase vertical dimension (the distance between the nose and chin);

(i)     Educational programs, such as plaque control, oral hygiene instruction or nutritional counseling;

(j)     Sealants for Participants, Spouses or a Dependent Child past their fourteenth (14th) birthday;

(k)     Sealants more than once in any eighteen (18) month period for Dependents under their fourteenth (14th) birthday;

(l)     Implantology (except for subperiosteal, mandibular staple bone, osseointegrated biotes or mucosal implants to anchor full dentures only);

(m)     Replacement of lost, missing or stolen dental/orthodontic appliances;

(n)     Failure to keep a scheduled visit with a Dentist or hygienist;

(o)     Completion of any dental claim forms;

(p)     Local anesthesia, analgesia or nitrous oxide;

(q)     Prescriptions written by the Dentist;

(r)     Dental treatment for a Dependent Child past their nineteenth (19th) birthday;

(s)     Temporary restorations or sedative fillings on the same day as restorative dentistry;

(t)     In connection with restorative dentistry, bases;

(u)     In connection with inlays, crowns, bridgework, dentures or prosthetic devices:

   (1)    Expenses for replacement made less than three (3) years after a preceding placement or replacement which was covered by this Plan;

   (2)    Expenses for extension of bridges or prosthetic devices previously paid for by this Plan, except for expenses incurred for new extended areas, except as provided in 15.03(pp); and

   (3)    Expenses for any prosthetic appliance unless the appliance is actually inserted.

(v)     Expenses for rebasing of dentures made less than three (3) years after the previous rebasing covered by the Plan;

- 87 -

**Exhibit A**

(w)    Expenses for adjustments, tissue conditioning, relining and/or rebasing, less than 6 months after insertion of denture(s);

(x)    Expenses for laboratory relining made less than three (3) years after the previous laboratory relining covered by the Plan;

(y)    Expenses for labial veneers/laminate unless due to accident, fracture or birth defect, or within three (3) years of previous labial veneers covered by the Plan;

(z)    Full mouth X-rays more than once in any two (2) year period;

(aa)   Bite-wing X-ray(s) more than once in any six (6) month period;

(bb)   Fluoride application more than once in any six (6) month period;

(cc)   An oral examination more than once in any six (6) month period;

(dd)   Prophylaxis more than once in any six (6) month period;

(ee)   Periodontal prophylaxis more than once in any six (6) month period;

(ff)   Fluoride application performed on a Participant or Spouse;

(gg)   Periodontal scaling and/or root planing more than once in any one (1) year period;

(hh)   Crowns without sufficient breakdown or sufficient decay;

(ii)   Crowns and/or bridgework without sufficient bone support;

(jj)   Crowns and/or bridgework supported by implants;

(kk)   Expenses for multiple periodontal procedures performed on the same day;

(ll)   Expenses for periodontal procedures performed on Dependent Children (will be individually reviewed for possible payment);

(mm)   Expenses for space maintainer for Participant or Spouse;

(nn)   Expenses for home medicaments;

(oo)   Any procedure not completed;

(pp)   Permanent crowns and/or bridgework on deciduous (baby) teeth;

(qq)   Root canal therapy, apicoectomy, root resection and hemisection more than once in a lifetime per tooth (root); and

(rr)   General anesthesia; unless administered in conjunction with oral surgery (impacted or surgical extractions), periodontal surgery, fracture, dislocations, apicoectomies, or three (3) or more simple extractions rendered on the same date of service.

- 88 -

Exhibit A

## 15.04 ORTHODONTIA BENEFIT—DEPENDENT CHILDREN ONLY

A Covered Dependent Child shall receive from the Plan an orthodontia benefit as follows:

(a) Covered Expenses—

The Plan will provide benefits, as specified in Section 20.02, for orthodontic services rendered by a Dentist or orthodontist, providing the Participant is covered, to correct the following dental problems:

    (1) The existence of extreme bucco-lingual version of the teeth, either unilateral or bilateral;

    (2) A protrusion of the maxillary teeth of four (4) or more millimeters;

    (3) An open bite of four (4) or more millimeters;

    (4) A protrusive or retrusive relation of the maxillary or mandibular arch of at least one (1) cusp; or

    (5) An arch-length discrepancy of four (4) or more millimeters.

(b) Amount Paid—

The Plan will pay the level of benefits specified in Section 20.02 for covered charges up to the maximum orthodontic benefit per person, per lifetime as specified in Section 20.02.

(c) Non-Covered Expenses—

    (1) Orthodontic appliances and/or related services rendered on Dependent Children past their nineteenth (19th) birthday;

    (2) Services and/or supplies for orthodontia on any Participant or Spouse;

    (3) Any covered charges in excess of the lifetime maximum benefit;

    (4) Any protrusion, retrusion or open-bite which does not meet the requirements outlined in (a) above; and

    (5) Expenses for incomplete procedures or appliances that are not inserted and/or related services.

## 15.05 EXTENSION OF DENTAL BENEFITS

If, on the date his Coverage under the Plan terminates, a Covered Individual has undergone any of the following dental procedures which require extended treatment, Dental Benefits will be extended to provide coverage for these procedures, providing the work is completed within one (1) year:

    (a) Dentures, full or partial, if the impression was taken while a Covered Individual;

- 89 -

**Exhibit A**

(b)    Fixed bridgework, gold restorations and crowns, if tooth or teeth were prepared while a Covered Individual; and

(c)    Root canal therapy, if the tooth or teeth were opened for treatment while a Covered Individual.

### 15.06  COVERAGE FOR SPECIFIC DENTAL PROCEDURES

The American Dental Association procedure codes D7340 through D7997 will be considered for payment under the Covered Individual's Basic and/or Major Medical Benefits (refer to Articles XII, XIII and Section 20.01).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XVI.  VISION BENEFITS

### 16.01  COVERED VISION EXPENSES

(a)     The Plan may provide payments to help defray the cost of eye examinations and materials for Covered Individuals.  The Sections of Article XVI describe policies and procedures applicable to all Plans offering Vision Benefits. However, levels of payment, if any, and/or program limitations specific to the Covered Individual's Plan are determined by referencing Section 20.03. Finally, from time to time in order to enhance benefits, the Fund enters into agreements with providers who agree to special arrangements for Fund Participants who patronize them, and these agreements are separately published. These agreements are, however, subject to change without prior notice.

(b)     Only procedures intended to improve the otherwise healthy eye by glasses shall be covered under Vision Benefits.  However, eye procedures requiring hospitalization, surgery, X-ray or laboratory work may be covered under Basic Benefits and/or Major Medical Expense Benefits.

(c)     Only vision procedures performed by an optician, optometrist or ophthalmologist shall be covered.

### 16.02  COVERED VISION PROCEDURES AND MAXIMUM AMOUNT PAYABLE

The Plan shall pay covered expenses incurred up to the amount listed for the covered procedure or item under Section 20.03.

### 16.03  LIMITATION ON PAYMENT FOR VISION BENEFITS

(a)     No Vision Benefit payment shall be made in any one twelve (12) month period for more than:

    (1)     One (1) complete examination;

    (2)     One (1) pair of lenses;

    (3)     One (1) set of frames, or repair of frames;

    (4)     One (1) pair of contact lenses; or

    (5)     Either one (1) pair of lenses and frames or one (1) pair of contact lenses.

(b)     No Vision Benefit payment shall be made for:

    (1)     Vision care services or supplies received from a medical department maintained by the Participant's Employer, a mutual benefit association, a labor union, trustee or similar group;

- 91 -

**Exhibit A**

,

(2)     Vision care services or supplies furnished by, or at the direction of, the United States government or any agency thereof;

(3)     Medical or surgical treatment of the eye;

(4)     Sunglasses, plain or prescription, or safety glasses;

(5)     Orthoptics, vision training or aniseikonia; and

(6)     Replacement due to loss or theft.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XVII. MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT

17.01 **MAJOR MEDICAL OUT-OF-POCKET EXPENSE IS THAT PORTION OF ELIGIBLE EXPENSES INCURRED THAT IS THE COVERED INDIVIDUAL'S RESPONSIBILITY AFTER THE FUND HAS PAID ITS REQUIRED BENEFITS. THE FUND PROVIDES COVERED INDIVIDUALS WITH MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMITS. AMOUNTS OF MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMITS (TO THE EXTENT THOSE LIMITS ARE APPLICABLE IN SPECIFIC CIRCUMSTANCES) ARE SPECIFIED IN SECTION 20.05.**

    (a)    Expenses that may be applied to the Major Medical Out-of-Pocket Expense Limit include:

        (1)    The balance of eligible Hospital expenses after the Fund has paid its required Hospital Expense Benefits;

        (2)    The balance of eligible surgical and obstetrical expenses after the Fund has paid its required Surgical and Obstetrical Expense Benefits;

        (3)    The balance of eligible outpatient diagnostic x-ray and laboratory expenses after the Fund has paid its required Outpatient Diagnostic X-ray and Laboratory Expense Benefits;

        (4)    The balance of eligible Accidental Bodily Injury expenses after the Fund has paid its required Outpatient Accidental Bodily Injury Expense Benefits;

        (5)    The balance of eligible organ transplant donor expenses after the Fund has paid its required Organ Transplant Donor Benefits;

        (6)    The balance of eligible outpatient cancer treatment expenses after the Fund has paid its required Outpatient Cancer Treatment Benefits;

        (7)    The balance of eligible ambulance service expenses after the Fund has paid its required Ambulance Service Benefits;

        (8)    The balance of eligible women's health expenses that are within the scope of Section 12.15 after the Fund has paid its required Women's Health Benefits;

        (9)    The balance of eligible Mayo Clinic expenses after the Fund has paid its required Mayo Clinic Treatment Benefits; and

        (10)    The balance of eligible Major Medical Expenses after the Fund has paid its required Major Medical Expense Benefits.

    (b)    Expenses that may not be applied to the Major Medical Out-of-Pocket Expense Limit include:

        (1)    All deductibles;

- 93 -

**Exhibit A**

(2)     Any charge or expense which exceeds the Reasonable and Customary allowance established by the Fund;

(3)     Any charge or expense which exceeds any applicable maximum dollar amount payable by the Fund as stated in the Plan;

(4)     The balance of any Prescription Drug expenses after the Fund has paid its required Prescription Drug Benefits;

(5)     The balance of any psychiatric, alcoholism and drug abuse treatment expenses after the Fund has paid its required Psychiatric, Alcoholism and Drug Abuse-Inpatient Treatment Benefits and/or Psychiatric, Alcoholism and Drug Abuse-Outpatient Treatment Benefits;

(6)     The balance of any hearing aid expenses after the Fund has paid its required Hearing Aid Benefits;

(7)     The balance of any chiropractic expenses after the Fund has paid its required Chiropractic Expense Benefits;

(8)     Any required TeamCare office visit co-payments;

(9)     The balance of any dental expenses after the Fund has paid its required Dental Benefits;

(10)    The balance of any vision expenses after the Fund has paid its required Vision Benefits; and

(11)    All other expenses which are not payable by the Fund because of Coverage exclusions and/or limitations, other than eligible expenses that are specified in Section 17.01(a).

(c)     After the annual Major Medical Out-of-Pocket Expense Limit applicable to a Covered Individual, as specified in Section 20.05, has been reached, the Fund is obligated to pay the full Reasonable and Customary allowance for all expenses described in Section 17.01(a) that are incurred by the Covered Individual during the remainder of that calendar year, provided that this obligation of the Fund does not apply to any expenses described in Section 17.01(b).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XVIII.  PLAN BENEFIT LIMIT

18.01  THE TERM PLAN BENEFIT LIMIT IS DEFINED AS THE MAXIMUM PAYABLE BY THE PLAN IN A GIVEN CALENDAR YEAR UNDER ANY OR ALL APPLICABLE PLAN BENEFITS.  THE PLAN MAY INCLUDE SUCH PLAN BENEFIT LIMIT AS DESCRIBED. THE AMOUNT OF THE PLAN BENEFIT LIMIT, IF ANY, IS DETERMINED BY REFERENCING SECTION 20.06.

18.02  IN ADDITION TO ALL OTHER LIMITATIONS, THERE IS A SEPARATE COVERAGE LIMIT OF $1,000,000 PER COVERED INDIVIDUAL PER CALENDAR YEAR: PAYMENTS BY THE FUND, UPON ALL COVERED CLAIMS INCURRED BY ANY COVERED INDIVIDUAL IN ANY CALENDAR YEAR (2002 OR LATER), SHALL NOT EXCEED $1,000,000.  THIS COVERAGE LIMIT IS TO BE CALCULATED AND APPLIED SEPARATELY, WITHOUT ANY REGARD FOR ANY OTHER LIMIT THAT MAY ALSO BE APPLICABLE.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

---

### ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (PLAN C6)

---

19.01 **THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN C6 DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, <u>PROVIDED THAT</u> THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), <u>AND PROVIDED FURTHER</u> THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).**

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C6)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan C6 follows:

| Benefit Type | Schedule of Benefits |
|---|---|
| (a)   Loss of Time Benefit (Participant Only) | $300/week (or $42.86 per day) for the first 10 weeks and $350/week (or $50 per day) for the remaining 16 weeks for maximum of 26 weeks. Includes Loss of Time Disability Coverage for Covered Participants and Covered Dependents as long as Covered Participant is eligible for Loss of Time Benefit. |
| (b)   Hospital Expense Benefit | After Plan Deductible, 100% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund. |
| (c)   Surgical and Obstetrical Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges. |
| (d)   Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)   Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges—1st day of treatment only if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirements. |

**Exhibit A**

**Benefit Type**

**Schedule of Benefits**

(f)    Prescription Drug Benefit

(i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program.

(ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

- 98 -

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|

(g)     Psychiatric, Alcoholism and Drug
Abuse-Inpatient Treatment Benefit

After Plan Deductible, 80% of covered charges for up to 21 days maximum per person, per calendar year. Life-time maximum of 42 days.

(h)     Psychiatric, Alcoholism and Drug
Abuse-Outpatient Treatment Benefit

After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year.

(i)     Organ Transplant Donor Benefit

After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24.

(j)     Hearing Aid Benefit

After Plan Deductible, 100% of Reasonable and Customary covered charges, up to a maximum of $1,000 per hearing aid, per ear, incurred by each Covered Individual once in every 36 month period.

(k)     Outpatient Cancer Treatment Benefit

After Plan Deductible, 100% of Reasonable and Customary covered charges during the active treatment period and subject to TeamCare co-pay requirements.

(l)     Ambulance Service Benefit

After Plan Deductible, 100% of Reasonable and Customary covered charges.

(m)     Chiropractic Expense Benefit

After Plan Deductible, 80% of Reasonable and Customary covered charges up to $1,000 per person, per calendar year for Covered Individuals age 12 and older.

(n)     Mayo Clinic Treatment

After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements.

(o)     Women's Health Benefit

After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements.

(p)     Major Medical Expense Benefit

After Plan Deductible, 80% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document up to a maximum of $250,000 per person, per calendar year.

- 99 -

**Exhibit A**

### 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures.  A schedule of Dental Benefits for Plan C6 follows:

| **Benefit Type** | | **Schedule of Benefits** |
|---|---|---|
| (a) | Orthodontic | 100% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,500 lifetime maximum. |
| (b) | Crowns and Bridgework | 80% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c) | All other ADA Codes (excluding those listed in Section 15.06) | 100% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

### 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals.  A schedule of Vision Benefits for Plan C6 follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
|     SINGLE VISION | $30.00 |
|     BI-FOCAL | $40.00 |
|     TRI-FOCAL | $50.00 |
|     LENTICULAR | $60.00 |
|     CONTACTS | $60.00 |

### 20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

The Plan provides:

    (a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

    (b)      Accidental Death and Dismemberment Benefit for Covered Participants; and

    (c)      Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan C6 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| PARTICIPANT LIFE | $40,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $40,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $40,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $16,000.00 |
| SPOUSE LIFE INSURANCE | $ 4,000.00 |
| DEPENDENT LIFE INSURANCE | $ 2,000.00 |

## 20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT

The Major Medical Out-of-Pocket Expense Limit, excluding the Plan Deductible, is $1,000 per Covered Individual per calendar year, limited to a maximum of $2,000 per calendar year for each group consisting of one Covered Participant and all related Covered Dependents. Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment, and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exclusions).

## 20.06  PLAN BENEFIT LIMIT

$1,000,000 per Covered Individual per calendar year.

## 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual per calendar year, limited to a maximum $400 per calendar year in covered charges incurred by a group consisting of one Covered Participant and all related Covered Dependents.

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any

**Exhibit A**

injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,000 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,000 limit. After this annual $1,000 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

**Exhibit A**

## ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan C5)

19.01 **THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN C5 DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, PROVIDED THAT THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), AND PROVIDED FURTHER THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).**

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C5)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer. A Schedule of the Basic and Major Medical Benefits for Plan C5 follows:

| **Benefit Type** | **Schedule of Benefits** |
| --- | --- |
| (a)  Loss of Time Benefit (Participant Only) | $175/week (or $25.00 per day) for maximum of 26 weeks.  Includes Loss of Time Disability Coverage for Covered Participants and Covered Dependents as long as Covered Participant is eligible for Loss of Time Benefit. |
| (b)  Hospital Expense Benefit | After Plan Deductible, 100% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms as determined by the Fund. |
| (c)  Surgical and Obstetrical Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges. |
| (d)  Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)  Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges—1st day of treatment only if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirements. |

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | | **Schedule of Benefits** |
|---|---|---|
| (f)  Prescription Drug Benefit | (i) | TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |
| | (ii) | Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200. |
| | (iii) | A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan). |
| | (iv) | If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual). |

- 105 -

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)   Psychiatric, Alcoholism and Drug Abuse-Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 21 days maximum per person, per calendar year. Life-time maximum of 42 days. |
| (h)   Psychiatric, Alcoholism and Drug Abuse-Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 session/visits per person, per calendar year. |
| (i)   Organ Transplant Donor Benefit | After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)   Hearing Aid Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges, up to a maximum of $1,000 per hearing aid, per ear, incurred by each Covered Individual once in every 36 month period. |
| (k)   Outpatient Cancer Treatment Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges during the active treatment period and subject to TeamCare co-pay requirements. |
| (l)   Ambulance Service Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges. |
| (m)   Chiropractic Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary covered charges up to $1,000 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)   Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o)   Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p)   Major Medical Expense Benefit | After Plan Deductible, 80% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document up to a maximum of $250,000 per person, per calendar year. |

-106-

**Exhibit A**

### 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures.  A schedule of Dental Benefits for Plan C5 follows:

| **Benefit Type** | **Schedule of Benefits** |
| --- | --- |
| (a)  Orthodontic | 100% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,500 lifetime maximum. |
| (b)  Crowns and Bridgework | 80% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c)  All other ADA Codes (excluding those listed in Section 15.06) | 100% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

### 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals.  A schedule of Vision Benefits for Plan C5 follows:

| **Procedure/Item** | **Schedule of Benefits** |
| --- | --- |
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
|    SINGLE VISION | $30.00 |
|    BI-FOCAL | $40.00 |
|    TRI-FOCAL | $50.00 |
|    LENTICULAR | $60.00 |
|    CONTACTS | $60.00 |

### 20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

The Plan provides:

(a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

**Exhibit A**

(b)     Accidental Death and Dismemberment Benefit for Covered Participants; and

(c)     Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan C5 follows:

| **Benefit Type** | **Schedule of Benefits** |
| --- | --- |
| PARTICIPANT LIFE | $30,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $30,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $30,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $16,000.00 |
| SPOUSE LIFE INSURANCE | $ 3,000.00 |
| DEPENDENT LIFE INSURANCE | $ 1,500.00 |

## 20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT

The Major Medical Out-of-Pocket Expense Limit, excluding the Plan Deductible, is $1,000 per Covered Individual per calendar year, limited to a maximum of $2,000 per calendar year for each group consisting of one Covered Participant and all related Covered Dependents. Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment, and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exclusions).

## 20.06  PLAN BENEFIT LIMIT

$1,000,000 per Covered Individual per calendar year.

## 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual per calendar year, limited to a maximum $400 per calendar year in covered charges incurred by a group consisting of one Covered Participant and all related Covered Dependents.

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides

-108-

**Exhibit A**

- a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,000 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,000 limit. After this annual $1,000 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

**Exhibit A**

## ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan C4)

19.01 THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN C4 DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, <u>PROVIDED THAT</u> THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), <u>AND PROVIDED FURTHER</u> THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 / 09/30/2007

Exhibit A

---

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN C4)

---

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy. Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer. A Schedule of the Basic and Major Medical Benefits for Plan C4 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)   Loss of Time Benefit (Participant Only) | $150/week (or $21.42 per day) for maximum of 26 weeks.   No Loss of Time Disability Coverage. Therefore, no continuation of family coverage while collecting Loss of Time Benefits, unless Employer Contributions continue or Self-Payments are made. |
| (b)   Hospital Expense Benefit | After Plan Deductible, 100% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required). If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund. |
| (c)   Surgical and Obstetrical Expense Benefit | After Plan Deductible, 90% of Reasonable and Customary covered charges. |
| (d)   Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)   Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 100% of covered charges—1st day of treatment only, if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirement. |

-111-

**Exhibit A**

| **Benefit Type** | | **Schedule of Benefits** |
|---|---|---|

(f)   Prescription Drug Benefit

(i)   TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program.

(ii)   Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications*, the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)   A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)   If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

-112-

Exhibit A

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)  Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 17 days per person, per calendar year. Life-time maximum of 34 days. |
| (h)  Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year. |
| (i)  Organ Transplant Donor Benefit | After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)  Hearing Aid Benefit | Not applicable to Plan C4. |
| (k)  Outpatient Cancer Treatment Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (l)  Ambulance Service Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (m)  Chiropractic Expense | After Plan Deductible, 70% of Reasonable and Customary covered charges up to maximum of $800 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)  Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits.  Office visit is subject to TeamCare co-pay requirements. |
| (o)  Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits.  Office visit is subject to TeamCare co-pay requirements. |
| (p)  Major Medical Expense Benefit | After Plan Deductible, 80% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document up to a maximum of $250,000 per person, per calendar year. |

## 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures.  A schedule of Dental Benefits for Plan C4 follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)  Orthodontic | 50% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,000 lifetime maximum. |
| (b)  Crowns and Bridgework | 70% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c)  Preventative Services | 100% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described by ADA codes, subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (d)  All other ADA Codes (excluding those listed in Section 15.06) | 85% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals. A schedule of Vision Benefits for Plan C4 follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
| SINGLE VISION | $30.00 |
| BI-FOCAL | $40.00 |
| TRI-FOCAL | $50.00 |
| LENTICULAR | $60.00 |
| CONTACTS | $60.00 |

-114-

**Exhibit A**

20.04  **LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT**

The Plan provides:

    (a)  Life Insurance Benefits for Covered Participants and Covered Dependents;

    (b)  Accidental Death and Dismemberment Benefit for Covered Participants; and

    (c)  Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan C4 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| PARTICIPANT LIFE | $25,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $25,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $25,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $16,000.00 |
| SPOUSE LIFE INSURANCE | $ 3,000.00 |
| DEPENDENT LIFE INSURANCE | $ 1,500.00 |

### 20.05  **MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT**

The Major Medical Out-of-Pocket Expense Limit, excluding the Plan Deductible, is $1,000 per Covered Individual per calendar year, limited to a maximum of $2,000 per calendar year for each group consisting of one Covered Participant and all related Covered Dependents. Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment, and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exclusions).

### 20.06  **PLAN BENEFIT LIMIT**

$1,000,000 per Covered Individual per calendar year.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual per calendar year, limited to a maximum $400 per calendar year in covered charges incurred by a group consisting of one Covered Participant and all related Covered Dependents.

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,000 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,000 limit. After this annual $1,000 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

**Exhibit A**

**ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (PLAN MODIFIED C4)**

19.01 **THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN MODIFIED C4 DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, PROVIDED THAT THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), AND PROVIDED FURTHER THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).**

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

---

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN MODIFIED C4)

---

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan Modified C4 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)  Loss of Time Benefit (Participant Only) | $150/week (or $21.42 per day) for maximum of 26 weeks.  No Loss of Time Disability Coverage.  Therefore, no continuation of family coverage while collecting Loss of Time Benefits, unless Employer Contributions continue or Self-Payments are made. |
| (b)  Hospital Expense Benefit | After Plan Deductible, 90% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund.  100% after Out-of-Pocket Expense Limit is met. |
| (c)  Surgical and Obstetrical Expense Benefit | After Plan Deductible, 90% of Reasonable and Customary covered charges.  100% after Out-of-Pocket Expense Limit is met. |
| (d)  Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)  Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 90% of covered charges—1st day of treatment only, if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirement.  100% after Out-of-Pocket Expense Limit is met. |

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | | **Schedule of Benefits** |
|---|---|---|
| (f) | Prescription Drug Benefit | (i) TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |

(ii) Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii) A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv) If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

-119-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)    Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 17 days per person, per calendar year. Life-time maximum of 34 days. |
| (h)    Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year. |
| (i)    Organ Transplant Donor Benefit | After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)    Hearing Aid Benefit | Not applicable to Plan Modified C4. |
| (k)    Outpatient Cancer Treatment Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (l)    Ambulance Service Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (m)    Chiropractic Expense | After Plan Deductible, 70% of Reasonable and Customary covered charges up to maximum of $800 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)    Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits.  Office visit is subject to TeamCare co-pay requirements. |
| (o)    Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits.  Office visit is subject to TeamCare co-pay requirements. |
| (p)    Major Medical Expense Benefit | After Plan Deductible, 90% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document. |

## 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures. A schedule of Dental Benefits for Plan Modified C4 follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)    Orthodontic | 50% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,000 lifetime maximum. |
| (b)    Crowns, Bridgework and Dentures | 70% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c)    Preventative Services | 100% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described by . ADA codes,   subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (d)    All other ADA Codes (excluding those listed in Section 15.06) | 85% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03  **VISION BENEFITS**

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals.  A schedule of Vision Benefits for Plan Modified C4 follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
| SINGLE VISION | $30.00 |
| BI-FOCAL | $40.00 |
| TRI-FOCAL | $50.00 |
| LENTICULAR | $60.00 |
| CONTACTS | $60.00 |

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

20.04  **LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT**

The Plan provides:

(a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

(b)    Accidental Death and Dismemberment Benefit for Covered Participants; and

(c)    Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV.  A schedule of these benefits for Plan Modified C4 follows:

| Benefit Type | Schedule of Benefits |
|---|---|
| PARTICIPANT LIFE | $25,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $25,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $25,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $16,000.00 |
| SPOUSE LIFE INSURANCE | $ 3,000.00 |
| DEPENDENT LIFE INSURANCE | $ 1,500.00 |

20.05  **MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT**

Major Medical Out-of-Pocket Expense Limit excluding Plan Deductible is $1,000 per Covered Individual per Calendar Year or $2,000 per family per calendar year.  Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment, and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exceptions).

20.06  **PLAN BENEFIT LIMIT**

$500,000 per Covered Individual per calendar year.

20.07  **PLAN DEDUCTIBLE**

$250 per Covered Individual or $500 per family each calendar year.

-122-

**Exhibit A**

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,000 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,000 limit. After this annual $1,000 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

**Exhibit A**

## ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan A)

19.01 THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN A DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, PROVIDED THAT THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), AND PROVIDED FURTHER THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN A)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy. Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer. A Schedule of the Basic and Major Medical Benefits for Plan A follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)   Loss of Time Benefit (Participant Only) | $100/week (or $14.29 per day) for maximum of 20 weeks.  No Loss of Time Disability Coverage. Therefore, no continuation of family coverage while collecting Loss of Time Benefit unless Employer Contributions continue or Self-Payments are made. |
| (b)   Hospital Expense Benefit | After Plan Deductible, 100% of covered charges for 1st 14 days; 80% thereafter.  No maximum day limit.  Average semi-private room rate applies (coronary care unit, intensive care unit, burn unit or isolation room if medically required).   If the Hospital does not have an average semi-private room rate, the amount payable will be based on the average rate charged by Hospitals in the area for semi-private rooms as determined by the Fund. |
| (c)   Surgical and Obstetrical Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary covered charges. |
| (d)   Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)   Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges for 1st day of treatment only if treatment is performed within 5 days of accident, up to $500 maximum; balance under Major Medical.  Subject to TeamCare co-pay requirements. |

-125-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (f)    Prescription Drug Benefit | (i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |
| | (ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications*, the Plan.pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200. |
| | (iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan). |
| | (iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual). |

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)   Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 15 days maximum per person, per calendar year. Life-time maximum of 30 days. |
| (h)   Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits, per person, per calendar year. |
| (i)   Organ Transplant Donor Benefit | After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)   Hearing Aid Benefit | Not applicable to Plan A. |
| (k)   Outpatient Cancer Treatment Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (l)   Ambulance Service Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (m)   Chiropractic Expense Benefit | After Plan Deductible, 60% of Reasonable and Customary covered charges up to maximum of $600 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)   Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o)   Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p)   Major Medical Expense Benefit | After Plan Deductible, 80% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document up to a maximum of $100,000 per person, per calendar year. |

## 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures. A schedule of Dental Benefits for Plan A follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)    Preventive Services | 75% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described by ADA codes, subject to a maximum benefit per person per calendar year of $750 consisting of any combination of payments for covered services as defined in Article XV. |
| (b)    All other ADA Codes (excluding those listed in Section 15.06) | 50% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $750 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals. A schedule of Vision Benefits for Plan A follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $15.00 |
| FRAMES | $10.00 |
| LENSES (PER PAIR) | |
| SINGLE VISION | $10.00 |
| BI-FOCAL | $14.00 |
| TRI-FOCAL | $16.50 |
| LENTICULAR | $30.00 |
| CONTACTS | $20.00 |

## 20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

The Plan provides:

(a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

(b)    Accidental Death and Dismemberment Benefit for Covered Participants; and

(c)    Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan A follows:

-128-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| PARTICIPANT LIFE | $20,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $20,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $20,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $12,000.00 |
| SPOUSE LIFE INSURANCE | $ 2,500.00 |
| DEPENDENT LIFE INSURANCE | $ 1,000.00 |

### 20.05  OUT-OF-POCKET EXPENSE LIMIT

This is not applicable to Plan A.

### 20.06  PLAN BENEFIT LIMIT

$1,000,000 per Covered Individual per calendar year.

### 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual per calendar year, limited to a maximum $400 per calendar year in covered charges incurred by a group consisting of one Covered Participant and all related Covered Dependents.

-129-

**Exhibit A**

---

**ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan B)**

---

19.01  THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN B DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, <u>PROVIDED THAT</u> THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), <u>AND PROVIDED FURTHER</u> THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN B)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan B follows:

| Benefit Type | Schedule of Benefits |
|---|---|
| (a)  Loss of Time Benefit (Participant Only) | $100/week (or $14.29 per day) for maximum of 20 weeks.  No Loss of Time Disability Coverage.  Therefore, no continuation of family coverage while collecting Loss of Time Benefit unless Employer Contributions continue, or Self-Payments are made. |
| (b)  Hospital Expense Benefit | After Plan Deductible, 80% of covered charges for an unlimited number of days (room and board charges based on average semi-private room rate; coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be based on the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund. |
| (c)  Surgical and Obstetrical Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary covered charges. |
| (d)  Outpatient Diagnostic X-ray and Laboratory Expense Benefit | See Section 20.01(p). |
| (e)  Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 100% of Reasonable and Customary covered charges for 1st day of treatment only if treatment is performed within 5 days of accident up to $500 maximum; balance under Major Medical.  Subject to TeamCare co-pay requirement. |

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (f)    Prescription Drug Benefit | (i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |

(ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

-132-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g) Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 13 days maximum per person, per calendar year. Lifetime maximum of 26 days. |
| (h) Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year. |
| (i) Organ Transplant Donor Benefit | After Plan Deductible, the Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j) Hearing Aid Benefit | Not applicable to Plan B. |
| (k) Outpatient Cancer Treatment Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (l) Ambulance Service Benefit | After Plan Deductible, applicable Basic and/or Major Medical Expense Benefits. |
| (m) Chiropractic Expense Benefit | After Plan Deductible, 60% of Reasonable and Customary covered charges up to maximum of $500 per person, per calendar year for Covered Individuals age 12 and older. |
| (n) Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o) Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p) Major Medical Expense Benefit | After Plan Deductible, 80% of the Eligible Major Medical Expenses as defined in Section 1.24 of this document up to a maximum of $50,000 per person, per calendar year. |

## 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures. A schedule of Dental Benefits for Plan B follows:

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)   Preventive Services | 75% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described by ADA codes, subject to a maximum benefit per person per calendar year of $500 consisting of any combination of payments for covered services as defined in Article XV. |
| (b)   All other ADA Codes (excluding those listed in Section 15.06) | 50% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $500 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03 VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals. A schedule of Vision Benefits for Plan B follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $15.00 |
| FRAMES | $10.00 |
| LENSES (PER PAIR) | |
|     SINGLE VISION | $10.00 |
|     BI-FOCAL | $14.00 |
|     TRI-FOCAL | $16.50 |
|     LENTICULAR | $30.00 |
|     CONTACTS | $20.00 |

## 20.04 LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

The Plan provides:

(a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

(b)    Accidental Death and Dismemberment Benefit for Covered Participants; and

(c)    Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan B follows:

-134-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| PARTICIPANT LIFE | $20,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $20,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $20,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $11,000.00 |
| SPOUSE LIFE INSURANCE | $ 2,000.00 |
| DEPENDENT LIFE INSURANCE | $ 750.00 |

### 20.05  OUT-OF-POCKET EXPENSE LIMIT

This is not applicable to Plan B.

### 20.06  PLAN BENEFIT LIMIT

$1,000,000 per Covered Individual per calendar year.

### 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual per calendar year, limited to a maximum $400 per calendar year in covered charges incurred by a group consisting of one Covered Participant and all related Covered Dependents.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan S)

19.01 THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN S DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, PROVIDED THAT THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), AND PROVIDED FURTHER THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN S)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan S follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)  Loss of Time Benefit (Participant Only) | Not applicable to Plan S. |
| (b)  Hospital Expense Benefit | 80% of covered charges (room and board charges based on average semi-private room rate; coronary care unit, intensive care unit, burn unit or isolation room if medically required) for the length of the Confinement.  The 20% balance remaining is not eligible for payment by the Major Medical Expense Benefit of Plan S, but it will be applied to the Out-of-Pocket Expense Limit.  If the $1,000 Out-of-Pocket Expense Limit is satisfied, the Plan will pay 100% of remaining covered charges, up to the Plan Benefit Limit, in combination with other Basic and/or Major Medical Expense Benefits, of $100,000 per person, per calendar year.  Note:  If the Hospital does not have an average semi-private room rate, the amount payable will be based on the average rate charged by Hospitals in the area for semi-private rooms as determined by the Fund. |
| (c)  Surgical and Obstetrical Expense Benefit | Major Medical only. |
| (d)  Outpatient Diagnostic X-ray and Laboratory Expense Benefit | Major Medical only. |
| (e)  Outpatient Accidental Bodily Injury Expense Benefit | Major Medical only. |

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (f)    Prescription Drug Benefit | (i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |

(ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

Exhibit A

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)   Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | Not applicable to Plan S. |
| (h)   Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | Not applicable to Plan S. |
| (i)   Organ Transplant Donor Benefit | The Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)   Hearing Aid Benefit | Not applicable to Plan S. |
| (k)   Outpatient Cancer Treatment Benefit | Major Medical only. |
| (l)   Ambulance Service Benefit | Major Medical only. |
| (m)   Chiropractic Expense Benefit | 50% of Reasonable and Customary covered charges up to maximum of $400 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)   Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o)   Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p)   Major Medical Expense Benefit | 80% of non-deductible Eligible Major Medical Expenses as defined in Section 1.24 of this document. The 20% balance remaining will be applied to the Out-of-Pocket Expense Limit. If the $1,000 Out-of-Pocket Expense Limit is satisfied, the Plan will pay 100% of non-deductible Eligible Expenses up to the Plan Benefit Limit, in combination with Basic Benefits, of $100,000 per person, per calendar year. |

## 20.02  DENTAL BENEFITS

Not applicable to Plan S.

-139-

**Exhibit A**

20.03  **VISION BENEFITS**

Not applicable to Plan S.

20.04  **LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT**

Not applicable to Plan S.

20.05  **OUT-OF-POCKET EXPENSE LIMIT**

Maximum of $1,000 in Eligible Expenses per person, per calendar year, after the Plan pays its required Basic and/or Major Medical Expense Benefits, up to the Plan Benefit Limit.

20.06  **PLAN BENEFIT LIMIT**

Maximum of $100,000 payable per person, per calendar year under any combination of Basic and/or Major Medical Expense Benefits.

20.07  **PLAN DEDUCTIBLE**

$500 per Covered Individual or $1,500 per family per calendar year ($500 maximum per Covered Individual toward this "family deductible").

20.08  **TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT**

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,000 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,000 limit. After this annual $1,000 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

---

### ARTICLE XIX.  EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan MM100)

---

19.01  THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN **MM100** DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, <u>PROVIDED THAT</u> THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), <u>AND PROVIDED FURTHER</u> THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN MM100)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan MM100 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)   Loss of Time Benefit (Participant Only) | $100/week (or $14.28 per day) for maximum of 26 weeks.   No Loss of Time Disability Coverage.  Therefore, no continuation of family coverage while collecting Loss of Time Benefits, unless Employer Contributions continue or Self-Payments are made. |
| (b)   Hospital Expense Benefit | After Plan Deductible, 80% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund.  100% after Out-of-Pocket Expense Limit is met. |
| (c)   Surgical and Obstetrical Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary covered charges.   100% after Out-of-Pocket Expense Limit is met. |
| (d)   Outpatient Diagnostic X-ray and Laboratory Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary and covered charges.   100% after Out-of-Pocket Expense Limit is met. |
| (e)   Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 80% of covered charges—1st day of treatment only, if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirement.  100% after Out-of-Pocket Expense Limit is met. |

**Exhibit A**

**Benefit Type**

**Schedule of Benefits**

(f)    Prescription Drug Benefit

(i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program.

(ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

-143-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)   Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 13 days per person, per calendar year. Life-time maximum of 26 days. |
| (h)   Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year. |
| (i)   Organ Transplant Donor Benefit | The Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)   Hearing Aid Benefit | Not applicable to Plan MM100. |
| (k)   Outpatient Cancer Treatment Benefit | Applicable Basic and/or Major Medical Expense Benefits. |
| (l)   Ambulance Service Benefit | Applicable Basic and/or Major Medical Expense Benefits. |
| (m)   Chiropractic Expense | 50% of Reasonable and Customary covered charges up to maximum of $500 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)   Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o)   Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p)   Major Medical Expense Benefit | 80% of the non-deductible Eligible Major Medical Expenses as defined in Section 1.24 of this document. |

## 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures.   A schedule of Dental Benefits for Plan MM100 follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
| --- | --- |
| (a)  Orthodontic | 50% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,000 lifetime maximum. |
| (b)  Crowns, Bridgework and Dentures | 70% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c)  Preventive Services | 100% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described by ADA codes, subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (d)  All other ADA Codes (excluding those listed in Section 15.06) | 85% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals.  A schedule of Vision Benefits for Plan MM100 follows:

| **Procedure/Item** | **Schedule of Benefits** |
| --- | --- |
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
|     SINGLE VISION | $30.00 |
|     BI-FOCAL | $40.00 |
|     TRI-FOCAL | $50.00 |
|     LENTICULAR | $60.00 |
|     CONTACTS | $60.00 |

## 20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

-145-

**Exhibit A**

The Plan provides:

    (a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

    (b)    Accidental Death and Dismemberment Benefit for Covered Participants; and

    (c)    Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan MM100 follows:

| Benefit Type | Schedule of Benefits |
|---|---|
| PARTICIPANT LIFE | $20,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $20,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $20,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $11,000.00 |
| SPOUSE LIFE INSURANCE | $ 2,000.00 |
| DEPENDENT LIFE INSURANCE | $ 750.00 |

### 20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT

Major Medical Out-of-Pocket Expense Limit excluding Plan Deductible is $1,500 per Covered Individual or $3,000 per family per calendar year. Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exceptions).

### 20.06  PLAN BENEFIT LIMIT

$250,000 per Covered Individual per calendar year.

### 20.07  PLAN DEDUCTIBLE

$100 per Covered Individual or $300 per family per calendar year.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding <u>Schedule of Benefits</u>, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $1,500 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program.  Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $1,500 limit.  After this annual $1,500 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

## ARTICLE XIX. EFFECTIVE DATE OF PLAN SPECIFIC PROVISIONS (Plan MM200)

19.01   THE TERMS AND PROVISIONS OF THIS PUBLISHED EDITION OF THIS PLAN MM200 DOCUMENT ARE APPLICABLE TO THE COVERAGE OF EVERY COVERED INDIVIDUAL WHO HAS BEEN, IS OR HEREAFTER BECOMES ENTITLED TO COVERAGE BY THE PLAN AS OF ANY DATE ON OR AFTER JANUARY 1, 2004, PROVIDED THAT THE TERMS, PROVISIONS, LIMITATIONS AND EXCLUSIONS OF COVERAGE AS OF ANY DATE PRIOR TO JANUARY 1, 2004, ARE GOVERNED BY THE EARLIER EDITION OF THIS PLAN DOCUMENT THAT WAS IN EFFECT ON THAT DATE (INCLUDING ALL PLAN AMENDMENTS OF THAT EDITION ADOPTED AND IN EFFECT ON THAT DATE), AND PROVIDED FURTHER THAT THE TERMS AND PROVISIONS OF THIS EDITION ALSO INCLUDE ALL PLAN AMENDMENTS ADOPTED AND IN EFFECT AFTER PUBLICATION OF THIS EDITION (EVEN IF THEY ARE YET TO BE INCORPORATED IN THIS EDITION).

**Exhibit A**

## ARTICLE XX.  SCHEDULE OF BENEFITS (PLAN MM200)

### 20.01  BASIC BENEFITS AND MAJOR MEDICAL EXPENSE BENEFITS

Subject to TeamCare limitations in Section 4.20, the Plan provides accident and health benefits, in the form of Basic Benefits, as set forth in detail in Article XII, and Major Medical Expense Benefits, as set forth in detail in Article XIII, so as to provide comprehensive benefits for Covered Individuals for illness, injury or pregnancy.  Actual benefits provided under this plan may be different than shown based upon the specific plan of benefits selected by the Employer.  A Schedule of the Basic and Major Medical Benefits for Plan MM200 follows:

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)  Loss of Time Benefit (Participant Only) | $100/week (or $14.28 per day) for maximum of 26 weeks.  No Loss of Time Disability Coverage.  Therefore, no continuation of family coverage while collecting Loss of Time Benefits, unless Employer Contributions continue or Self-Payments are made. |
| (b)  Hospital Expense Benefit | After Plan Deductible, 80% of covered charges for an unlimited number of days at average semi-private room rate (coronary care unit, intensive care unit, burn unit or isolation room if medically required).  If the Hospital does not have an average semi-private room rate, the amount payable will be the average rate charged by Hospitals in the area for semi-private rooms, as determined by the Fund. 100% after Out-of-Pocket Expense Limit is met. |
| (c)  Surgical and Obstetrical Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary covered charges.  100% after Out-of-Pocket Expense Limit is met. |
| (d)  Outpatient Diagnostic X-ray and Laboratory Expense Benefit | After Plan Deductible, 80% of Reasonable and Customary and covered charges.  100% after Out-of-Pocket Expense Limit is met. |
| (e)  Outpatient Accidental Bodily Injury Expense Benefit | After Plan Deductible, 80% of covered charges—1st day of treatment only, if treatment is performed within 5 days of accident and subject to TeamCare co-pay requirement. 100% after Out-of-Pocket Expense Limit is met. |

-149-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (f)    Prescription Drug Benefit | (i)    TeamCare RX mail order program: the Plan pays 80% of covered charges (20% co-payment), provided that the maximum co-payment is $200 for each filled prescription purchased through the TeamCare RX program. |

(ii)    Retail pharmacy (TeamCare and non-TeamCare pharmacies): except for non-exempt *maintenance medications* (described below in [iii]) the Plan pays 75% of covered charges (25% co-payment) and, for non-exempt *maintenance medications,* the Plan pays 50% of covered charges (50% co-payment) after a two-fill transition period in which the Plan pays 75% of covered charges (25% co-payment), provided that for each filled prescription purchased from a TeamCare RX retail pharmacy (other than a non-exempt *maintenance medication* purchased after the above-referenced two-fill transition period) the maximum co-payment is $200.

(iii)    A *maintenance medication* is any prescription drug taken by a Covered Individual over a period exceeding 60 days, other than a drug exempt by the Plan from this classification (exempt drugs include injectable drugs, specialty medications and *antidepressants* as determined by the Plan).

(iv)    If a generic drug equivalent is available to fill a prescription, the Covered Individual must choose the generic drug or pay (in addition to the co-payment) the difference in cost between the generic drug and the brand name drug (if the brand name drug is chosen rather than the available generic drug, the above-stated $200 maximum [for each filled prescription purchased through the TeamCare RX program] is inapplicable and does not limit the amount payable by the Covered Individual).

-150-

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (g)    Psychiatric, Alcoholism and Drug Abuse–Inpatient Treatment Benefit | After Plan Deductible, 80% of covered charges for up to 13 days per person, per calendar year. Life-time maximum of 26 days. |
| (h)    Psychiatric, Alcoholism and Drug Abuse–Outpatient Treatment Benefit | After Plan Deductible, 80% of covered charges up to 30 sessions/visits per person, per calendar year. |
| (i)    Organ Transplant Donor Benefit | The Basic and Major Medical Expense Benefits as outlined in Section 12.10 and 1.24. |
| (j)    Hearing Aid Benefit | Not applicable to Plan MM200. |
| (k)    Outpatient Cancer Treatment Benefit | Applicable Basic and/or Major Medical Expense Benefits. |
| (l)    Ambulance Service Benefit | Applicable Basic and/or Major Medical Expense Benefits. |
| (m)    Chiropractic Expense | 50% of Reasonable and Customary covered charges up to maximum of $500 per person, per calendar year for Covered Individuals age 12 and older. |
| (n)    Mayo Clinic Treatment | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (o)    Women's Health Benefit | After Plan Deductible, applicable Basic Benefits and/or Major Medical Expense Benefits. Office visit is subject to TeamCare co-pay requirements. |
| (p)    Major Medical Expense Benefit | 80% of the non-deductible Eligible Major Medical Expenses as defined in Section 1.24 of this document. |

### 20.02  DENTAL BENEFITS

The Plan provides Dental Benefits, as set forth in Article XV, for Covered Individuals so as to defray the cost of certain dental procedures.  A schedule of Dental Benefits for Plan MM200 follows:

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

| **Benefit Type** | **Schedule of Benefits** |
|---|---|
| (a)   Orthodontic | 50% of the Reasonable and Customary charges for the procedures incurred by a Dependent Child up to the 19th birthday up to a $1,000 lifetime maximum. |
| (b)   Crowns, Bridgework and Dentures | 70% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (c)   Preventive Services | 100% of the Reasonable and Customary charges for clinical oral evaluations and preventative services as described in ADA codes, subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |
| (d)   All other ADA Codes (excluding those listed in Section 15.06) | 85% of the Reasonable and Customary charges subject to a maximum benefit per person per calendar year of $1,500 consisting of any combination of payments for covered services as defined in Article XV. |

## 20.03  VISION BENEFITS

The Plan provides Vision Benefits, as set forth in Article XVI, so as to defray the cost of eye examinations and materials for Covered Individuals. A schedule of Vision Benefits for Plan MM200 follows:

| **Procedure/Item** | **Schedule of Benefits** |
|---|---|
| EXAMINATION | $25.00 |
| FRAMES | $30.00 |
| LENSES (PER PAIR) | |
| SINGLE VISION | $30.00 |
| BI-FOCAL | $40.00 |
| TRI-FOCAL | $50.00 |
| LENTICULAR | $60.00 |
| CONTACTS | $60.00 |

## 20.04  LIFE INSURANCE BENEFIT, ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT, TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT AND THE WAIVER OF PREMIUM DISABILITY BENEFIT

F:234919 / 05094020 / 09/30/2007

**Exhibit A**

The Plan provides:

    (a)    Life Insurance Benefits for Covered Participants and Covered Dependents;

    (b)    Accidental Death and Dismemberment Benefit for Covered Participants; and

    (c)    Total and Permanent Disability Installment Benefit or Waiver of Premium Disability Benefit for Covered Participants.

Details of the administration of these benefits are set forth in Article XIV. A schedule of these benefits for Plan MM200 follows:

| Benefit Type | Schedule of Benefits |
| --- | --- |
| PARTICIPANT LIFE | $20,000.00 |
| PARTICIPANT ACCIDENTAL DEATH | $20,000.00 |
| PARTICIPANT ACCIDENTAL DISMEMBERMENT | $20,000.00 maximum (See Schedule in Section 14.08) |
| PARTICIPANT TOTAL AND PERMANENT DISABILITY INSTALLMENT BENEFIT | $11,000.00 |
| SPOUSE LIFE INSURANCE | $ 2,000.00 |
| DEPENDENT LIFE INSURANCE | $ 750.00 |

### 20.05  MAJOR MEDICAL OUT-OF-POCKET EXPENSE LIMIT

Major Medical Out-of-Pocket Expense Limit excluding Plan Deductible is $2,500 per Covered Individual or $5,000 per family per calendar year. Charges relating to non-covered services, dental, chiropractic and vision services, psychiatric, drug and alcoholism treatment and prescription drugs do not apply towards the Major Medical Out-of-Pocket Expense Limit (see Section 17.01 for a full statement of these exceptions).

### 20.06  PLAN BENEFIT LIMIT

$250,000 per Covered Individual per calendar year.

### 20.07  PLAN DEDUCTIBLE

$200 per Covered Individual or $500 per family per calendar year.

**Exhibit A**

## 20.08  TEAMCARE RX INJECTABLE DRUG OUT-OF-POCKET EXPENSE LIMIT

Section 12.07 provides for a Prescription Drug Benefit and Section 20.01(f) provides for the corresponding Schedule of Benefits, including a 'maximum co-payment ... [of] $200 for each filled prescription purchased through the TeamCare RX program.' The Prescription Drug Benefit applies to any injectable drug ('Injectable Drug') that is a Prescription Drug as defined in Section 1.54. The Fund provides a separate TeamCare RX Injectable Drug Out-of-Pocket Expense Limit of $2,500 per Covered Individual per calendar year, provided that this separate limit applies only to Covered Individuals who in that year purchase Injectable Drugs through the TeamCare RX program. Each such Covered Individual's share of the cost of all covered Prescription Drugs purchased through the TeamCare RX program (including Injectable Drugs) is applied toward this separate annual $2,500 limit. After this annual $2,500 limit has been reached, the Fund is obligated to pay the full cost of all Injectable Drugs purchased by the Covered Individual through the TeamCare RX program during the remainder of that calendar year.

**Exhibit A**

08 CV 4120
JUDGE NORGLE
MAGISTRATE JUDGE DENLOW
JH

# Exhibit B

CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
HEALTH AND WELFARE FUND

**DESIGNATION OF BENEFICIARY**
COVERED HEALTH AND WELFARE MEMBERS ONLY

RETURN TO: Central States, Life Insurance Department, PO Box 5118, Des Plaines, IL 60017-5118

**MEMBER'S INFORMATION** - Please print or type:

| LEGAL LAST NAME | LEGAL FIRST NAME | MI | MEMBER SSN |
|---|---|---|---|
| Cook | Thomas | H | 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 |

**LIFE INSURANCE BENEFICIARY** - Primary:

| BENEFICIARY LAST NAME | BENEFICIARY FIRST NAME | MI | RELATIONSHIP TO MEMBER |
|---|---|---|---|
| Cook | Donald | L | Son |

Below is an example of naming primary and contingent beneficiaries for Life Insurance in the Health and Welfare Plan.
Example: Mary Jane Doe, wife, if living, otherwise to Ronald John Doe, son, and Elizabeth Ann Doe, daughter, in equal shares if both are living, if not, to the one who survives.
Use a separate piece of paper when naming primary and contingent beneficiaries. State this information fully, sign, date and attach to this card.

BY SIGNING BELOW, I REVOKE ANY PREVIOUS DESIGNATION AND FULLY UNDERSTAND THAT THE ABOVE BENEFICIARY WILL REMAIN IN EFFECT UNTIL SUCH TIME THAT I COMPLETE A NEW DESIGNATION OF BENEFICIARY CARD AND RETURN IT TO THE FUND.

| Thomas H Cook | 07-29-07 | 120 |
|---|---|---|
| MEMBER'S SIGNATURE | DATE SIGNED | LOCAL UNION NO. |

TO VALIDATE THIS CARD YOUR SIGNATURE AND DATE SIGNED IS NECESSARY

(REV 5/00) 6-02

**Exhibit B**

08 CV 4120
JUDGE NORGLE
MAGISTRATE JUDGE DENLOW
JH

# Exhibit C

Jul.16. 2008  9:27AM    Grosskopf & Black, LLC                    No.3259   P. 2

# GROSSKOPF & BLACK, LLC

ATTORNEYS AT LAW
1324 WEST CLAIREMONT AVENUE, SUITE 10

PETER E. GROSSKOPF
LYLE J. BLACK (1953-1998)

EAU CLAIRE, WI 54701
TELEPHONE: (715) 835-6196
FAX: (715) 835-1882
E-mail: peter@eclawyers.com
www.eclawyers.com
July 16, 2008

PARALEGAL
JENNIFER E. ALEXANDER

Appeals Committee
Central States, Southeast and Southwest Areas
Health and Welfare Fund
P.O. Box 5126
Des Plaines, IL 60017-5126

Attention: Ray Hale, Director of Strategic Planning

RE:    Trustee-Reviewable Appeal
       Member: Thomas Cook (deceased)
       UMI# 806093876
       Claim Number MD005955
       For: Barbara Cook, Wife
       Date of Loss 11/18/2007
       Our File No. 08-129

Dear Mr. Hale:

I am following up my letter of June 26. I did want to provide to you a copy of a change of mail, from the Post Office. A copy of that is enclosed herein for your reference, and as you can see, it was apparently signed on December 12, 2007, by Tom Cook. However, we all know that this would have been impossible, as Tom Cook was deceased on November 18, 2007. Note also that the change of address changes the address to the address of Donald Cook, in Barron County.

Finally, note that the handwriting on this change of address form was supiciously like the handwriting on the change of beneficiary designation form that was signed naming Donald Cook as the beneficiary.

We submit this in support of our assertion that the change of beneficiary form was forged.

If you have any other questions or need more information, let us know. Thank you.

Very Truly Yours,

Peter E. Grosskopf

PEG:sas
c:    Barbara Cook

**Exhibit C**

Jul.16. 2008  9:23AM    Grosskopf & Black, LLC        No.3259   P. 3

**Restricted Information**

### UNITED STATES POSTAL SERVICE

## COA Form View

Home Logout

Detail



**OFFICIAL MAIL FORWARDING CHANGE OF ADDRESS ORDER**

- Please PRINT items 1-10 in blue or black ink. Your signature is required in item 9.

**OFFICIAL USE ONLY**

| | |
|---|---|
| 1. Change of Address for: (Read Attached Instructions) | 7. Is The Move |
| Individual (IND)   Entire Family (FG)   Business (BT) | Temporary?   X Yes   No |
| 3. Start Date:   12 12 07 | 4. If TEMPORARY move, print date to discontinue forwarding: (ex. 03/27/07)   06 15 08 |
| 5a. LAST Name &amp; Suffix Jus.   Cook | |
| 5b. FIRST Name and MI   Thomas H | |
| 6. If BUSINESS Move, Print Business Name | |

PRINT OLD MAILING ADDRESS BELOW: HOUSE/BUILDING NUMBER AND STREET NAME (INCLUDE ST., AVE. CT., ETC.) OR PO BOX

7a. OLD Mailing Address   456 S Harzell LN #2

7c. OLD City   EAU CLAIRE    7d. State WI   7e. Zip 54703

PRINT NEW MAILING ADDRESS BELOW: HOUSE/BUILDING NUMBER AND STREET NAME (INCLUDE ST., AVE. CT., ETC.) OR PO BOX

8a. NEW Mailing Address   427 E Taylor Ave

8c. NEW City   Barron    8d. State WI   8e. Zip 54812

9. Print and Sign Name (see conditions on reverse)   Print Tom Cook   Sign Tom Cook

10. Date Signed   12 12 07

PS FORM 3575 SEPTEMBER 2007 Visit usps.com to change your address online or call 1-800-ASK-USPS (1-800-275-8777)   0907

Copyright© 2002-2008, Siemens. All Rights Reserved ( v3.2.0 Build 1084 ) coaweb-05
07/15/2008 10:05:01 AM

**Exhibit C**